Barry G. Felder
Rachel E. Kramer
Alicia L. Pitts
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
(212) 682-7474
bgfelder@foley.com
rkramer@foley.com
apitts@foley.com
Attorneys for Plaintiff Greystone Bank

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------X

GREYSTONE BANK,

                  Plaintiff,

    -against-

KAYE VASSEL and PAUL VASSEL,

                 Defendants.

-----------------------------------------------------X

Case No. 10-cv-2356 (KAM) (RER)

**DECLARATION OF BARRY G. FELDER IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

BARRY G. FELDER declares as follows under penalty of perjury:

    1.    I am a member of the Bar of this Court and a partner at Foley & Lardner LLP, counsel for plaintiff Greystone Bank ("Greystone") in this action. I make this declaration in support of Greystone's motion for summary judgment and to place certain documents before the Court. I am familiar with the facts and proceedings in this action.

    2.    This is an action to foreclose on Greystone's first mortgage lien on premises situated in the County of Queens, designated as Block 10188, Lot 45 with an address of 109-18 Merrick Boulevard, Jamaica, New York (the "Property").

3.      This action was commenced on May 24, 2010, and a notice of pendency of this action containing all of the particulars required by law to be stated in such notice was filed with the Queens County Clerk, the county in which the mortgaged premises are situated, on June 17, 2010.  A true copy of the Summons and Complaint are attached hereto as **Exhibit A**; a true copy of the Notice of Pendency is attached hereto as **Exhibit B**.

4.      On June 18, 2010, Paul Vassel and Kaye Vassel (collectively "Borrower") were duly served with the Summons, Complaint, and Notice of Pendency.  The Affidavits of Service are filed as Docket No. 2.

5.      In addition, although not required under the loan documents on July 22, 2010 an additional copy of the Summons, Complaint, and Notice of Pendency was served on Borrower via Federal Express.

6.      Borrower, appearing *pro se*, filed an Answer and Counterclaim on July 12, 2010 (a true copy is attached as **Exhibit C**).

7.      Greystone filed a Reply to Counterclaims on August 2, 2010 (a true copy is attached as **Exhibit D**).

8.      As more fully stated in the Complaint, Greystone alleges that Borrower failed to make monthly payments due after December 1, 2009.  Borrower subsequently produced a copy of a check dated December 24, 2009, allegedly sent to and processed by Greystone.  A true copy of Check No. 2097 as provided by the Vassels is attached hereto as **Exhibit E** (account number information redacted).

9.      After this, Greystone subpoenaed Borrower's bank, Nassau Educators Federal Credit Union ("NEFCU"), for the production of documents, including producing Check

2

No. 2097.  Greystone also subpoenaed NEFCU to testify at a deposition.  A true copy of the subpoenas are attached hereto as  **Exhibit F**.

10.     On May 19, 2011, NEFCU provided documents by mail, including a copy of Check No. 2097 from its records.  A true copy of NEFCU's record of Check No. 2097 is attached hereto as **Exhibit G** (account number information redacted).

11.     To avoid the expense of a deposition, on June 21, 2011, my associate Alicia Pitts sent an email to Farrel Donald, attorney for defendants, which stated that in lieu of a deposition, I would prepare a declaration for NEFCU's signature, and advising Mr. Donald to advise me if he had any objections to this.  A true copy of the June 21, 2011 email is attached hereto as **Exhibit H**.  No response or objection was received.

12.     Subsequently, Eric Oterson, Vice President of Back Officer Operations at NEFCU provided a declaration attesting to the accuracy of these bank records.  A true copy of the Declaration of Eric Oterson with exhibit thereto is attached hereto as **Exhibit I** (account number information redacted).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 22, 2011
New York, New York

Barry G. Felder

NYC_1211348.1

3

# Exhibit A

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of New York

GREYSTONE BANK )
)
_____ )
*Plaintiff* )
)
v. ) Civil Action No.
KAYE VASSEL and PAUL VASSEL )
)
_____ )
*Defendant* )

**CV 10 - 2356**

**MATSUMOTO, J.**

**REYES, M.J**

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Kaye Vassel and Paul Vassel
105-45 171st Place
Jamaica, NY 11433

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Rachel Kramer, Esq.
Foley & Lardner LLP
90 Park Avenue
New York, New York 10016
(212) 682-7474
rkramer@foley.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

ROBERT C. HEINEMANN
*CLERK OF COURT*

Date: _MAY 24 2010_                         _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                          *Server's signature*

                               _____
                                          *Printed name and title*

                               _____
                                          *Server's address*

Additional information regarding attempted service, etc:

Barry G. Felder
Rachel E. Kramer
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
(212) 682-7474
bgfelder@foley.com
rkramer@foley.com

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ MAY 2 4 2010 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------X

GREYSTONE BANK,

          Plaintiff,

   -against-

KAYE VASSEL and PAUL VASSEL,

          Defendants.

------------------------------------------------X

CV 10 - 2356

Case No.

**COMPLAINT**

MATSUMOTO, J.

REYES, M.J

Plaintiff Greystone Bank ("Greystone" or "Plaintiff"), by its attorneys, Foley & Lardner LLP, for its Complaint, alleges as follows:

## NATURE OF THE CASE

1.     This is an action to foreclose on a first mortgage lien on premises situated in the County of Queens, designated as Block 10188, Lot 45 with an address of 109-18 Merrick Boulevard, Jamaica, New York (the "Property"), and more particularly described in Schedule A annexed hereto, and for related relief.

## PARTIES

2.     Plaintiff Greystone is a North Carolina corporation with its principal place of business in Raleigh, North Carolina and is the owner and holder of the subject first mortgage lien on the Property.

1

3.      Upon information and belief, defendant Kaye Vassel is a resident of the state of New York and is a mortgagor of the mortgage lien at issue on the Property and a maker of the note secured by the mortgage lien.

4.      Upon information and belief, defendant Paul Vassel is a resident of the state of New York and is a mortgagor of the mortgage lien at issue on the Property and a maker of the note secured by the mortgage lien.  Defendants Kaye Vassel and Paul Vassel are referred to collectively herein as "Borrower."

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

## FIRST CAUSE OF ACTION
## (FORECLOSURE OF REAL PROPERTY)

7.      Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

8.      For value received, Borrower duly executed and delivered to Greystone a Promissory Note dated April 17, 2008 (the "Note"). Pursuant to the Note, Borrower promised to pay to the order of Greystone the principal sum of Four Hundred Five Thousand and 00/100 Dollars ($405,000.00), with interest thereon, in installments of principal and interest.  A copy of the Note is attached hereto as Exhibit 1.

9.      At or about the same time, in order to secure the payment of the principal sum set forth in the Note and the interest due thereon, Borrower executed and delivered to

2

Greystone a first mortgage lien on the Property in the principal amount of Four Hundred Five

Thousand and 00/100 Dollars ($405,000.00), and established by a Mortgage, Assignment of

Rents and Security Agreement dated April 17, 2008 (the "Mortgage").  The Mortgage was duly

recorded in the Office of the City Register of the City of New York on May 1, 2008 in CRFN

No. 2008000176736, and was duly indexed according to law, and the mortgage tax, if any

imposed upon the recording therefore, was duly paid.  A copy of the Mortgage is attached hereto

as Exhibit 2.

        10.    Greystone is the beneficial holder, Lender and secured party under the

Mortgage.  Mortgage Electronic Registration Systems, Inc. ("MERS") is the nominee, in an

administrative capacity, for Greystone Bank and is the legal holder of the mortgage at issue.

        11.    By an Assignment dated May 20, 2010, MERS assigned all of its right

title and interest in the Mortgage and other loan documents to Greystone.  A copy of the

Assignment is attached hereto as Exhibit 3.

        12.    By the Mortgage (at section 2), Borrower granted Greystone a security

interest under the Uniform Commercial Code "for any of the Mortgaged Property which, under

applicable law, may be subjected to a security interest under the Uniform Commercial Code,

whether such Mortgaged Property is owned now or acquired in the future, and all products and

cash and non-cash proceeds thereof (collectively, 'UCC Collateral'), and Borrower hereby grants

to . . . Lender a security interest in the UCC Collateral."

        13.    The Mortgage further provides (at section 2) that "[i]f an Event of Default

has occurred and is continuing, Lender shall have the remedies of a secured party under the

Uniform Commercial Code, in addition to all remedies provided by this Instrument or existing

under applicable law. In exercising any remedies, Lender may exercise its remedies against the

UCC Collateral separately or together, and in any order, without in any way affecting the availability of Lender's other remedies.  This Instrument constitutes a financing statement with respect to any part of the Mortgaged Property which is or may become a Fixture."

14.     By the Note (at section 3), Borrower covenanted to pay the unpaid principal balance and the interest thereon in monthly payments.

15.     The Note provides (at section 3(c)) that "[m]onthly payments of principal and interest, initially in the amount of **Three Thousand Nine Hundred Thirty-Four and 52/100 Dollars ($2,728.56),** shall be due and payable commencing on **June 1, 2008,** and on the same day of every calendar month thereafter, until the entire unpaid principal balance evidenced by this Note is fully paid."

16.     The Note further provides (at section 3(b)) that interest shall accrue on the unpaid principal balance, initially at a rate of 7.125 percent (7.125%) per annum until May 1, 2011, and at a variable rate thereafter.

17.     Section 3(a) of the Note provides:

> At any time an Event of Default shall have occurred and be continuing and/or after maturity of the Loan, including maturity upon acceleration, the unpaid principal balance, all accrued and unpaid interest and all other amounts payable under the Note shall bear interest at the **"Default Rate"** set forth in this Note.

18.     The "Default Rate" is defined (at section 8 of the Note) as "equal to the lesser of **five (5)** percentage points above the rate stated in Section 3 of this Note or the maximum interest rate which may be collected from Borrower under applicable law."

19.     Pursuant to the Mortgage (at Section 22(a)), an Event of Default is defined as, among other things, "any failure by Borrower to pay or deposit when due any amount required by the Note, this Instrument or any other Loan Document."

4

20.    The Mortgage also provides (at Section 22(e)) that an Event of Default includes "any Event of Default under Section 21."

21.    Under Section 21 of the Mortgage, a "Transfer" of "all or part of the mortgaged property or any interest in the mortgaged property" constitutes an Event of Default. "Transfer" is defined as, *inter alia*, "the granting, creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary or by operation of law)."

22.    The Mortgage also provides (at section 44) that upon an Event of Default (as described in the Mortgage) Greystone has the right to commence a foreclosure proceeding and to the appointment of a receiver and provides in pertinent part as follows:

> At any time after the occurrence of an Event of Default, Lender, at Lender's option, may declare the Indebtedness to be immediately due and payable without further demand, and may foreclose this Instrument by judicial proceeding or by non-judicial foreclosure, shall be entitled to the appointment of a receiver, without notice, and may invoke any other remedies permitted by applicable law of the Property Jurisdiction or provided in this Instrument or in any other Loan Document. Lender may, at Lender's option, also foreclose this Instrument for any portion of the Indebtedness which is then due and payable, subject to the continuing lien of this Instrument for the balance of the Indebtedness.

23.    Moreover, upon an Event of Default, Borrower consented to the appointment of a receiver.  Section 3(d) of the Mortgage provides that Greystone has the right to the appointment of a receiver and provides in pertinent part as follows:

> [I]f an Event of Default has occurred and is continuing, regardless of the adequacy of MERS and/or Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including appointment of a receiver *ex parte* if permitted by applicable law.

5

24.     Pursuant to Section 44 of the Mortgage, Borrower covenanted to pay Greystone's attorneys' fees and costs.  The Mortgage provides in part as follows: "Lender shall be entitled to collect all costs and expenses allowed by New York law, including attorneys' fees, costs of documentary evidence, abstracts, title reports, statutory costs and any additional allowance made pursuant to Section 8303 of the Civil Practice Law and Rules."

25.     Borrower failed to comply with the terms and conditions of the Note by failing to make timely monthly payments due after December 1, 2009.

26.     By letter to Borrower dated February 5, 2010, Greystone notified Borrower of the Default and stated that, if Borrower did not cure the payment default and provide certain documents pursuant to the Mortgage within 10 days, the Loan would be accelerated..

27.     Borrower failed to cure the defaults within 10 days.  Accordingly, pursuant to section 6 of the Note, the entire unpaid principal balance, any accrued interest, the prepayment premium, if any, and all other amounts payable under the Note and any other Loan Document thereby became immediately due and payable as of February 15, 2010.

28.     On April 23, 2010, Greystone again notified Borrower of the defaults and stated that it intended to file this action but that it would forbear from filing if Borrower paid certain amounts due by May 3, 2010.  As of May 3, 2010, however, Borrower has failed to pay the sums due.

29.     As of April 23, 2010, there is due and owing to Greystone the unpaid principal balance of $397,412.50 together with interest and default interest, which shall continue to accrue, and late fees and other charges, which have not been paid to date.

30.     In order to protect its security, Greystone may be compelled during the pendency of this action to pay taxes, assessments, water and sewer charges, insurance premiums and other charges affecting the Property, and Greystone requests that all sums so paid or expenses so incurred by it, with interest thereon accrued, together with Greystone's costs and reasonable attorneys' fees, be added to the sum otherwise due under the Mortgage, as provided in the Mortgage and be deemed secured by the Mortgage and be adjudged a valid lien on the Property.

31.     Borrower has failed to comply with the terms and conditions of the Note and Mortgage, as aforesaid, and Greystone is therefore entitled to the appointment of a receiver pendente lite.

32.     No other action or proceeding for the recovery of the money mentioned in this Complaint or to foreclose the lien of the Mortgage, or any part thereof, has been commenced by Greystone.

33.     The Property described in Paragraph 1 of the Complaint should be sold in one parcel, "as is," subject to (i) any state of facts that may be shown on an accurate survey; (ii) the rights of statutory tenants, if any; (iii) the right to maintain vaults and vault space, if any, and any charges due to any municipal entity therefor; (iv) easements, covenants, conditions, agreements reservations and restrictions of record, if any; (v) violations, orders or notices filed or issued by any governmental authority against the Property, including, but not limited to, any environmental violations and notices to repair sidewalk or charges for sidewalk repairs; and (vi) municipal zoning ordinances.

7

## SECOND CAUSE OF ACTION
### (FORECLOSURE OF PERSONAL PROPERTY)

34.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

35.     By virtue of a UCC-I Financing Statement, Greystone is the holder of a security interest in certain personal property on the Property as security for the Note and Mortgage.  The UCC-I Financing Statement was filed with Office of the City Register of the City of New York on May 1, 2008 in CRFN No. 2008000176738.

36.     Because Borrower is in default of the obligations under the Note and Mortgage, Greystone is entitled to foreclose its security interest in the personal property of Borrower to satisfy the indebtedness evidenced by the Note and Mortgage.

## THIRD CAUSE OF ACTION
### (RENTAL PROCEEDS)

37.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

38.     By the Mortgage (at Section 3(a)),

Borrower absolutely and unconditionally assigns and transfers to Lender all Rents. It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of the Borrower. . . Borrower and Lender intend this assignment of Rents to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only.

39.     Section 3(b) of the Mortgage further provides:

From and after the occurrence of an Event of Default, and without the necessity of the Lender entering upon and taking and maintaining control of the Mortgaged Property directly, or by a receiver, Borrower's license to collect Rents shall automatically terminate and Lender shall without notice be entitled all Rents as

8

they become due and payable, including Rents then due and unpaid. Borrower shall pay to Lender upon demand all Rents to which Lender is entitled.

40.     As a result of Borrower's defaults described above, Borrower's license to collect rents has terminated. Upon information and belief, however, Borrower has continued to collect rents and profits and has failed to deliver or hold such rents in trust for the benefit of Greystone.

41.     Accordingly, Greystone has suffered damages in an amount to be proved at the trial of this action.

### FOURTH CAUSE OF ACTION
### (POSSESSION)

42.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

43.     By virtue of Borrower's default under the terms of the Note and Mortgage, Greystone is entitled to possession of the Property.

44.     Upon information and belief, Borrower is in possession of the Property and has, since the default described herein, deprived Greystone of possession of the Property.

45.     Upon information and belief, each of the defendants named in this action claims to have or may have, some right, title, interest or lien in or to the Property or some part thereof, which right, title, interest or lien, if any, is subject and subordinate to the lien of Greystone on the Property, and their rights to possession, if any, are subordinate to Greystone's.

46.     In order to protect its security, Greystone may be compelled during the pendency of this action to pay taxes, assessments, water and sewer charges, insurance premiums and other charges affecting the Property, and Greystone requests that all sums so paid or expenses so incurred by it, with interest thereon accrued, together with Greystone's costs and

attorneys' fees, be added to the sum otherwise due under the Mortgage as provided therein, and

be deemed secured by the lien of the Mortgage and be adjudged a valid lien on the Property.

## FIFTH CAUSE OF ACTION
### (AS AGAINST DEFENDANTS PERSONALLY)

47.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs

as if fully set forth herein.

48.     Section 9 of the Note provides as follows:

**Full Recourse Personal Liability.**  Borrower shall have full recourse personal
liability under this Note, the Security Instrument and any and all other Loan
Documents for the repayment of the indebtedness and for the performance of any
and all obligations of Borrower under the Loan Documents.

49.     By virtue of the default under the Mortgage, Kaye Vassel and Paul Vassel

are personally liable to Greystone for the payment of all amounts due under the Mortgage and

Note, including interest, attorneys' fees, costs and all other amounts due under the Loan

Documents.

50.     Accordingly, Greystone is entitled to damages in the amount of any

deficiency remaining and awarded pursuant to deficiency judgment proceedings herein.

WHEREFORE, plaintiff Greystone demands judgment against defendants as follows:

## ON THE FIRST CAUSE OF ACTION

A.     that defendants herein, and all persons claiming under them or any or either of

them, subsequent to the filing of the notice of pendency of this action, be forever

barred and foreclosed of all right, claim, lien, title and equity of redemption of, in

and to the Property and each and every part thereof, and that the Property may be

decreed to be sold according to law; that the monies arising from the sale of the

Property may be brought to court; that Plaintiff may be paid the amount due on the Mortgage and Note with interest and default interest to the time of such payment, and the costs and disbursements of this action together with an award of reasonable attorneys' fees, and the expense of said sale, together with any amounts which have been or may be advanced by Plaintiff to protect the security afforded by the Mortgage with interest and default interest thereon from the time of such payment, so far as the amount of such monies properly applicable thereto will pay the same and that defendants Kaye Vassel and Paul Vassel be adjudged to pay any deficiency which may remain after applying all of said monies so applicable thereto;

B.   fixing the amount due Plaintiff under the Note and Mortgage as set forth herein, including the expenses of any foreclosure sale, the costs, allowances and disbursements of this action and reasonable attorneys' fees, any monies advanced and paid by Plaintiff pursuant to the Note and Mortgage to protect its interest in the Property, together with interest thereon;

C.   appointing a receiver of the Property, with the usual powers and duties, during the pendency of this action to receive and collect the earnings, revenues, rents, issues, profits and income from the Property;

D.   directing that the Property be sold according to law at a judicial sale to satisfy the amount due Plaintiff;

E.   directing that Plaintiff be paid all amounts due under the Note and Mortgage as fixed by the Court from the proceeds of any judicial sale;

11

F.     declaring that the remaining defendants and each person claiming through from or under them are barred and forever foreclosed of all right, estate, claim, interest, title, lien and equity of redemption to, or, in the Property;

G.     directing that, after application of the funds to Plaintiff above, any surplus funds arising from the sale be brought into Court and disbursed pursuant to further order of this Court;

## ON THE SECOND CAUSE OF ACTION

H.     for an Order foreclosing the security interest of Plaintiff, entitling it to possession of the property described in the UCC-1 Financing Statement and directing a sale thereof, together with the Property with the proceeds to be applied to the satisfaction of the indebtedness evidenced by the Note and Mortgage;

## ON THE THIRD CAUSE OF ACTION

I.     against defendants Kaye Vassel and Paul Vassel for damages equal to all Rents paid or payable by any tenants or occupants of the Property held or collected from February 15, 2010 to the date of the judgment hereunder, with interest thereon;

## ON THE FOURTH CAUSE OF ACTION

J.     granting Plaintiff possession of the Property against the defendants herein or anyone holding through, from or under them; and

K.     granting Plaintiff damages for mesne profits;

## ON THE FIFTH CAUSE OF ACTION

L.     against defendants Kaye Vassel and Paul Vassel, (i) that Plaintiff may be paid the following amounts from the proceeds of the sale of the Property, so far as the

amount of such proceeds will pay the same:  the amount due on the Mortgage and Note with interest and default interest to the time of such payment, the costs and disbursements of this action together with an award of reasonable attorneys' fees, and the expense of said sale together with any amounts which have been or may be advanced by Plaintiff to protect the security afforded by the Mortgage with interest and default interest thereon from the time of such payment; and (ii) that defendants Kaye Vassel and Paul Vassel be adjudged to pay any deficiency which may remain after applying all of said proceeds as applicable; and

## ON ALL CAUSES OF ACTION

M.    for such other and further relief as the Court deems just and proper.

Dated: New York, New York
       May 24, 2010

FOLEY & LARDNER LLP

By: _____
    Barry G. Felder
    Rachel E. Kramer
    90 Park Avenue
    New York, New York 10016
    (212) 682-7474
    Attorneys for Plaintiff
    Greystone Bank

13

# EXHIBIT 1

# PROMISSORY NOTE
## (New York)

US $405,000.00

April 17, 2008

MERS MIN: 1006126-0000000276-1

FOR VALUE RECEIVED, the undersigned, **KAYE VASSEL and PAUL VASSEL** ("Borrower") jointly and severally (if more than one) promise(s) to pay to the order of **GREYSTONE BANK, a North Carolina bank, its successors and/or assigns,** the principal sum of **FOUR HUNDRED FIVE THOUSAND AND 00/100 DOLLARS (US $405,000.00),** with interest on the unpaid principal balance as set forth in Section 3 below.

    **1.**     **Defined Terms.** As used in this Note, (i) the term **"Lender"** means the holder of this Note, and (ii) the term **"Indebtedness"** means the principal of, interest on, or any other amounts due at any time under, this Note, the Security Instrument or any other Loan Document, including prepayment premiums, late charges, default interest, and advances to protect the security of the Security Instrument under Section 12 of the Security Instrument. **"Event of Default"** and other capitalized terms used but not defined in this Note shall have the meanings given to such terms in the Security Instrument.

    **2.**     **Address for Payment.** All payments due under this Note shall be payable at Greystone Bank, c/o LoanCare Servicing Center, Inc., P.O. Box 8068, Virginia Beach, VA 23450, or such other place as may be designated by written notice to Borrower from or on behalf of Lender. By separate document Borrower may authorize Lender to deduct all payments due under this Note, plus any and all required monthly Imposition Deposits, from Borrower's checking account by means of ACH automatic debit transfers.

    **3.**     **Payment of Principal and Interest.** Payments shall be made in immediately available funds as follows:

    (a)     **General.** Monthly payments will be applied to interest before principal. Any remaining principal and interest shall be due and payable on **May 1, 2038** or on any earlier date on which the unpaid principal balance of this Note becomes due and payable, by acceleration or otherwise (the **"Maturity Date"**). At any time an Event of Default shall have occurred and be continuing and/or after maturity of the Loan, including maturity upon acceleration, the unpaid principal balance, all accrued and unpaid interest and all other amounts payable under the Note shall bear interest at the **"Default Rate"** set forth in this Note. The unpaid principal balance shall continue to bear interest after the Maturity Date at the Default Rate set forth in this Note until and including the date on which it is paid in full. Any regularly scheduled monthly installment of principal and interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due. Any accrued interest remaining past due for 30 days or more shall be added to and become part of the unpaid principal balance and shall bear interest at the rate or rates specified in this Note, and any reference below to "accrued interest" shall refer to accrued interest which has not become part of the unpaid principal balance. Interest under this Note shall be computed on the basis ("**Actual/360**") of a 360-day year and the actual number of days in the month for which interest is being calculated (divide the annual interest by 360, and multiply the quotient by the number of days in the month for which interest is being calculated). The amount payable as interest, or allocated to interest, will vary depending upon the number of days in the month for which interest is being calculated. In the event any check given by Borrower to Lender as a payment on this Note is dishonored, or in the event there are insufficient funds in Borrower's designated account to cover any preauthorized monthly debit from Borrower's checking account, then, without limiting any other charges or remedies, Borrower shall pay to Lender a processing fee of $25.00 (but not more than the maximum amount allowed by law) for each such event.

    (b)     **Interest Rate.** The unpaid principal balance of this Note shall accrue interest as follows:

        (i)     **Initial Interest Rate.** The initial interest rate charged on the unpaid principal of this Note shall be **7.125 percent (7.125%)** per annum effective as of the date of disbursement to and excluding **May 1, 2011.** Thereafter, the interest rate the Borrower will pay may change in accordance with this Section 3(b).

        (ii)     **Interest Rate Changes.** The interest rate the Borrower will pay may change on **May 1, 2011** and on that day of the month every twelfth (12th) month thereafter. Each date on which the interest rate could change is called an **"Interest Change Date."** Before each Interest Change Date, the Lender will calculate the Borrower's new interest rate by adding **2.625 percent (2.625%)** to the Current Index. Subject to the limits stated in Section 3(b)(iv) below, this amount will be the new interest rate until the next Interest Change Date.

        (iii)     **The Index.** Beginning with the first Interest Change Date, the interest will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available on the third to the last Business Day of the month prior to each Interest Change Date is called the **"Current Index."** If the Index is no longer available, the Lender will choose a new Index

that is based upon comparable information. The selection of an alternate index shall be made in Lender's sole discretion. Lender will give Borrower notice of such selection.

(iv)     **Limits on Interest Rate Reductions.** Throughout the term of this Note, Borrower's interest rate will never be less than **5 percent (5%)** per annum.

(c)     **Payments.** Principal and interest shall be paid as follows:

(i)     **Interest Only Payment.** Unless disbursement of principal is made by Lender to Borrower on the first day of the month, interest for the period beginning on the date of disbursement and ending on and including the last day of the month in which such disbursement is made shall be payable upon the initial funding of the loan evidenced by this Note.

(ii)     **Amount of Initial Monthly Payments.** Monthly payments of principal and interest, initially in the amount of **TWO THOUSAND SEVEN HUNDRED TWENTY-EIGHT AND 56/100 DOLLARS (U.S. $2,728.56)**, shall be due and payable commencing on **June 1, 2008**, and on the same day of every calendar month thereafter, until the entire unpaid principal balance evidenced by this Note is fully paid. The amount of the initial monthly payment of principal and interest is the amount that would be sufficient to repay the face amount of this Note in full on the Maturity Date in substantially equal monthly payments calculated on the basis ("30/360") of a 360-day year consisting of twelve 30-day months (*not* on an Actual/360 basis). Each monthly installment received by Lender will first be applied to pay in full interest due for the month, and the balance of the monthly installment paid by Borrower will be credited to principal.

(iii)     **Change in Monthly Payments.** The monthly payments shall change each time the interest rate changes pursuant to Section 3(b) of this Note. Changes in monthly payments will reflect the change in the unpaid principal of the loan and in the interest rate. Lender will determine the amount of the new monthly payment in an amount that would be sufficient to repay the unpaid principal that is expected to be owed at the Interest Change Date in full on the Maturity Date at the new interest rate in substantially equal monthly payments calculated on a 30/360 (*not* Actual/360) basis.

(d)     **Effective Date of Changes.** The new interest rate will become effective on each Interest Change Date. Borrower will pay the new monthly payment beginning on the monthly payment due date next following each Interest Change Date.

(e)     **Notice of Changes.** The Lender will deliver or mail a notice of any change in the Borrower's interest rate and the amount of the new monthly payment promptly upon the calculation of such changes.

(f)     **Failure to Make Adjustments.** If for any reason Lender fails to make an adjustment to the interest rate or the monthly payment amount as described in this Note, regardless of any notice requirement, Lender may, upon discovery of such failure, then make such adjustment as if it had been made on time. Borrower further agrees to pay upon demand any additional monies which Borrower may owe as a result of any such adjustment. Borrower agrees not to hold Lender responsible for any damages that may result from Lender's failure to make the adjustment and to allow Lender, at its option, to apply any excess monies which Borrower may have paid to partial prepayment of the unpaid principal balance of this Note.

4.     **Application of Payments.** If at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, Lender may apply the amount received to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion. Borrower agrees that neither Lender's acceptance of a payment from Borrower in an amount that is less than all amounts then due and payable nor Lender's application of such payment shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction.

5.     **Security.** The Indebtedness is secured, among other things, by that certain deed of trust, mortgage or security deed dated as of the date of this Note and executed by Borrower in favor of Mortgage Electronic Registration Systems, Inc., as nominee, in an administrative capacity only, for Lender its successors and assigns (the "**Security Instrument**"), and reference is made to the Security Instrument for other rights of Lender as to collateral for the Indebtedness.

6.     **Acceleration.** If an Event of Default has occurred and is continuing, the entire unpaid principal balance, any accrued interest, the prepayment premium payable under Section 10, if any, and all other amounts payable under this Note and any other Loan Document shall at once become due and payable, at the option of Lender, without any prior notice to Borrower. Lender may exercise this option to accelerate regardless of any prior forbearance.

7.     **Late Charge.** If any monthly installment of interest or principal and interest or other amount payable under this Note or under the Security Instrument or any other Loan Document is not received in full by Lender within **fifteen (15)** days after the installment or other amount is due (unless applicable law requires a longer period of time before a late charge may be imposed, in which event such longer period shall be substituted), Borrower shall pay to Lender, immediately and without demand by Lender, a late charge equal to **five percent (5%)** of such installment or other amount due (unless applicable law requires a lesser amount be charged, in which event such lesser amount shall be substituted). Borrower acknowledges that its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the loan evidenced by this Note (the "**Loan**") and that it is extremely difficult and impractical to determine those additional expenses. Borrower agrees that the late charge payable pursuant to this Section represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the

additional expenses Lender will incur by reason of such late payment. The late charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate pursuant to Section 8.

        **8.**      **Default Rate.** So long as (a) any monthly installment under this Note remains past due for thirty (30) days or more or (b) any other Event of Default has occurred and is continuing, interest under this Note shall accrue on the unpaid principal balance from the earlier of the due date of the first unpaid monthly installment or the occurrence of such other Event of Default, as applicable, at a rate (the "**Default Rate**") equal to the lesser of **five (5)** percentage points above the rate stated in Section 3 of this Note or the maximum interest rate which may be collected from Borrower under applicable law. If the unpaid principal balance and all accrued interest are not paid in full on the Maturity Date, the unpaid principal balance and all accrued interest shall bear interest from the Maturity Date at the Default Rate. Borrower acknowledges that (a) its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan, (b) during the time that any monthly installment under this Note is delinquent for thirty (30) days or more, Lender will incur additional costs and expenses arising from its loss of the use of the money due and from the adverse impact on Lender's ability to meet its other obligations and to take advantage of other investment opportunities; and (c) it is extremely difficult and impractical to determine those additional costs and expenses. Borrower also acknowledges that, during the time that any monthly installment under this Note is delinquent for thirty (30) days or more or any other Event of Default has occurred and is continuing, Lender's risk of nonpayment of this Note will be materially increased and Lender is entitled to be compensated for such increased risk. Borrower agrees that the increase in the rate of interest payable under this Note to the Default Rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional costs and expenses Lender will incur by reason of the Borrower's delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan. During any period that the Default Rate is in effect the additional interest accruing over and above the rate stated in Section 3 of this Note shall be immediately due and payable in addition to the regularly scheduled principal and interest payments.

        **9.**      **Full Recourse Personal Liability.** Borrower shall have full recourse personal liability under this Note, the Security Instrument and any and all other Loan Documents for the repayment of the Indebtedness and for the performance of any and all other obligations of Borrower under the Loan Documents.

        **10.**     **Voluntary and Involuntary Prepayments.**

        (a)      A prepayment premium shall be payable in connection with any prepayment made under this Note as provided below:

        (i)      Borrower may voluntarily prepay all of the unpaid principal balance of this Note on a Business Day designated as the date for such prepayment in a Notice from Borrower to Lender given at least 30 days prior to the date of such prepayment. Such prepayment shall be made by paying (A) the amount of principal being prepaid, (B) all accrued interest, (C) all other sums due Lender at the time of such prepayment, and (D) the prepayment premium calculated pursuant to Section 10(f) of this Note. For purposes of this Note, a "**Business Day**" means any day other than a Saturday, Sunday or any other day on which Lender is not open for business. For all purposes including the accrual of interest, but excluding the determination of the prepayment date under Section 10(f) of this Note, any prepayment received by Lender on any day other than the last calendar day of the month shall be deemed to have been received on the last calendar day of such month.

        (ii)     [Intentionally Omitted]

        (iii)     Upon Lender's exercise of any right of acceleration under this Note, Borrower shall pay to Lender, in addition to the entire unpaid principal balance of this Note outstanding at the time of the acceleration, (A) all accrued interest, (B) all other sums due Lender, and (C) the prepayment premium calculated pursuant to Section 10(f) of this Note, to the extent such prepayment premium does not exceed the maximum rate permitted by applicable law.

        (iv)     Any application by Lender of any proceeds of collateral or other security to the repayment of any portion of the unpaid principal balance of this Note prior to the Maturity Date and in the absence of acceleration shall be deemed to be a Partial Prepayment by Borrower, requiring the payment to Lender by Borrower of a prepayment premium. The amount of any such Partial Prepayment shall be computed so as to provide to Lender a prepayment premium computed pursuant to Section 10(f) of this Note without Borrower having to pay out-of-pocket any additional amounts.

        (b)      Notwithstanding the provisions of Section 10(a), no prepayment premium shall be payable with respect to (A) any prepayment made after the expiration of the Prepayment Premium Period (as defined in Section 10(f) of this Note), or (B) any prepayment occurring as a result of the application of any insurance proceeds or condemnation award under the Security Instrument.

        (c)      Any permitted or required prepayment of less than the unpaid principal balance of this Note shall not extend or postpone the due date of any subsequent monthly installments or change the amount of such installments, unless Lender agrees otherwise in writing.

        (d)      Borrower recognizes that any prepayment of the unpaid principal balance of this Note, whether voluntary or involuntary or resulting from a default by Borrower, will result in Lender's incurring loss, including reinvestment loss, additional expense and frustration or impairment of Lender's ability to meet its commitments to third parties. Borrower agrees to pay to Lender upon demand damages for the detriment caused by any prepayment, and agrees that it is extremely difficult and impractical to

ascertain the extent of such damages. Borrower therefore acknowledges and agrees that the formula for calculating prepayment premiums set forth in Section 10(f) represents a reasonable estimate of the damages Lender will incur because of a prepayment.

(e)      Borrower further acknowledges that the prepayment premium provisions of this Note are a material part of the consideration for the Loan, and acknowledges that the terms of this Note are in other respects more favorable to Borrower as a result of the Borrower's voluntary agreement to the prepayment premium provisions.

(f)      Any prepayment premium payable under this Section 10 shall be computed as follows:

(i)      If the prepayment is made between the date of this Note and the date that is **three years** after the date of this Note (the "**Prepayment Premium Period**"), the prepayment premium shall be as follows:

(A)      If prepayment is made during the first year of the Prepayment Premium Period, the prepayment premium shall be **three percent (3%)** of the principal amount being prepaid;

(B)      If prepayment is made during the second year of the Prepayment Premium Period, the prepayment premium shall be **two percent (2%)** of the principal amount being prepaid; and

(C)      If prepayment is made during the third year of the Prepayment Premium Period, the prepayment premium shall be equal to **one percent (1%)** of the principal amount being prepaid.

(ii)      If the prepayment is made after the expiration of the Prepayment Premium Period, there shall be no prepayment premium due.

11.      **Costs and Expenses.** To the fullest extent allowed by applicable law, Borrower shall pay all expenses and costs, including fees and out-of-pocket expenses of attorneys (including Lender's in-house attorneys) and expert witnesses and costs of investigation, incurred by Lender as a result of any default under this Note or in connection with efforts to collect any amount due under this Note, or to enforce the provisions of any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding) or judicial or non-judicial foreclosure proceeding.

12.      **Forbearance.** Any forbearance by Lender in exercising any right or remedy under this Note, the Security Instrument, or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of that or any other right or remedy. The acceptance by Lender of any payment after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments or to exercise any right or remedy with respect to any failure to make prompt payment. Enforcement by Lender of any security for Borrower's obligations under this Note shall not constitute an election by Lender of remedies so as to preclude the exercise of any other right or remedy available to Lender.

13.      **Waivers.** Presentment, demand, notice of dishonor, protest, notice of acceleration, notice of intent to demand or accelerate payment or maturity, presentment for payment, notice of nonpayment, grace, and diligence in collecting the Indebtedness are waived by Borrower and all endorsers and guarantors of this Note and all other third party obligors.

14.      **Loan Charges.** Neither this Note nor any of the other Loan Documents shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower in connection with the Loan is interpreted so that any interest or other charge provided for in any Loan Document, whether considered separately or together with other charges provided for in any other Loan Document, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate that violation. The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of this Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the Indebtedness that constitute interest, shall be deemed to be allocated and spread ratably over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Note.

15.      **Purpose of Indebtedness.** Borrower represents that the Indebtedness is not being incurred by Borrower for personal, family or household purposes.

16.      **Counting of Days.** Except where otherwise specifically provided, any reference in this Note to a period of "days" means calendar days, not Business Days.

17.      **Governing Law.** This Note shall be governed by the laws of the jurisdiction in which the Land is located.

18.      **Captions.** The captions of the paragraphs of this Note are for convenience only and shall be disregarded in construing this Note.

19.      **Notices.** All notices, demands and other communications required or permitted to be given by Lender to Borrower pursuant to this Note shall be given in accordance with Section 31 of the Security Instrument.

20.      **Consent to Jurisdiction and Venue.** Borrower agrees that any controversy arising under or in relation to this Note shall be litigated exclusively in the jurisdiction in which the Land is located (the "**Property Jurisdiction**"). The state and federal

courts and authorities with jurisdiction in the Property Jurisdiction shall have exclusive jurisdiction over all controversies which shall arise under or in relation to this Note. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

21.      **Counterparts.** This Note may be executed in any number of counterparts each of which shall be deemed an original, but all such counterparts together shall constitute but one Note.

22.      WAIVER OF TRIAL BY JURY. BORROWER AND LENDER EACH (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS NOTE OR THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER AND BORROWER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

IN WITNESS WHEREOF, and in consideration of the Lender's agreement to lend Borrower the principal amount set forth above, Borrower has signed and delivered this Note under seal or has caused this Note to be signed and delivered under seal by its duly authorized representative.

BORROWER:

KAYE VASSEL

PAUL VASSEL

# EXHIBIT 2

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2008042800630003001E4754

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 23 |
|---|---|

**Document ID:** 2008042800630003   Document Date: 04-17-2008   Preparation Date: 04-28-2008
**Document Type:** MORTGAGE
**Document Page Count:** 21

| PRESENTER: | RETURN TO: |
|---|---|
| CAPITAL ABSTRACT CO. CAQ-UGT-08137 | GREYSTONE MULTIUNIT LLC |
| AS AGENT FOR UNITED GENERAL TITLE | 152 WEST 57TH STREET |
| INSURANCE CO. | 9TH FLOOR |
| 3854 FLATLANDS AVENUE (-HOLD PICK UP LENNY) | NEW YORK, NY  10019 |
| BROOKLYN, NY  11234 | |
| 718-724-2170 | |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| QUEENS | 10188 | 8 | Entire Lot | | 109-18 MERRICK BOULEVARD |

**Property Type:** 1-3 FAMILY WITH STORE / OFFICE

**CROSS REFERENCE DATA**

CRFN_____   or  Document ID_____   or  _____   Year_____   Reel  ___   Page _____   or  File Number_____

**PARTIES**

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| PAUL VASSEL | MORTGAGE ELECTRONIC REGISTRATION |
| 105-43 171ST PLACE | SYSTEMS, INC. |
| JAMAICA, NY  11433 | 1595 SPRING HILL ROAD, SUITE 310 |
| | VIENNA, VA  22182 |
| x  Additional Parties Listed on Continuation Page | |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 405,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 405,000.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 2,025.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 4,050.00 | | $ | 0.00 |
| Spec (Additional): | $ | 1,012.50 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 1,215.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed          05-01-2008 15:55 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 8,302.50 | **2008000176736** | | |
| Recording Fee: | $ | 142.00 | | | |
| Affidavit Fee: | $ | 0.00 | *City Register Official Signature* | | |

*PREPARED BY, AND AFTER RECORDING*
*RETURN TO:*

GREYSTONE MULTIUNIT LLC
152 West 57th St.
9th floor
New York, NY 10019

Tax Parcel Number(s):  SECTION: 45 BLOCK: 10188 LOT: 8

LOCATION OF PREMISES:

| | |
|---|---|
| Street Address: | 109 -18 Merrick Boulevard |
| County of: | Queens |
| State of: | New York |
| Borough: | Queens |
| Section: | 45 |
| Block: | 10188 |
| Lot: | 8 |

MERS MIN: 1006126-0000000276-1

## MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

### (NEW YORK)

THIS MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT (the "Instrument") is made to be effective **April 17, 2008**, between **KAYE VASSEL and PAUL VASSEL**, whose addresses are **105-45 171 Place, Jamaica, NY 11433**, as mortgagor (jointly and severally referred to herein in the singular as "**Borrower**") to and for the benefit of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,** a Delaware corporation, whose address is **1595 Spring Hill Road, Suite 310, Vienna, VA 22182,** and whose mailing address is MERS, P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, as beneficiary ("**Mortgagee**" or "**MERS**").

Borrower is indebted to Lender in the principal amount of **FOUR HUNDRED FIVE THOUSAND AND 00/100 DOLLARS (US $405,000.00),** as evidenced by Borrower's Promissory Note payable to Lender, dated as of the date of this Instrument, and maturing on **May 1, 2038** (the "**Maturity Date**").

TO SECURE TO **GREYSTONE BANK, a North Carolina bank, its successors and/or assigns,** whose address is **4700 Falls of Neuse Road, Suite 190, Raleigh, NC 27609** ("**Lender**") the repayment of the Indebtedness, and all renewals, extensions and modifications of the Indebtedness, and the performance of the covenants and agreements of Borrower contained in the Loan Documents, Borrower mortgages, warrants, grants, conveys and assigns to Lender, the Mortgaged Property, including the Land located in **Queens** County, State of New York and described in Exhibit A attached to this Instrument.

Borrower represents and warrants that Borrower is lawfully seized of the Mortgaged Property and has the right, power and authority to grant, convey and assign the Mortgaged Property, and that the Mortgaged Property is unencumbered except as shown on the schedule of exceptions to coverage in the title policy issued to and accepted by Lender contemporaneously with the execution and recordation of this Instrument and insuring Lender's interest in the Mortgaged Property (the "**Schedule of Title Exceptions**"). Borrower covenants that Borrower will warrant and defend generally the title to the Mortgaged Property against all claims and demands, subject to any easements and restrictions listed in the Schedule of Title Exceptions.

**Covenants.** In consideration of the mutual promises set forth in this Instrument, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender covenant and agree as follows:

1. **DEFINITIONS.** The following terms, when used in this Instrument (including when used in the above recitals), shall have the following meanings:

(a) "**Assignment**" means that certain Assignment of Leases and Rents dated the same date as this Instrument, executed by Borrower, as Assignor, in favor of Lender, as Assignee, affecting the Mortgaged Property and given as additional security for the Indebtedness.

(b) "**Attorneys' Fees and Costs**" means (i) fees and out-of-pocket costs of Lender's and Loan Servicer's attorneys, as applicable, including costs of Lender's and Loan Servicer's in-house counsel, support staff costs, costs of preparing for litigation, computerized research, telephone and facsimile transmission expenses, mileage, deposition costs, postage, duplicating, process service, videotaping and similar costs and expenses; (ii) costs and fees of expert witnesses, including appraisers; and (iii) investigatory fees.

(c) "**Borrower**" means all persons or entities identified as "Borrower" in page one of this Instrument, together with their successors and assigns.

(d) "**Borrower Certificate**" means that certain Borrower Certificate dated the same date as this Instrument, executed by Borrower in favor of Lender.

(e) [Intentionally Omitted]

(f) "**Controlling Entity**" means an entity which owns, directly or indirectly through one or more intermediaries, (A) a general partnership interest or a Controlling Interest of the limited partnership interests in Borrower (if Borrower is a partnership or joint venture), (B) a manager's interest in Borrower or a Controlling Interest of the ownership or membership interests in Borrower (if Borrower is a limited liability company), or (C) a Controlling Interest of any class of voting stock of Borrower (if Borrower is a corporation).

(g) "**Controlling Interest**" means (i) 51 percent or more of the ownership interests in an entity, or (ii) a percentage ownership interest in an entity of less than 51 percent, if the owner(s) of that interest actually direct(s) the business and affairs of the entity without the requirement of consent of any other party.

(h) "**Environmental Indemnity**" means that certain Environmental Indemnity Agreement dated the same date as this Instrument, executed by Borrower, as Indemnitor, in favor of Lender, as Indemnitee.

(i) "**Environmental Permit**" means any permit, license, or other authorization issued under any Hazardous Materials Law with respect to any activities or businesses conducted on or in relation to the Mortgaged Property.

(j) "**Event of Default**" means the occurrence of any event listed in Section 22.

(k) "**Fixtures**" means all property owned by Borrower which is so attached to the Land or the Improvements as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators, installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention, or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment.

(l) "**Governmental Authority**" means any board, commission, department or body of any municipal, county, state or federal governmental unit, or any subdivision of any of them, that has or acquires jurisdiction over the Mortgaged Property or the use, operation or improvement of the Mortgaged Property or over the Borrower.

(m) "**Hazard Insurance**" is defined in Section 19.

(n) "**Hazardous Materials**" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives; flammable materials; radioactive materials; polychlorinated biphenyls ("PCBs") and compounds containing them; lead and lead-based paint; asbestos or asbestos-containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Mortgaged Property is prohibited by any federal, state or local authority; any substance that requires special handling; and any other material or substance now or in the future defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "contaminant," or "pollutant" within the meaning of any Hazardous Materials Law.

(o) "**Hazardous Materials Laws**" means all federal, state, and local laws, ordinances and regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees in effect now or in the future and including all amendments, that relate to Hazardous Materials or the protection of human health or the environment and apply to Borrower or to the Mortgaged Property. Hazardous Materials Laws include, but are not limited to, the Comprehensive

Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, *et seq.*, the Toxic Substance Control Act, 15 U.S.C. Section 2601, *et seq.*, the Clean Water Act, 33 U.S.C. Section 1251, *et seq.*, the Emergency Planning and Community Right-to-Know Act of 1986, as amended, the Solid Waste Disposal Act, as amended, the Clean Air Act, as amended, the Safe Drinking Water Act, as amended, the Occupational Safety and Health Act, as amended, and the Hazardous Materials Transportation Act, 49 U.S.C. Section 5101, and their state analogs.

(p)     "Impositions" and "Imposition Deposits" are defined in Section 7(a).

(q)     "Improvements" means the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements and additions.

(r)     "Indebtedness" means the principal of, interest at the fixed or variable rate set forth in the Note on, and all other amounts due at any time under, the Note, this Instrument or any other Loan Document, including prepayment premiums, late charges, default interest, and advances as provided in Section 12 to protect the security of this Instrument.

(s)     "Initial Owners" means, with respect to Borrower or any other entity, the person(s) or entity(ies) that (i) on the date of the Note, or (ii) on the date of a Transfer to which Lender has consented, own in the aggregate 100% of the ownership interests in Borrower or that entity.

(t)     "Land" means the land described in Exhibit A.

(u)     "Leases" means all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property, and all modifications, extensions or renewals.

(v)     "Lender" means the entity identified as "Lender" in page one of this Instrument, its successors or assigns, or any subsequent holder of the Note.

(w)     "Loan Documents" means the Note, this Instrument, the Assignment, the Borrower Certificate, the Environmental Indemnity, all guaranties, all indemnity agreements, all O&M Programs, and any other documents now or in the future executed by Borrower, any guarantor or any other person in connection with the loan evidenced by the Note, as such documents may be amended from time to time.

(x)     "Loan Servicer" means the entity that from time to time is designated by Lender to collect payments and deposits and receive notices under the Note, this Instrument and any other Loan Document, and otherwise to service the loan evidenced by the Note for the benefit of Lender. Unless Borrower receives notice to the contrary, the Loan Servicer is the entity identified as "Lender" in the first paragraph of this Instrument.

(y)     "MERS" means the entity identified as "Mortgagee" or "MERS" in page one of this Instrument. MERS acts as nominee in the county land records for the Lender and Loan Servicer as more particularly set forth in the Section of this Instrument entitled "MERS PROVISIONS."

(z)     "Mortgaged Property" means all of Borrower's present and future right, title and interest in and to all of the following: (1) the Land; (2) the Improvements; (3) the Fixtures; (4) the Personalty; (5) all current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefiting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated; (6) all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, whether or not Borrower obtained the insurance pursuant to Lender's requirement; (7) all awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof; (8) all contracts, options and other agreements for the sale of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations; (9) all proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds; (10) all Rents and Leases; (11) all earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Mortgaged Property, and all undisbursed proceeds of the loan secured by this Instrument; (12) all Imposition Deposits; (13) all refunds or rebates of Impositions by any municipal, state or federal authority or insurance company (other than refunds applicable to periods before the real property tax year in which this Instrument is dated); (14) all tenant security deposits which have not been forfeited by any tenant under any Lease and any bond or other security in lieu of such deposits; and (15) all names under or by which any of the above Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgaged Property.

(aa)    "Note" means the Promissory Note described on page 1 of this Instrument, including all schedules, riders, allonges and addenda, as such Promissory Note may be amended from time to time.

(bb)    "O&M Program" shall have the meaning as defined in the Environmental Indemnity.

(cc)     "Personalty" means all: (i)  accounts (including deposit accounts); (ii) equipment and inventory owned by Borrower, which are used now or in the future in connection with the ownership, management or operation of the Land or Improvements or are located on the Land or Improvements, including furniture, furnishings, machinery, building materials, goods, supplies, tools, books, records (whether in written or electronic form), and computer equipment (hardware and software); (iii) other tangible personal property including ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances (other than Fixtures); (iv) any operating agreements relating to the Land or the Improvements; (v) any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements; (vi) all other intangible property, general intangibles and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land and including subsidy or similar payments received from any sources, including a governmental authority; and (vii) any rights of Borrower in or under letters of credit.

(dd)     "Property Jurisdiction" is defined in Section 30(a).

(ee)     "Rents" means all rents, revenues and other income of the Land or the Improvements, including parking fees and vending machine income and fees and charges for other services provided at the Mortgaged Property, whether now due, past due, or to become due, and deposits forfeited by tenants.

(ff)     "Taxes" means all taxes, assessments, vault rentals and other charges, if any, general, special or otherwise, including all assessments for schools, public betterments and general or local improvements, which are levied, assessed or imposed by any public authority or quasi-public authority, and which, if not paid, will become a lien, on the Land or the Improvements.

(gg)     "Transfer" is defined in Section 21.

**2.     UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.**

(a)     This Instrument is also a security agreement under the Uniform Commercial Code for any of the Mortgaged Property which, under applicable law, may be subjected to a security interest under the Uniform Commercial Code, whether such Mortgaged Property is owned now or acquired in the future, and all products and cash and non-cash proceeds thereof (collectively, "UCC Collateral"), and Borrower hereby grants to MERS and/or Lender a security interest in the UCC Collateral. Borrower hereby authorizes Lender to prepare and file financing statements, continuation statements and financing statement amendments in such form as Lender may require to perfect or continue the perfection of this security interest and Borrower agrees, if Lender so requests, to execute and deliver to Lender such financing statements, continuation statements and amendments. Borrower shall pay all filing costs and all costs and expenses of any record searches for financing statements and/or amendments that Lender may require. Without the prior written consent of Lender, Borrower shall not create or permit to exist any other lien or security interest in any of the UCC Collateral. Unless Borrower gives prior written Notice to Lender of any of the following, and executes and delivers to Lender modifications or supplements of this Instrument (and any financing statement which may be filed in connection with this Instrument) as Lender may require, Borrower shall not (i) change its name, identity, structure or jurisdiction of organization; (ii) change the location of its place of business (or chief executive office if more than one place of business); or (iii) add to or change any location at which any of the Mortgaged Property is stored, held or located. If an Event of Default has occurred and is continuing, Lender shall have the remedies of a secured party under the Uniform Commercial Code, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Lender may exercise its remedies against the UCC Collateral separately or together, and in any order, without in any way affecting the availability of Lender's other remedies. This Instrument constitutes a financing statement with respect to any part of the Mortgaged Property that is or may become a Fixture, if permitted by applicable law.

**3.     ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.**

(a)     As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Rents. It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower. Promptly upon request by Lender, Borrower agrees to execute and deliver such further assignments as Lender may from time to time require. Borrower and Lender intend this assignment of Rents to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, Rents shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in Section 1. However, if this present, absolute and unconditional assignment of Rents is not enforceable by its terms under the laws of the Property Jurisdiction, then the Rents shall be included as a part of the Mortgaged Property and it is the intention of the Borrower that in this circumstance this Instrument create and perfect a lien on Rents in favor of MERS and/or Lender, which lien shall be effective as of the date of this Instrument.

(b)     After the occurrence of an Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender. However, until the occurrence of an Event of Default, Lender hereby grants to Borrower a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender and to apply all Rents to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including Imposition Deposits, and to pay the current costs

and expenses of managing, operating and maintaining the Mortgaged Property, including utilities, Taxes and insurance premiums (to the extent not included in Imposition Deposits), tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Instrument. From and after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, or by a receiver, Borrower's license to collect Rents shall automatically terminate and Lender shall without notice be entitled to all Rents as they become due and payable, including Rents then due and unpaid. Borrower shall pay to Lender upon demand all Rents to which Lender is entitled. At any time on or after the date of Lender's demand for Rents, Lender may give, and Borrower hereby irrevocably authorizes Lender to give, notice to all tenants of the Mortgaged Property instructing them to pay all Rents to Lender, no tenant shall be obligated to inquire further as to the occurrence or continuance of an Event of Default, and no tenant shall be obligated to pay to Borrower any amounts which are actually paid to Lender in response to such a notice. Any such notice by Lender shall be delivered to each tenant personally, by mail or by delivering such demand to each rental unit. Borrower shall not interfere with and shall cooperate with Lender's collection of such Rents.

(c)     Borrower represents and warrants to Lender that Borrower has not executed any prior assignment of Rents (other than an assignment of Rents securing indebtedness that will be paid off and discharged with the proceeds of the loan evidenced by the Note), that Borrower has not performed, and Borrower covenants and agrees that it will not perform, any acts and has not executed, and shall not execute, any instrument which would prevent Lender from exercising its rights under this Section 3, and that at the time of execution of this Instrument there has been no anticipation or prepayment of any Rents for more than two months prior to the due dates of such Rents. Borrower shall not collect or accept payment of any Rents more than one (1) month prior to the due dates of such Rents.

(d)     If an Event of Default has occurred and is continuing, Lender may, regardless of the adequacy of MERS and/or Lender's security or the solvency of Borrower and even in the absence of waste, enter upon and take and maintain full control of the Mortgaged Property in order to perform all acts that Lender in its discretion determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents, the making of repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing the assignment of Rents pursuant to Section 3(a), protecting the Mortgaged Property or the security of this Instrument, or for such other purposes as Lender in its discretion may deem necessary or desirable. Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of MERS and/or Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law. Lender or the receiver, as the case may be, shall be entitled to receive a reasonable fee for managing the Mortgaged Property. Immediately upon appointment of a receiver or immediately upon the Lender's entering upon and taking possession and control of the Mortgaged Property, Borrower shall surrender possession of the Mortgaged Property to Lender or the receiver, as the case may be, and shall deliver to Lender or the receiver, as the case may be, all documents, records (including computer files and other records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property and all security deposits and prepaid Rents. In the event Lender takes possession and control of the Mortgaged Property, Lender may exclude Borrower and its representatives from the Mortgaged Property. Borrower acknowledges and agrees that the exercise by Lender of any of the rights conferred under this Section 3 shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and Improvements.

(e)     If Lender enters the Mortgaged Property, Lender shall be liable to account only to Borrower and only for those Rents actually received. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Mortgaged Property, by reason of any act or omission of Lender under this Section 3, and Borrower hereby releases and discharges Lender from any such liability to the fullest extent permitted by law.

(f)     If the Rents are not sufficient to meet the costs of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an additional part of the Indebtedness as provided in Section 12.

(g)     Any entering upon and taking of control of the Mortgaged Property by Lender or the receiver, as the case may be, and any application of Rents as provided in this Instrument shall not cure or waive any Event of Default or invalidate any other right or remedy of Lender under applicable law or provided for in this Instrument.

4.     ASSIGNMENT OF LEASES; LEASES AFFECTING THE MORTGAGED PROPERTY.

(a)     As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all of Borrower's right, title and interest in, to and under the Leases, including Borrower's right, power and authority to modify

the terms of any such Lease, or extend or terminate any such Lease. It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all of Borrower's right, title and interest in, to and under the Leases. Borrower and Lender intend this assignment of the Leases to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of the Leases, and for no other purpose, the Leases shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in Section 1. However, if this present, absolute and unconditional assignment of the Leases is not enforceable by its terms under the laws of the Property Jurisdiction, then the Leases shall be included as a part of the Mortgaged Property and it is the intention of the Borrower that in this circumstance this Instrument create and perfect a lien on the Leases in favor of MERS and/or Lender, which lien shall be effective as of the date of this Instrument.

(b)      Until Lender gives notice to Borrower of Lender's exercise of its rights under this Section 4, Borrower shall have all rights, power and authority granted to Borrower under any Lease (except as otherwise limited by this Section or any other provision of this Instrument), including the right, power and authority to modify the terms of any Lease or extend or terminate any Lease. Upon the occurrence of an Event of Default, the permission given to Borrower pursuant to the preceding sentence to exercise all rights, power and authority under Leases shall automatically terminate. Borrower shall comply with and observe Borrower's obligations under all Leases, including Borrower's obligations pertaining to the maintenance and disposition of tenant security deposits.

(c)      Borrower acknowledges and agrees that the exercise by Lender, either directly or by a receiver, of any of the rights conferred under this Section 4 shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and the Improvements. The acceptance by Lender of the assignment of the Leases pursuant to Section 4(a) shall not at any time or in any event obligate Lender to take any action under this Instrument or to expend any money or to incur any expenses. Lender shall not be liable in any way for any injury or damage to person or property sustained by any person or persons, firm or corporation in or about the Mortgaged Property. Prior to Lender's actual entry into and taking possession of the Mortgaged Property, Lender shall not (i) be obligated to perform any of the terms, covenants and conditions contained in any Lease (or otherwise have any obligation with respect to any Lease); (ii) be obligated to appear in or defend any action or proceeding relating to the Lease or the Mortgaged Property; or (iii) be responsible for the operation, control, care, management or repair of the Mortgaged Property or any portion of the Mortgaged Property. The execution of this Instrument by Borrower shall constitute conclusive evidence that all responsibility for the operation, control, care, management and repair of the Mortgaged Property is and shall be that of Borrower, prior to such actual entry and taking of possession.

(d)      Upon delivery of notice by Lender to Borrower of Lender's exercise of Lender's rights under this Section 4 at any time after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction, Lender immediately shall have all rights, powers and authority granted to Borrower under any Lease, including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease.

(e)      Borrower shall, promptly upon Lender's request, deliver to Lender an executed copy of each Lease then in effect, and shall deliver to Lender, within forty-five (45) days of any lease renewal, a copy of the lease renewal or new lease (whichever is applicable).

(f)      Borrower further covenants with Lender that (i) all Leases shall be written on a standard form of lease that has been or will be approved in writing in advance by Lender; (ii) upon request, Borrower shall furnish Lender with executed copies of all Leases and all amendments thereto; (iii) no material changes may be made to the Lender-approved standard lease without the prior written consent of Lender; (iv) all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates and shall be arm's-length transactions; (v) all Leases shall provide that (A) they are subordinate to this Security Instrument and any other indebtedness now or hereafter secured by the Mortgaged Property, (B) lessees agree to attorn to Lender (such attornment to be effective upon Lender's acquisition of title to the Mortgaged Property), (C) lessees agree to execute such further evidences of attornment as Lender may from time to time request, (D) the attornment of lessees shall not be terminated by foreclosure, (E) Lender may, at Lender's option, accept or reject such attornment, and (F) lessees agree to execute and acknowledge a subordination and attornment agreement in form and content acceptable to Lender, and as Lender may request, a certificate signed by Lessee confirming and containing such factual certifications and representations deemed appropriate by Lender; (vi) Borrower shall not grant any purchase options without the prior written approval of Lender, and (vii) all new Leases shall be subject to the prior written approval of Lender.

(g)      Borrower shall not receive or accept Rent under any Lease for more than one (1) month in advance.

5.      PAYMENT OF INDEBTEDNESS; PERFORMANCE UNDER LOAN DOCUMENTS; PREPAYMENT PREMIUM. Borrower shall pay the Indebtedness when due in accordance with the terms of the Note and the other Loan Documents and shall perform, observe and comply with all other provisions of the Note and the other Loan Documents. Borrower shall pay a prepayment premium in connection with certain prepayments of the Indebtedness, including a payment made after Lender's exercise of any right of acceleration of the Indebtedness, as provided in the Note.

6.    •    FULL RECOURSE PERSONAL LIABILITY. Borrower shall have full recourse personal liability under the Note, this Instrument and all other Loan Documents for the repayment of the Indebtedness and for the performance of any and all other obligations of Borrower under the Note, this Instrument and all other Loan Documents.

7.    DEPOSITS FOR TAXES, INSURANCE AND OTHER CHARGES.

(a)    Borrower shall deposit with Lender on the day monthly installments of principal or interest, or both, are due under the Note (or on another day designated in writing by Lender), until the Indebtedness is paid in full, an additional amount sufficient to accumulate with Lender the entire sum required to pay, when due (1) any water and sewer charges which, if not paid, may result in a lien on all or any part of the Mortgaged Property, (2) the premiums for fire and other hazard insurance, rent loss insurance and such other insurance as Lender may require under Section 19, (3) Taxes, and (4) amounts for other charges and expenses which Lender at any time reasonably deems necessary to protect the Mortgaged Property, to prevent the imposition of liens on the Mortgaged Property, or otherwise to protect Lender's interests, all as reasonably estimated from time to time by Lender, plus one-sixth of such estimate.    The amounts deposited under the preceding sentence are collectively referred to in this Instrument as the "Imposition Deposits". The obligations of Borrower for which the Imposition Deposits are required are collectively referred to in this Instrument as "Impositions". The amount of the Imposition Deposits shall be sufficient to enable Lender to pay each Imposition before the last date upon which such payment may be made without any penalty or interest charge being added. Lender shall maintain records indicating how much of the monthly Imposition Deposits and how much of the aggregate Imposition Deposits held by Lender are held for the purpose of paying Taxes, insurance premiums and each other obligation of Borrower for which Imposition Deposits are required. Any waiver by Lender of the requirement that Borrower remit Imposition Deposits to Lender may be revoked by Lender, in Lender's discretion, at any time upon notice to Borrower.

(b)    Imposition Deposits shall be held in an institution (which may be Lender, if Lender is such an institution) whose deposits or accounts are insured or guaranteed by a federal agency.  Lender shall not be obligated to open additional accounts or deposit Imposition Deposits in additional institutions when the amount of the Imposition Deposits exceeds the maximum amount of the federal deposit insurance or guaranty. Lender shall apply the Imposition Deposits to pay Impositions so long as no Event of Default has occurred and is continuing. Unless applicable law requires, Lender shall not be required to pay Borrower any interest, earnings or profits on the Imposition Deposits. Borrower hereby pledges and grants to Lender a security interest in the Imposition Deposits as additional security for all of Borrower's obligations under this Instrument and the other Loan Documents. Any amounts deposited with Lender under this Section 7 shall not be trust funds, nor shall they operate to reduce the Indebtedness, unless applied by Lender for that purpose under Section 7(e).

(c)    If Lender receives a bill or invoice for an Imposition, Lender shall pay the Imposition from the Imposition Deposits held by Lender. Lender shall have no obligation to pay any Imposition to the extent it exceeds Imposition Deposits then held by Lender.  Lender may pay an Imposition according to any bill, statement or estimate from the appropriate public office or insurance company without inquiring into the accuracy of the bill, statement or estimate or into the validity of the Imposition.

(d)    If at any time the amount of the Imposition Deposits held by Lender for payment of a specific Imposition exceeds the amount reasonably deemed necessary by Lender plus one-sixth of such estimate, the excess shall be credited against future installments of Imposition Deposits.  If at any time the amount of the Imposition Deposits held by Lender for payment of a specific Imposition is less than the amount reasonably estimated by Lender to be necessary plus one-sixth of such estimate, Borrower shall pay to Lender the amount of the deficiency within 15 days after written request by Lender.

(e)    If an Event of Default has occurred and is continuing, Lender may apply any Imposition Deposits, in any amounts and in any order as Lender determines, in Lender's discretion, to pay any Impositions or as a credit against the Indebtedness. Upon payment in full of the Indebtedness, Lender shall refund to Borrower any Imposition Deposits held by Lender.

8.    [Intentionally Omitted.]

9.    APPLICATION OF PAYMENTS.  If at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Lender may apply that payment to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion.  Neither Lender's acceptance of an amount which is less than all amounts then due and payable nor Lender's application of such payment in the manner authorized shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Borrower's obligations under this Instrument and the Note shall remain unchanged.

10.    COMPLIANCE WITH LAWS AND ORGANIZATIONAL DOCUMENTS.

(a)    Borrower shall comply with all laws, ordinances, regulations and requirements of any Governmental Authority and all recorded lawful covenants and agreements relating to or affecting the Mortgaged Property, including all laws, ordinances, regulations, requirements and covenants pertaining to health and safety, construction of improvements on the Mortgaged Property, fair housing, zoning and land use, and Leases. Borrower also shall comply with all applicable laws that pertain to the maintenance and disposition of tenant security deposits.

(b)    Borrower shall at all times maintain records sufficient to demonstrate compliance with the provisions of this Section 10.

(c)    Borrower shall take appropriate measures to prevent, and shall not engage in or knowingly permit, any illegal activities at the Mortgaged Property that could endanger tenants or visitors, result in damage to the Mortgaged Property, result in forfeiture of the Mortgaged Property, or otherwise materially impair the lien created by this Instrument or MERS and/or Lender's interest in the Mortgaged Property. Borrower represents and warrants to Lender that no portion of the Mortgaged Property has been or will be purchased with the proceeds of any illegal activity.

(d)    Borrower shall at all times comply with all laws, regulations and requirements of any Governmental Authority relating to Borrower's formation, continued existence and good standing in the Property Jurisdiction. Borrower shall at all times comply with its organizational documents, including but not limited to its partnership agreement (if Borrower is a partnership), its by-laws (if Borrower is a corporation or housing cooperative corporation or association) or its operating agreement (if Borrower is an limited liability company, joint venture or tenancy-in-common).

11.    USE OF PROPERTY.  Unless required by applicable law, Borrower shall not (a) except for any change in use approved by Lender, allow changes in the use for which all or any part of the Mortgaged Property is being used at the time this Instrument was executed, or (b) initiate or acquiesce in a change in the zoning classification of the Mortgaged Property, or (c) establish any condominium or cooperative regime with respect to the Mortgaged Property.

12.    PROTECTION OF LENDER'S SECURITY.

(a)    If Borrower fails to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Mortgaged Property, MERS and/or Lender's security or MERS and/or Lender's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws, fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such actions as Lender reasonably deems necessary to perform such obligations of Borrower and to protect Lender's interest, including (1) payment of fees and out of pocket expenses of attorneys, accountants, inspectors and consultants, (2) entry upon the Mortgaged Property to make repairs or secure the Mortgaged Property, (3) procurement of the insurance required by Section 19, (4) payment of amounts which Borrower has failed to pay under Sections 15 and 17, and (5) advances made by Lender to pay, satisfy or discharge any obligation of Borrower for the payment of money that is secured by a pre-existing mortgage, deed of trust or other lien encumbering the Mortgaged Property (a "Prior Lien").

(b)    Any amounts disbursed by Lender under this Section 12, or under any other provision of this Instrument that treats such disbursement as being made under this Section 12, shall be added to, and become part of, the principal component of the Indebtedness, shall be immediately due and payable and shall bear interest from the date of disbursement until paid at the "Default Rate", as defined in the Note.

(c)    Nothing in this Section 12 shall require Lender to incur any expense or take any action.

13.    INSPECTION.  Lender, its agents, representatives, and designees may make or cause to be made entries upon and inspections of the Mortgaged Property (including environmental inspections and tests) during normal business hours, or at any other reasonable time.

14.    BOOKS AND RECORDS; FINANCIAL REPORTING.

(a)    Borrower shall keep and maintain at all times at the Mortgaged Property or the management agent's offices, and upon Lender's request shall make available at the Mortgaged Property, complete and accurate books of account and records (including copies of supporting bills and invoices) adequate to reflect correctly the operation of the Mortgaged Property, and copies of all written contracts, Leases, and other instruments which affect the Mortgaged Property. The books, records, contracts, Leases and other instruments shall be subject to examination and inspection at any reasonable time by Lender.

(b)    Borrower shall furnish to Lender all of the following:

(1)    as soon as available and in any event within 90 days after the end of each fiscal year of Borrower, a statement of income and expenses for Borrower's operation of the Mortgaged Property for that fiscal year, a statement of changes in financial position of Borrower relating to the Mortgaged Property for that fiscal year, a personal financial statement of Borrower, and, when requested by Lender, a balance sheet showing all assets and liabilities of Borrower relating to the Mortgaged Property as of the end of that fiscal year;

(2)    as soon as available and in any event no later than January 31st of each year, and at any other time upon Lender's request, a rent schedule for the Mortgaged Property showing the name of each tenant, and for each tenant, the space occupied, the lease expiration date, the rent payable for the current month, the date through which rent has been paid, and any related information requested by Lender;

(3)    within 90 days after the end of each fiscal year of Borrower, and at any other time upon Lender's request, an accounting of all security deposits held pursuant to all Leases, including the name of the institution (if any) and the names and identification numbers of the accounts (if any) in which such

security deposits are held and the name of the person to contact at such financial institution, along with any authority or release necessary for Lender to access information regarding such accounts;

(4)     within 90 days after the end of each fiscal year of Borrower, and at any other time upon Lender's request, a statement that identifies all owners of any interest in Borrower and any Controlling Entity and the interest held by each, if Borrower or a Controlling Entity is a corporation, all officers and directors of Borrower and the Controlling Entity, and if Borrower or a Controlling Entity is a limited liability company, all managers who are not members;

(5)     upon Lender's request, quarterly income and expense statements for the Mortgaged Property;

(6)     upon Lender's request at any time when an Event of Default has occurred and is continuing, monthly income and expense statements for the Mortgaged Property;

(7)     upon Lender's request, a monthly property management report for the Mortgaged Property, showing the number of inquiries made and rental applications received from tenants or prospective tenants and deposits received from tenants and any other information requested by Lender;

(8)     upon Lender's request, a balance sheet, a statement of income and expenses for Borrower and a statement of changes in financial position of Borrower for Borrower's most recent fiscal year;

(9)     as soon as available and in any event within ten (10) days after filing, copies of all federal and state income tax returns filed by Borrower; and

(10)     such other documents or information as Lender may reasonably request from time to time.

(c)     Each of the statements, schedules, documents, items and reports required by Section 14(b) shall be certified to be true, complete and accurate by an individual having authority to bind Borrower, and shall be in such form and contain such detail as is satisfactory to Lender in its sole discretion.  Lender also may require that any statements, schedules or reports be audited at Borrower's expense by independent certified public accountants acceptable to Lender.

(d)     If Borrower fails to provide in a timely manner the statements, schedules and reports required by Section 14(b), then such failure shall constitute an Event of Default and, in addition to any other remedies which may be available to Lender as a result of such Event of Default, Lender shall have the right to have Borrower's books and records audited, at Borrower's expense, by independent certified public accountants selected by Lender in order to obtain such statements, schedules and reports, and all related costs and expenses of Lender shall become immediately due and payable and shall become an additional part of the Indebtedness as provided in Section 12.

(e)     If an Event of Default has occurred and is continuing, Borrower shall deliver to Lender upon written demand all books and records relating to the Mortgaged Property or its operation.

(f)     Borrower authorizes Lender to obtain a credit report on Borrower at any time.

15.     **TAXES; OPERATING EXPENSES.**

(a)     Subject to the provisions of Section 15(c) and Section 15(d), Borrower shall pay, or cause to be paid, all Taxes when due and before the addition of any interest, fine, penalty or cost for nonpayment.

(b)     Subject to the provisions of Section 15(c), Borrower shall pay the expenses of operating, managing, maintaining and repairing the Mortgaged Property (including insurance premiums, utilities, repairs and replacements) before the last date upon which each such payment may be made without any penalty or interest charge being added.

(c)     As long as no Event of Default exists and Borrower has timely delivered to Lender any bills or premium notices that it has received, Borrower shall not be obligated to pay Taxes, insurance premiums or any other individual Imposition to the extent that sufficient Imposition Deposits are held by Lender for the purpose of paying that specific Imposition. If an Event of Default exists, Lender may exercise any rights Lender may have with respect to Imposition Deposits without regard to whether Impositions are then due and payable. Lender shall have no liability to Borrower for failing to pay any Impositions to the extent that any Event of Default has occurred and is continuing, insufficient Imposition Deposits are held by Lender at the time an Imposition becomes due and payable or Borrower has failed to provide Lender with bills and premium notices as provided above.

(d)     Borrower, at its own expense, may contest by appropriate legal proceedings, conducted diligently and in good faith, the amount or validity of any Imposition other than insurance premiums, if (1) Borrower notifies Lender of the commencement or expected commencement of such proceedings, (2) the Mortgaged Property is not in danger of being sold or forfeited, (3) Borrower deposits with Lender reserves sufficient to pay the contested Imposition, if requested by Lender, and (4) Borrower furnishes whatever additional security is required in the proceedings or is reasonably requested by Lender, which may include the delivery to Lender of the reserves established by Borrower to pay the contested Imposition.

(e)     Borrower shall promptly deliver to Lender a copy of all notices of, and invoices for, Impositions, and if Borrower pays any Imposition directly, Borrower shall promptly furnish to Lender receipts evidencing such payments.

16.     **LIENS; ENCUMBRANCES.** Borrower acknowledges that the grant, creation or existence of any mortgage, deed of trust, deed to secure debt, security interest or other lien or encumbrance (a "Lien") on the Mortgaged Property (other than the lien of this Instrument) or on certain ownership interests in Borrower, whether voluntary, involuntary or by operation of law, and whether or

not such Lien has priority over the lien of this Instrument, is a "Transfer" which constitutes an Event of Default under Section 21 of this Instrument.

17.    PRESERVATION, MANAGEMENT AND MAINTENANCE OF MORTGAGED PROPERTY. Borrower (a) shall not commit waste or permit impairment or deterioration of the Mortgaged Property, (b) shall not abandon the Mortgaged Property, (c) shall restore or repair promptly, in a good and workmanlike manner, any damaged part of the Mortgaged Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, whether or not insurance proceeds or condemnation awards are available to cover any costs of such restoration or repair, (d) shall keep the Mortgaged Property in good repair, including the replacement of Personalty and Fixtures with items of equal or better function and quality, (e) shall provide for professional management of the Mortgaged Property by a property manager satisfactory to Lender under a contract approved by Lender in writing, and (f) shall give notice to Lender of and, unless otherwise directed in writing by Lender, shall appear in and defend any action or proceeding purporting to affect the Mortgaged Property, MERS and/or Lender's security or MERS and/or Lender's rights under this Instrument. Borrower shall not (and shall not permit any tenant or other person to) remove, demolish or alter the Mortgaged Property or any part of the Mortgaged Property except in connection with the replacement of tangible Personalty.

18.    ENVIRONMENTAL HAZARDS. Borrower shall comply with all covenants, conditions, provisions and obligations of Borrower (as Indemnitor) under the Environmental Indemnity Agreement.

19.    PROPERTY AND LIABILITY INSURANCE.

(a)    Borrower shall keep the Improvements insured at all times against such hazards as Lender may from time to time require, which insurance shall include but not be limited to coverage against loss by fire, windstorm and allied perils, general boiler and machinery coverage, and business income coverage. Lender's insurance requirements may change from time to time throughout the term of the Indebtedness.  If Lender so requires, such insurance shall also include sinkhole insurance, mine subsidence insurance, earthquake insurance, and, if the Mortgaged Property does not conform to applicable zoning or land use laws, building ordinance or law coverage.  In the event any updated reports or other documentation are reasonably required by Lender in order to determine whether such additional insurance is necessary or prudent, Borrower shall pay for all such documentation at its sole cost and expense.  If any of the Improvements is located in an area identified by the Federal Emergency Management Agency (or any successor to that agency) as an area having special flood hazards, and if flood insurance is available in that area, Borrower shall insure such Improvements against loss by flood.  All insurance required pursuant to this Section 19(a) shall be referred to as "Hazard Insurance." All policies of Hazard Insurance must include a non-contributing, non-reporting mortgagee clause in favor of, and in a form approved by, Lender.

(b)    All premiums on insurance policies required under this Section 19 shall be paid in the manner provided in Section 7, unless Lender has designated in writing another method of payment.  All such policies shall also be in a form approved by Lender. Borrower shall deliver to Lender a legible copy of each insurance policy (or duplicate original) and Borrower shall promptly deliver to Lender a copy of all renewal and other notices received by Borrower with respect to the policies and all receipts for paid premiums. At least 30 days prior to the expiration date of a policy, Borrower shall deliver to Lender a legible copy of each renewal policy (or a duplicate original) in a form satisfactory to Lender.

(c)    Borrower shall maintain at all times commercial general liability insurance, workers' compensation insurance and such other liability, errors and omissions and fidelity insurance coverages as Lender may from time to time require. All policies for general liability insurance must contain a standard additional insured provision, in favor of, and in a form approved by, Lender.

(d)    All insurance policies and renewals of insurance policies required by this Section 19 shall be in such amounts and for such periods as Lender may from time to time require, shall be in such form and contain such endorsements as Lender may from time to time require, and shall be issued by insurance companies satisfactory to Lender.

(e)    Borrower shall comply with all insurance requirements and shall not permit any condition to exist on the Mortgaged Property that would invalidate any part of any insurance coverage that this Instrument requires Borrower to maintain.

(f)    In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to Lender.  Borrower hereby authorizes and appoints Lender as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claims under policies of property damage insurance, to appear in and prosecute any action arising from such property damage insurance policies, to collect and receive the proceeds of property damage insurance, and to deduct from such proceeds Lender's expenses incurred in the collection of such proceeds. This power of attorney is coupled with an interest and therefore is irrevocable. However, nothing contained in this Section 19 shall require Lender to incur any expense or take any action.  Lender may, at Lender's option, (1) hold the balance of such proceeds to be used to reimburse Borrower for the cost of restoring and repairing the Mortgaged Property to the equivalent of its original condition or to a condition approved by Lender (the "Restoration"), or (2) apply the balance of such proceeds to the payment of the Indebtedness, whether or not then due. To the extent Lender determines to apply insurance proceeds to Restoration, Lender shall do so in accordance with Lender's then-current policies relating to the restoration of casualty damage on similar properties.

(g)    Lender shall not exercise its option to apply insurance proceeds to the payment of the Indebtedness if all of the following conditions are met:  (1) no Event of Default (or any event which, with the giving of notice or the passage of time, or both,

would constitute an Event of Default) has occurred and is continuing; (2) Lender determines, in its discretion, that there will be sufficient funds to complete the Restoration; (3) Lender determines, in its discretion, that the rental income from the Mortgaged Property after completion of the Restoration will be sufficient to meet all operating costs and other expenses, Imposition Deposits, deposits to reserves and loan repayment obligations relating to the Mortgaged Property; and (4) Lender determines, in its discretion, that the Restoration will be completed before the earlier of (A) one year before the maturity date of the Note or (B) one year after the date of the loss or casualty.

(h)     If the Mortgaged Property is sold at a foreclosure sale or Lender acquires title to the Mortgaged Property, Lender shall automatically succeed to all rights of Borrower in and to any insurance policies and unearned insurance premiums and in and to the proceeds resulting from any damage to the Mortgaged Property prior to such sale or acquisition.

20.     CONDEMNATION.

(a)     Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of the Mortgaged Property, whether direct or indirect (a "Condemnation"). Borrower shall appear in and prosecute or defend any action or proceeding relating to any Condemnation unless otherwise directed by Lender in writing. Borrower authorizes and appoints Lender as attorney-in-fact for Borrower to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any Condemnation and to settle or compromise any claim in connection with any Condemnation. This power of attorney is coupled with an interest and therefore is irrevocable. However, nothing contained in this Section 20 shall require Lender to incur any expense or take any action. Borrower hereby transfers and assigns to Lender all right, title and interest of Borrower in and to any award or payment with respect to (i) any Condemnation, or any conveyance in lieu of Condemnation, and (ii) any damage to the Mortgaged Property caused by governmental action that does not result in a Condemnation.

(b)     Lender may apply such awards or proceeds, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to the restoration or repair of the Mortgaged Property or to the payment of the Indebtedness, with the balance, if any, to Borrower. Unless Lender otherwise agrees in writing, any application of any awards or proceeds to the Indebtedness shall not extend or postpone the due date of any monthly installments referred to in the Note, Section 7 of this Instrument, or change the amount of such installments. Borrower agrees to execute such further evidence of assignment of any awards or proceeds as Lender may require.

21.     TRANSFERS OF THE MORTGAGED PROPERTY OR INTERESTS IN BORROWER.

(a)     "Transfer" means (A) a sale, assignment, transfer or other disposition (whether voluntary, involuntary or by operation of law); (B) the granting, creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary or by operation of law); (C) the issuance or other creation of an ownership interest in a legal entity, including a partnership interest, interest in a limited liability company or corporate stock; (D) the withdrawal, retirement, removal or involuntary resignation of a partner in a partnership or a member or manager in a limited liability company; or (E) the merger, dissolution, liquidation, or consolidation of a legal entity or the reconstitution of one type of legal entity into another type of legal entity. For purposes of defining the term "Transfer," the term "partnership" shall mean a general partnership, a limited partnership, a joint venture and a limited liability partnership, and the term "partner" shall mean a general partner, a limited partner and a joint venturer.

(b)     "Transfer" does not include: (i) a conveyance of the Mortgaged Property at a judicial or non-judicial foreclosure sale under this Instrument, (ii) the Mortgaged Property becoming part of a bankruptcy estate by operation of law under the United States Bankruptcy Code, or (iii) a lien against the Mortgaged Property for local taxes and/or assessments not then due and payable.

(c)     The occurrence of any of the following events shall not constitute an Event of Default under this Instrument, notwithstanding any provision of Section 21(a) to the contrary:

(i)     a Transfer to which Lender has consented;

(ii)     a Transfer that occurs by devise, descent, or by operation of law upon the death of a natural person (unless such death itself is an Event of Default under Section 22(I) of this Instrument);

(iii)     the grant of a leasehold interest approved in writing by Lender;

(iv)     a Transfer of obsolete or worn out Personalty or Fixtures that are contemporaneously replaced by items of equal or better function and quality, which are free of liens, encumbrances and security interests other than those created by the Loan Documents or consented to by Lender;

(v)     the creation of a mechanic's, materialman's, or judgment lien against the Mortgaged Property which is released of record or otherwise remedied to Lender's satisfaction within 60 days of the date of creation; and

(vi)     if Borrower is a housing cooperative, corporation or association, the Transfer of more than 49 percent of the shares in the housing cooperative or the assignment of more than 49 percent of the occupancy agreements or leases relating thereto by tenant shareholders of the housing cooperative or association to other tenant shareholders.

(d)     The occurrence of any of the following Transfers shall not constitute an Event of Default under this Instrument, provided that Borrower has notified Lender in writing within 30 days following the occurrence of any of the following, all requirements of Lender in connection with such Transfer have been satisfied within 10 days of Lender's request therefore, and such Transfer does not constitute an Event of Default under any other Section of this Instrument:

(i)      a change of the Borrower's name, provided that UCC financing statements and/or amendments sufficient to continue the perfection of Lender's security interest have been properly filed and copies have been delivered to Lender;

(ii)     a change of the form of the Borrower not involving a transfer of the Borrower's assets and not resulting in any change in liability of any Initial Owner, provided that UCC financing statements and/or amendments sufficient to continue the perfection of Lender's security interest have been properly filed and copies have been delivered to Lender; and

(iii)    the merger of the Borrower with another entity when the Borrowing entity is the surviving entity.

(e)     The occurrence of any of the following events shall constitute an Event of Default under this Instrument:

(i)      a Transfer of all or any part of the Mortgaged Property or any interest in the Mortgaged Property (including without limitation the creation or existence of any Lien as provided in Section 16 of this Instrument);

(ii)     if Borrower is a limited partnership, a Transfer of (A) any general partnership interest, or (B) limited partnership interests in Borrower that would cause the Initial Owners of Borrower to own less than a Controlling Interest of all limited partnership interests in Borrower;

(iii)    if Borrower is a general partnership or a joint venture, a Transfer of any general partnership or joint venture interest in Borrower;

(iv)     if Borrower is a limited liability company, (A) a Transfer of any membership interest in Borrower which would cause the Initial Owners to own less than a Controlling Interest of all the membership interests in Borrower, (B) a Transfer of any membership or other interest of a manager in Borrower that results in a change of manager, or (C) a change of a nonmember manager;

(v)      if Borrower is a corporation, (A) the Transfer of any voting stock in Borrower which would cause the Initial Owners to own less than a Controlling Interest of any class of voting stock in Borrower or (B) if the outstanding voting stock in Borrower is held by 100 or more shareholders, one or more transfers by a single transferor within a 12-month period affecting an aggregate of 5% or more of that stock;

(vi)     if Borrower is a trust, (A) a Transfer of any beneficial interest in Borrower which would cause the Initial Owners to own less than a Controlling Interest of all the beneficial interests in Borrower, or (B) the termination or revocation of the trust, or (C) the removal, appointment or substitution of a trustee of Borrower; and

(vii)    a Transfer of any interest in a Controlling Entity which, if such Controlling Entity were Borrower, would result in an Event of Default under any of Sections 21(e)(i) through (vi) above.

Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to exercise any of its remedies with respect to an Event of Default under this Section 21.

22.     EVENTS OF DEFAULT. The occurrence of any one or more of the following shall constitute an Event of Default under this Instrument:

(a)     any failure by Borrower to pay or deposit when due any amount required by the Note, this Instrument or any other Loan Document;

(b)     any failure by Borrower to maintain the insurance coverage required by Section 19;

(c)     [Intentionally Omitted.]

(d)     fraud or material misrepresentation or material omission by Borrower, any of its officers, directors, trustees, general partners or managers or any guarantor in connection with (A) the application for or creation of the Indebtedness, (B) any financial statement, rent roll, or other report or information provided to Lender during the term of the Indebtedness, or (C) any request for Lender's consent to any proposed action;

(e)     any Event of Default under Section 21;

(f)     the commencement of a forfeiture action or proceeding, whether civil or criminal, which, in Lender's reasonable judgment, could result in a forfeiture of the Mortgaged Property or otherwise materially impair the lien created by this Instrument or MERS and/or Lender's interest in the Mortgaged Property;

(g)     any failure by Borrower to perform any of its obligations under this Instrument (other than those specified in Sections 22(a) through (f)), as and when required, which continues for a period of 30 days after notice of such failure by Lender to Borrower. However, no such notice or grace period shall apply in the case of any such failure which could, in Lender's judgment,

absent immediate exercise by Lender of a right or remedy under this Instrument, result in harm to Lender, impairment of the Note or this Instrument or any other security given under any other Loan Document;

(h)     any failure by Borrower to perform any of its obligations as and when required under any Loan Document other than this Instrument which continues beyond the applicable cure period, if any, specified in that Loan Document;

(i)     any exercise by the holder of any debt instrument secured by a mortgage, deed of trust or deed to secure debt on the Mortgaged Property of a right to declare all amounts due under that debt instrument immediately due and payable;

(j)     should any representation or warranty contained in this Instrument, the Borrower Certificate, any other Loan Document, or any other document submitted by Borrower to Lender be or become false or misleading in any material respect;

(k)     Borrower makes a general assignment for the benefit of creditors, voluntarily files for bankruptcy protection under the United States Bankruptcy Code or voluntarily becomes subject to any reorganization, receivership, insolvency proceeding or other similar proceeding pursuant to any other federal or state law affecting debtor and creditor rights, or an involuntary case is commenced against Borrower by any creditor (other than Lender) of Borrower pursuant to the United States Bankruptcy Code or other federal or state law affecting debtor and creditor rights to which Borrower voluntarily becomes subject , and is not dismissed or discharged within 60 days after filing; and

(l)     Borrower (if Borrower is a natural person) or any general partner or trustee or guarantor who is a natural person dies, or becomes incompetent, or purports to revoke or dispute the validity of, or liability under, any of the Loan Documents or any guaranty; provided, however, that in the event of a death Borrower (or a deceased Borrower's executor, administrator or successor trustee) shall within thirty (30) days after such death, present to Lender credit application(s) for proposed substitute borrower(s), general partner(s) or guarantor(s) on Lender's required forms, together, with such supporting financial information as Lender may require, and in such event Lender, in its sole, absolute and unfettered discretion after review of such application(s) and supporting information, may permit such substitute borrower(s), general partner(s) or guarantor(s) to assume unconditionally the obligations of such deceased person under the Loan Documents and/or guaranty, in a manner satisfactory to Lender, and, in doing so, cure such Event of Default.  In such event Borrower or the successor Borrower(s) shall pay all of Lender's attorneys' fees and other out of pocket costs in connection with such assumption.

23.     REMEDIES CUMULATIVE.  Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument or any other Loan Document or afforded by applicable law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order.

24.     FORBEARANCE.

(a)     Lender may (but shall not be obligated to) agree with Borrower, from time to time, and without giving notice to, or obtaining the consent of, or having any effect upon the obligations of, any guarantor or other third party obligor, to take any of the following actions: extend the time for payment of all or any part of the Indebtedness; reduce the payments due under this Instrument, the Note, or any other Loan Document; release anyone liable for the payment of any amounts under this Instrument, the Note, or any other Loan Document; accept a renewal of the Note; modify the terms and time of payment of the Indebtedness; join in any extension or subordination agreement; release any Mortgaged Property; take or release other or additional security; modify the rate of interest or period of amortization of the Note or change the amount of the monthly installments payable under the Note; and otherwise modify this Instrument, the Note, or any other Loan Document.

(b)     Any forbearance by Lender in exercising any right or remedy under the Note, this Instrument, or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by Lender of payment of all or any part of the Indebtedness after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments on account of the Indebtedness or to exercise any remedies for any failure to make prompt payment. Enforcement by Lender of any security for the Indebtedness shall not constitute an election by Lender of remedies so as to preclude the exercise of any other right available to Lender.  Lender's receipt of any awards or proceeds under Sections 19 and 20 shall not operate to cure or waive any Event of Default.

25.     LOAN CHARGES.  If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any charge provided for in any Loan Document, whether considered separately or together with other charges levied in connection with any other Loan Document, violates that law, and Borrower is entitled to the benefit of that law, that charge is hereby reduced to the extent necessary to eliminate that violation.  The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the principal of the Indebtedness.  For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness which constitutes interest, as well as all other charges levied in connection with the Indebtedness which constitute interest, shall be deemed to be allocated and spread over the stated term of the Note.  Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Note.

26. **WAIVER OF STATUTE OF LIMITATIONS.** Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce any Loan Document.

27. **WAIVER OF MARSHALLING.** Notwithstanding the existence of any other security interests in the Mortgaged Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Mortgaged Property shall be subjected to the remedies provided in this Instrument, the Note, any other Loan Document or applicable law. Lender shall have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Borrower and any party who now or in the future acquires a security interest in the Mortgaged Property and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Mortgaged Property be sold in the inverse order of alienation or that any of the Mortgaged Property be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

28. **FURTHER ASSURANCES.** Borrower shall execute, acknowledge, and deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements, transfers and assurances as Lender may require from time to time in order to better assure, grant, and convey to Lender the rights intended to be granted, now or in the future, to Lender under this Instrument and the Loan Documents.

29. **ESTOPPEL CERTIFICATE.** Within 10 days after a request from Lender, Borrower shall deliver to Lender a written statement, signed and acknowledged by Borrower, certifying to Lender or any person designated by Lender, as of the date of such statement, (i) that the Loan Documents are unmodified and in full force and effect (or, if there have been modifications, that the Loan Documents are in full force and effect as modified and setting forth such modifications); (ii) the unpaid principal balance of the Note; (iii) the date to which interest under the Note has been paid; (iv) that Borrower is not in default in paying the Indebtedness or in performing or observing any of the covenants or agreements contained in this Instrument or any of the other Loan Documents (or, if the Borrower is in default, describing such default in reasonable detail); (v) whether or not there are then existing any setoffs or defenses known to Borrower against the enforcement of any right or remedy of Lender under the Loan Documents; and (vi) any additional facts requested by Lender.

30. **GOVERNING LAW; CONSENT TO JURISDICTION AND VENUE.**

(a)     This Instrument, and any Loan Document which does not itself expressly identify the law that is to apply to it, shall be governed by the laws of the jurisdiction in which the Land is located (the "**Property Jurisdiction**").

(b)     Borrower agrees that any controversy arising under or in relation to the Note, this Instrument, or any other Loan Document shall be litigated exclusively in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have exclusive jurisdiction over all controversies which shall arise under or in relation to the Note, any security for the Indebtedness, or any other Loan Document. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

31. **NOTICE.**

(a)     All notices, demands and other communications ("**notice**") under or concerning this Instrument shall be in writing. Each notice shall be addressed to the intended recipient at its address set forth in page one of this Instrument, and shall be deemed given on the earliest to occur of (1) the date when the notice is received by the addressee; (2) the first Business Day after the notice is delivered to a recognized overnight courier service, with arrangements made for payment of charges for next Business Day delivery; or (3) the third Business Day after the notice is deposited in the United States mail with postage prepaid, certified mail, return receipt requested. As used in this Section 31, the term "Business Day" means any day other than a Saturday, a Sunday or any other day on which Lender is not open for business.

(b)     Any party to this Instrument may change the address to which notices intended for it are to be directed by means of notice given to the other party in accordance with this Section 31. Each party agrees that it will not refuse or reject delivery of any notice given in accordance with this Section 31, that it will acknowledge, in writing, the receipt of any notice upon request by the other party and that any notice rejected or refused by it shall be deemed for purposes of this Section 31 to have been received by the rejecting party on the date so refused or rejected, as conclusively established by the records of the U.S. Postal Service or the courier service.

(c)     Any notice under the Note and any other Loan Document which does not specify how notices are to be given shall be given in accordance with this Section 31.

32. **SALE OF NOTE; CHANGE IN SERVICER.** The Note or a partial interest in the Note (together with this Instrument and the other Loan Documents) may be sold one or more times without prior notice to Borrower. A sale may result in a change of the Loan Servicer. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given notice of the change.

33. **[Intentionally Omitted.]**

34.　'SUCCESSORS AND ASSIGNS BOUND. This Instrument shall bind, and the rights granted by this Instrument shall inure to, the respective successors and assigns of Lender and Borrower. However, a Transfer not permitted by Section 21 shall be an Event of Default.

35.　JOINT AND SEVERAL LIABILITY. If more than one person or entity signs this Instrument as Borrower, the obligations of such persons and entities under this Instrument, the Note and other Loan Documents shall be joint and several.

36.　RELATIONSHIP OF PARTIES; NO THIRD PARTY BENEFICIARY.

(a)　The relationship between Lender and Borrower shall be solely that of creditor and debtor, respectively, and nothing contained in this Instrument shall create any other relationship between Lender and Borrower.

(b)　No creditor of any party to this Instrument and no other person shall be a third party beneficiary of this Instrument or any other Loan Document. Without limiting the generality of the preceding sentence, (1) any arrangement (a "Servicing Arrangement") between the Lender and any Loan Servicer for loss sharing or interim advancement of funds shall constitute a contractual obligation of such Loan Servicer that is independent of the obligation of Borrower for the payment of the Indebtedness, (2) Borrower shall not be a third party beneficiary of any Servicing Arrangement, and (3) no payment by the Loan Servicer under any Servicing Arrangement will reduce the amount of the Indebtedness.

37.　SEVERABILITY; ENTIRE AGREEMENT; AMENDMENTS. The parties intend that the provisions of this Instrument and all other Loan Documents shall be legally severable. If any term or provision of this Instrument, or any other Loan Document, to any extent, be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Instrument or of such other Loan Document shall not be affected thereby, and each term and provision shall be valid and be enforceable to the fullest extent permitted by law. This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

38.　CONSTRUCTION. The captions and headings of the sections of this Instrument are for convenience only and shall be disregarded in construing this Instrument. Any reference in this Instrument to an "Exhibit" or a "Section" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an Exhibit attached to this Instrument or to a Section of this Instrument. All Exhibits attached to or referred to in this Instrument are incorporated by reference into this Instrument. Any reference in this Instrument to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Agreement includes the plural and use of the plural includes the singular. As used in this Instrument, the term "including" means "including, but not limited to."

39.　LOAN SERVICING. All actions regarding the servicing of the loan evidenced by the Note, including the collection of payments, the giving and receipt of notice, inspections of the Mortgaged Property, inspections of books and records, and the granting of consents and approvals, may be taken by the Loan Servicer unless Borrower receives notice to the contrary. If Borrower receives conflicting notices regarding the identity of the Loan Servicer or any other subject, any such notice from Lender shall govern.

40.　DISCLOSURE OF INFORMATION. Lender may furnish information regarding Borrower or the Mortgaged Property to third parties with an existing or prospective interest in the servicing, enforcement, evaluation, performance, purchase or securitization of the Indebtedness, including but not limited to trustees, master servicers, special servicers, rating agencies, and organizations maintaining databases on the underwriting and performance of similar mortgage loans, as well as governmental regulatory agencies having regulatory authority over Lender. Borrower irrevocably waives any and all rights it may have under applicable law to prohibit such disclosure, including but not limited to any right of privacy.

41.　NO CHANGE IN FACTS OR CIRCUMSTANCES. All information in the application for the loan submitted to Lender (the "Loan Application") and in all financial statements, rent rolls, reports, certificates and other documents submitted in connection with the Loan Application are complete and accurate in all material respects. There has been no material adverse change in any fact or circumstance that would make any such information incomplete or inaccurate.

42.　SUBROGATION. If, and to the extent that, the proceeds of the loan evidenced by the Note, or subsequent advances under Section 12, are used to pay, satisfy or discharge a Prior Lien, such loan proceeds or advances shall be deemed to have been advanced by Lender at Borrower's request, and Lender shall automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the Prior Lien, whether or not the Prior Lien is released.

43.　[Intentionally Omitted.]

44.　ACCELERATION; REMEDIES. At any time after the occurrence of an Event of Default, Lender, at Lender's option, may declare the Indebtedness to be immediately due and payable without further demand, and may foreclose this Instrument by judicial proceeding or by non-judicial foreclosure, shall be entitled to the appointment of a receiver, without notice, and may invoke any other remedies permitted by applicable law of the Property Jurisdiction or provided in this Instrument or in any other Loan Document. Lender may, at Lender's option, also foreclose this Instrument for any portion of the Indebtedness which is then due and payable, subject to the continuing lien of this Instrument for the balance of the Indebtedness. Lender shall be entitled to collect all costs and expenses allowed by New York law, including attorneys' fees, costs of documentary evidence, abstracts, title reports,

statutory costs and any additional allowance made pursuant to Section 8303 of the Civil Practice Law and Rules. The rights and remedies of Lender specified in this Instrument shall be in addition to Lender's rights and remedies under New York law, specifically including Section 254 of the Real Property Law. In the event of any conflict between the provision of this Instrument and the provisions of Section 254 of the Real Property Law, the provisions of this Instrument shall control. Without limiting the foregoing, Lender may institute a proceeding or proceedings, judicial or non-judicial, under Article 14 of the Real Property Actions and Proceedings code, by advertisement or otherwise, for the complete foreclosure of this Instrument in which case the Mortgaged Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner. Borrower expressly consents to a non-judicial foreclosure by power of sale pursuant to Article 14 of the Real Property Actions and Proceedings code.

45.     **SATISFACTION OF DEBT.** Upon payment of the Indebtedness, MERS and Lender shall discharge this Instrument. Borrower shall pay Lender's reasonable costs incurred in discharging this Instrument.

46.     **LIEN LAW.** Borrower will receive advances under this Instrument subject to the trust fund provisions of Section 13 of the Lien Law.

47.     **MAXIMUM PRINCIPAL AMOUNT.** Notwithstanding any provision set forth in this Instrument to the contrary, the maximum amount of principal indebtedness secured by this Instrument at execution, or which under any contingency may become secured by this Instrument at any time hereafter, is **$405,000.00**, plus all interest payable under the Note and all amounts expended by Lender after an Event of Default (a) for the payment of taxes, charges or assessments which may be imposed by legal requirements upon the Mortgaged Property; (b) to maintain the insurance required under this Instrument; (c) for any expenses incurred in maintaining the Mortgaged Property and upholding the lien of this Instrument, including the expense of any litigation to prosecute or defend the rights and lien created by this Instrument; and (d) for any amount, cost or charge to which Lender becomes subrogated, upon payment, whether under recognized principles of law or equity, or under express statutory authority, together with interest on all of the foregoing amounts at the Default Rate (as defined in the Note).

48.     **SECTION 291-f OF THE REAL PROPERTY LAW.** In addition to any other right or remedy contained in this Instrument or in any other Loan Document, Lender shall have all the rights against lessees of all or any part of the Mortgaged Property as are set forth in Section 291-f of the Real Property Law of New York.

49.     **TRANSFER TAX PROVISIONS.** Borrower covenants and agrees that:

(a)     in the event of a sale of the Mortgaged Property or other Transfer, Borrower will duly complete, execute and deliver to Lender, contemporaneously with the submission to the applicable taxing authority or recording officer, all forms and supporting documentation required by such taxing authority or recording officer to estimate and fix any and all applicable state and local real estate transfer taxes (collectively "Transfer Taxes") assessable by reason of such sale or other Transfer or recording of the deed evidencing such sale or other Transfer; and

(b)     Borrower shall pay all Transfer Taxes that may hereafter become due and payable with respect to any Transfer, and if Borrower fails to pay any such Transfer Taxes, Lender may pay such Transfer Taxes and the amount of such payment shall be added to the Indebtedness and, unless incurred in connection with a foreclosure of this Instrument, be secured by this Instrument. The provisions of this Section shall survive any Transfer and the delivery of the deed in connection with any Transfer.

50.     **INTERPRETATION.** It is the intention of Borrower and Lender that if any provision of this Instrument or any other Loan Document is capable of two (2) constructions, one of which would render the provision void, and the other of which would render the provision valid, then the provision shall have the meaning which renders it valid. Borrower acknowledges that Lender has attempted in good faith to assure that this Instrument, the Note and all other Loan Documents are in compliance with applicable laws of the Property Jurisdiction and federal laws. Nevertheless, in the event that any provision of this Instrument, the Note or any other Loan Document is not in compliance with any such laws, then the non-complying provision shall be deemed to be deleted or modified to the extent necessary to assure legal compliance. Similarly, in the event any language or disclosure required by applicable laws of the Property Jurisdiction is not contained in the Loan Documents, then the Loan Documents shall be deemed to have been supplemented to add such language or disclosure, or, at Lender's option, Lender may provide such additional language or disclosure. In either event, such legal requirement shall thereby be satisfied and such noncompliance shall be deemed to have been cured for all purposes. Within ten (10) days after written request by Lender, Borrower agrees to execute such documentation as Lender may require to cure any legal compliance issues or deficiencies in the Loan Documents.

[The balance of this page is intentionally left blank.]

51.     **FUTURE ADVANCES.** In addition to the Indebtedness, this Instrument shall (to the extent allowed by applicable law) also secure payment of the principal, interest and other charges due on all other future loans or advances made by Lender to Borrower (or any successor in interest to Borrower as the owner of all or any part of the Mortgaged Property) when the promissory note evidencing such loan or advance specifically states that it is secured by this Instrument ("Future Advances"), including all extensions, renewals and modifications of any such Future Advances.

52.     **AGREEMENT TO PROVIDE ADDITIONAL DOCUMENTS.** Borrower agrees to execute and acknowledge such additional documents as may be necessary or desirable in order to carry out the intent and purpose of this Instrument and the other Loan Documents, to confirm or establish the lien hereof, or to correct any clerical errors or legal deficiencies. Without limiting the foregoing, Borrower agrees to execute a replacement Note in the event the Note is lost or destroyed and to execute an amended and restated substitute Note to correct any clerical or other errors which may be discovered in the original Note. Failure of Borrower to comply with any request by Lender pursuant to this Section or under Section 28 above within ten (10) days after written request by Lender shall constitute a material Event of Default hereunder.

53.     **EXECUTION IN COUNTERPARTS.** This Instrument may be executed in multiple counterparts, and the separate signature pages and notary acknowledgments may then be combined into a single original document for recordation.

54.     **PAYMENT OF CLOSING COSTS.** If for any reason the escrow or closing agent fails to reserve and pay for all of Lender's fees, legal, documentation, appraisal, title, recording and other closing costs incurred in connection with the closing and funding of the Loan, then Borrower shall pay or reimburse Lender for any such unpaid fees or costs within ten (10) days after written demand by Lender itemizing the unpaid fees and costs. Failure of Borrower to so pay or reimburse Lender for any such unpaid fees and costs within ten (10) days after written demand by Lender shall constitute an Event of Default and, without limiting any other remedies of Lender, Lender may immediately instate the Default Rate under the Note until such amounts are received by Lender.

55.     **NON-OWNER OCCUPIED PROPERTY.** Throughout the term of the Loan, Borrower shall not occupy any portion of the Mortgaged Property in any manner. If Borrower is an entity other than a natural person, any persons with an ownership interest in Borrower shall not occupy any portion of the Mortgaged Property in any manner throughout the term of the Loan.

56.     **MERS PROVISIONS.**

    (a)     **NOMINEE OF CAPACITY OF MERS.** MERS serves as mortgagee of record and secured party solely as nominee, in an administrative capacity, for Lender and its successors and assigns and only holds legal title to the interests granted, assigned, and transferred herein. All payments or deposits with respect to the Indebtedness shall be made to Lender, all advances under the Loan Documents shall be made by Lender, and all consents, approvals, or other determinations required or permitted of Lender herein shall be made by Lender. MERS shall at all times comply with the instructions of Lender and its successors and assigns. If necessary to comply with law or custom, MERS (for the benefit of Lender and its successors and assigns) may be directed by Lender to exercise any or all of those interests, including without limitation, the right to foreclose and sell the Mortgaged Property, and take any action required of Lender, including without limitation, a release, discharge or reconveyance of this Instrument. Subject to the foregoing, all references herein to "Lender" shall include Lender and its successors and assigns.

    (b)     **RELATIONSHIP.** The relationship of Borrower and Lender under this Instrument and the other Loan Documents is, and shall at all times remain, solely that of borrower and lender (the role of MERS hereunder being solely that of nominee as set forth in subsection (a) above and not that of a lender); and Mortgagee neither undertakes nor assumes any responsibility or duty to Borrower or to any third party with respect to the Mortgaged Property. Notwithstanding any other provisions of this Instrument and the other Loan Documents: (i) Mortgagee is not, and shall not be construed to be, a partner, joint venturer, member, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower, and Mortgagee does not intend to ever assume such status; and (ii) Mortgagee shall not be deemed responsible for or a participant in any acts, omissions or decisions of Borrower; and (iii) Lender's activities in connection with this Instrument and the other Loan Documents shall not be "outside the scope of activities of a lender of money" within the meaning of California Civil Code Section 3434, as amended or recodified from time to time, and Mortgagee does not intend to ever assume any responsibility to any person for the quality, suitability, safety or condition of the Mortgaged Property.

    (c)     **NO LIABILITY.** Mortgagee shall not be directly or indirectly liable or responsible for any loss, claim, cause of action, liability, indebtedness, damage or injury of any kind or character to any person or property arising from any construction on, or occupancy or use of the Mortgaged Property, whether caused by or arising from: (i) any defect in any building, structure, grading, fill, landscaping or other improvements thereon or in any on-site or off-site improvement or other facility therein or thereon; (ii) any act or omission of Borrower or any of Borrower's agents, employees, independent contractors, licensees or invitees; (iii) any accident in or on the Mortgaged Property or any fire, flood or other casualty or hazard thereon; (iv) the failure of Borrower or any of Borrower's licensees, employees, invitees, agents, independent

contractors or other representatives to maintain the Mortgaged Property in a safe condition; or (v) any nuisance made or suffered on any part of the Mortgaged Property.

57.   WAIVER OF TRIAL BY JURY.  BORROWER, MERS AND LENDER EACH (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS INSTRUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER, MERS AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

ATTACHED EXHIBIT.  The following Exhibit is attached to this Instrument:

Exhibit "A"          Description of the Land

THIS MORTGAGE SECURES A VARIABLE RATE PROMISSORY NOTE.  THIS MORTGAGE IS A FIRST MORTGAGE. NO FURTHER ENCUMBRANCES MAY BE RECORDED AGAINST THE REAL PROPERTY WITHOUT THE PRIOR WRITTEN CONSENT OF LENDER. FAILURE TO COMPLY WITH THIS PROVISION SHALL CONSTITUTE AN EVENT OF DEFAULT AND AT THE LENDER'S OPTION THE LOAN SHALL IMMEDIATELY BECOME DUE AND PAYABLE.  CONSENT TO ONE FURTHER ENCUMBRANCE SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO REQUIRE SUCH CONSENT TO FUTURE OR SUCCESSIVE ENCUMBRANCES.

IN WITNESS WHEREOF, Borrower has signed and delivered this Instrument or has caused this Instrument to be signed and delivered by its duly authorized representative.

BORROWER:

_____
KAYE VASSEL

_____
PAUL VASSEL

The attached mortgage covers real property improved by a one or two family dwelling only.

The attached mortgage covers real property principally improved or to be improved by one or more structures containing in the aggregate not more than six residential dwelling units, each having their own separate cooking facilities.

The attached mortgage does not cover real property improved as described above.

State of New York                           ) ss.
County of ___NASSAU_____              )

On the 17TH day of APRIL 2008 in the
year 2008, before me, the undersigned, a Notary Public in
and for said state, personally appeared **KAYE VASSEL**,
personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument.

_____
Signature of Notary Public

SEAL

Moshe Freund
Notary Public, State of New York
No. 01FR6131321
Qualified in Kings County
Commission Expires August 1, 2009

State of New York,  ) ss.
County of NASSAU   )

On the 17TH day of APRIL, 2008 in the year 2008, before me, the undersigned, a Notary Public in and for said state, personally appeared PAUL VASSEL, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Signature of Notary Public

Moshe Freund
Notary Public, State of New York
No. 01FR6131321
Qualified in Kings County
Commission Expires August 1, 2009

SEAL

# EXHIBIT "A"

## DESCRIPTION OF THE LAND

ALL that certain plot, piece or parcel of land situate lying and being in the Borough of Queens, County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Westerly side of Merrick Boulevard (formerly Merrick Road) distant 40.19 feet Southerly from the corner formed by the intersection of the Westerly side of Merrick Boulevard with the Southerly side of 109th Avenue (formerly Packard Avenue);

RUNNING THENCE Westerly and parallel with 109th Avenue and part of the distance through a party wall, 104.06 feet;

THENCE Southerly at right angles to 109th Avenue, 19.31 feet;

THENCE Easterly again parallel with 109th Avenue and part of the distance through a party wall, 108.16 feet to the Westerly side of Merrick Boulevard;

THENCE Northerly along the Westerly side of Merrick Boulevard, 19.74 feet to the point or place of BEGINNING.

PROPERTY ADDRESS:  109 -18 Merrick Boulevard, Jamaica, New York 11433

# EXHIBIT 3

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO

Foley & Lardner LLP
90 Park Avenue
New York, New York 10016
Attn: Barry Felder, Esq.

---

**County: Kings**
**Block: 10188**
**Lot:    8**
Assignor's MIN No. 1006126-0000000276-1

## ASSIGNMENT OF MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT, ASSIGNMENT OF ASSIGNMENT OF LEASES AND RENTS, AND ASSIGNMENT OF UCC FINANCING STATEMENT

FOR VALUE RECEIVED, the receipt and sufficiency of which are hereby acknowledged, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation ("Assignor"), does hereby grant, assign, deliver, convey, transfer and set over unto GREYSTONE BANK, a North Carolina bank, its successors and assigns ("Assignee"), all of Assignor's right, title and interest in and to the following Loan Documents as evidenced by such instruments:

1.      That certain Mortgage, Assignment of Rents and Security Agreement, dated effective April 1 7, 2008, executed by Kaye Vassel and Paul Vassel, as mortgagors, to Mortgage Electronic Registration Systems, Inc., a Delaware corporation, solely as nominee for lender Greystone Bank and its successors and assigns, and recorded on May 1, 2008 as CFRN No. 2008000176736, in the Office of the City Register of the City of New York, against the real property described on Exhibit "A" attached hereto and incorporated herein by reference.

2.      That certain Assignment of Leases and Rents, dated as of April 17, 2008, executed by Kaye Vassel and Paul Vassel, as assignors thereunder, to Mortgage Electronic Registration Systems, Inc., a Delaware corporation, as assignee thereunder, and recorded on May 1, 2008 as CFRN No. 2008000176737, in the Office of the City Register of the City of New York.

3.      That certain UCC Financing Statement, dated as of April 17, 2008, executed by Kaye Vassel and Paul Vassel, as debtors, to Mortgage Electronic Registration Systems, Inc., a Delaware corporation, as a secured party and solely as nominee for lender Greystone Bank and its successors and assigns, against personalty described therein, and recorded on May 1, 2008 as CFRN No. 2008000176738, in the Office of the City Register of the City of New York.

IN WITNESS WHEREOF, Assignor has caused this instrument to be executed by its duly authorized officer as of the date set forth in the notary acknowledgment below.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
a Delaware corporation

By: _____
Print Name: *Allison Berman*
Title: *Certifying Officer*

NYC_801854.1

## ACKNOWLEDGEMENT

State of New York      )
                       ) ss
County of New York     )

On the 20th day of *May* in the year 2010 before me personally came Allison Berman, to me known, who, being by me duly sworn, did depose and say that she has an office at 152 West 57th Street, New York, New York 10019; that she is the person described herein; and that she signed her name hereto with authority on behalf of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

_____
Notary Public

```
DAVID WITT
Notary Public - State of New York
NO. 01WI6064809
Qualified in Westchester County
My Commission Expires 10/1/13
```

NYC_801854.1

## EXHIBIT "A"
## LEGAL DESCRIPTION


THE LAND REFERRED TO HEREIN IS SITUATED IN QUEENS COUNTY, STATE OF NEW YORK, AND IS DESCRIBED AS FOLLOWS:


BEGINNING at a point on the southerly side of Roosevelt Avenue distant 275.00 feet westerly from the corner formed by the intersection of the westerly side of 108th Street and the southerly side of Roosevelt Avenue;

Running thence southerly at right angles to Roosevelt Avenue and part of the distance through a party wall 100.00 feet;

Thence westerly at right angles 25.00 feet;

Thence northerly again at right angles 100.00 feet to the southerly side of Roosevelt Avenue;

Thence easterly along the southerly side of Roosevelt Avenue 25.00 feet to the point or place of BEGINNING.

PROPERTY ADDRESS: 104-54 Roosevelt Avenue, Corona, New York 11368

SAID PROPERTY IS IDENTIFIED BY ASSESSOR'S PARCEL NUMBER(S):
SECTION: 11 BLOCK: 1984; LOT: 22

# Exhibit B

Barry Felder
Rachel Kramer
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
(212) 682-7474
bgfelder@foley.com
rkramer@foley.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------X

GREYSTONE BANK,

                Plaintiff,

   -against-

KAYE VASSEL and PAUL VASSEL,

                Defendants.

--------------------------------------------------X

Case No. 10-cv-2356

**NOTICE OF PENDENCY**

*2010 JUN 17 PM 2:41 QUEENS COUNTY CLERK RECEIVED*

      NOTICE IS HEREBY GIVEN that an action has been commenced and is now pending in the United States District Court for the Eastern District of New York, upon a complaint of the above-named plaintiff, a copy of which is filed herewith, against the above-named defendants for foreclosure of a first mortgage lien executed by defendants and delivered to Greystone in the principal amount of Four Hundred Five Thousand and 00/100 Dollars ($405,000.00), and established by a Mortgage, Assignment of Rents and Security Agreement dated April 17, 2008 (the "Mortgage"). The Mortgage was duly recorded in the Office of the City Register of the City of New York on May 1, 2008 in CRFN No. 2008000176736, and was duly indexed according to law, and the mortgage tax, if any imposed upon the recording therefore, was duly paid.

      NOTICE IS FURTHER GIVEN that the property affected by this action is situated entirely within the County of Queens and known as 109-18 Merrick Boulevard, Jamaica,

New York, designated as Block 10188, Lot 45 on the Land Map of the County of Queens, hereby

designated pursuant to CPLR 6511(b) as being the Block which is affected by the notice of

pendency of this action and bounded by and described as follows:

See attached Schedule A.

Dated: June 17, 2010

FOLEY & LARDNER LLP

By: _____
    Barry G. Felder
    Rachel E. Kramer
    90 Park Avenue
    New York, New York 10016
    (212) 682-7474
    Attorneys for Plaintiff
    Greystone Bank

TO THE CLERK OF QUEENS COUNTY:

Please index the foregoing Notice of Pendency of Action according to law against the defendants for Block 10188, Lot 45 on the Land Map of the County of Queens.

TO:

Kaye Vassel and Paul Vassel
105-45 171st Place
Jamaica, NY 11433

2

# SCHEDULE A

## LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land situate lying and being in the Borough of Queens, County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Westerly side of Merrick Boulevard (formerly Merrick Road), distant 40.19 feet Southerly from the corner formed by the intersection of the Westerly side of Merrick Boulevard with the Southerly side of 109th Avenue (formerly Packard Avenue);

RUNNING THENCE Westerly and parallel with 109th Avenue and part of the distance through a party wall, 104.06 feet;

THENCE Southerly at right angles to 109th Avenue, 19.31 feet;

THENCE Easterly again parallel with 109th Avenue and part of the distance through a party wall, 108.16 feet;

THENCE Northerly along the Westerly side of Merrick Boulevard, 19.74 feet to the point or place of BEGINNING.

PROPERTY ADDRESS: 109-18 Merrick Boulevard, Jamaica, New York 11433

NYC_821669.1

# Exhibit C

**ORIGINAL**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

—————————————————————————X

**GREYSTONE BANK,**                                          Case No.: CV10-2356

                    Plaintiff(s)               **ANSWER**


      -against-

**KAYE VASSEL and PAUL VASSEL**

                    Defendant(s)

—————————————————————————X

      **Defendant(s), KAYE VASSEL and PAUL VASSEL,** as and for his/her/their Answer to

Plaintiff's Complaint, respectfully alleges as follows:

      1.     Denies the allegations contained in paragraph(s) numbered 2, 3, 4, 5 and 6 of the

Complaint.

### AS AND FOR A RESPONSE TO THE FIRST CAUSE OF ACTION

      2.     Denies the allegations contained in paragraph(s) 7, 8, 9, 10, 11, 12, 13, 14, 15, 16,

17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33

### AS AND FOR A RESPONSE TO THE SECOND CAUSE OF ACTION

      3.     Denies the allegations contained in paragraph(s) 34, 35 and 36 of the Complaint.

### AS AND FOR A RESPONSE TO THE THIRD CAUSE OF ACTION

      4.     Denies the allegations contained in paragraph(s) 37, 38, 39, 40 and 41 of the

Complaint.


RECEIVED
JUL 1 2 2010
PRO SE OFFICE

## AS AND FOR A RESPONSE TO THE FOURTH CAUSE OF ACTION

5.      Denies the allegations contained in paragraph(s) 42, 43, 44, 45 and 46 of the Complaint.

## AS AND FOR A RESPONSE TO THE FIFTH CAUSE OF ACTION

6.      Denies the allegations contained in paragraph(s) 47, 48, 49 and, 50 of the Complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

7.      Plaintiff's Complaint fails to state a cause of action upon which relief may be granted.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

8.      This Court lacks personal jurisdiction over the defendant(s).

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

9.      This action is wrongly brought in Federal Court.  This matter ought to have been commenced in State Court pursuant to the decision in **Butner v. United States**, 440 US 48 (1979).

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

10.      Upon information and belief, Plaintiff has breached his Agreement with Defendant(s) (the Agreement).

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

11.      The purported agreement (the "Purported Agreement") upon which Plaintiff relies for this action,  is not enforceable or  binding  upon Defendant.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

12.      Plaintiff has failed to perform under the terms of the Agreement and should therefore be estopped from claiming damages under said Agreement.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

13.     Plaintiff comes to Court with unclean hands and is consequently disentitled to equitable relief.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

14.     Plaintiff is estopped from claiming herein based on the doctrine of waiver.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

15.     Plaintiff is estopped from claiming herein based on the doctrine of laches.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

16.     Plaintiff has failed to make demand for payment prior to commencing these proceedings.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

17.     Plaintiff's action is barred by the applicable Statute of Limitations.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

18.     Plaintiff's action is barred by the applicable Statute of Frauds.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

19.     Plaintiff may not maintain their respective cause(s) of action against the Defendant(s) herein since Plaintiff has alleged conduct of others over whom these Defendant(s) had no authority and/or control.

## AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

20.     Each and every cause of action alleged in the Verified Complaint is barred since there is no privity between Plaintiff and Defendant.

## AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

21.      Plaintiff has failed to register with the Department of State of New York in order to conduct business in New York.

## AS AND FOR A SIXTEENTH AFFIRMATIVE DEFENSE

22.      Each and every cause of action alleged in the Verified Complaint is barred since there is no privity or insufficient privity between Plaintiff and Defendant.

## AS AND FOR A SEVENTEENTH AFFIRMATIVE DEFENSE

23.      Plaintiff is not authorized to conduct business in New York and as such cannot maintain the within lawsuit.

## AS AND FOR A EIGHTTEENTH AFFIRMATIVE DEFENSE

24.      This Court is not vested with subject matter jurisdiction.

## AS AND FOR A NINETEENTH AFFIRMATIVE DEFENSE

25.      Plaintiff is not vested with standing to commence the within action.

## AS AND FOR A TWENTIETH AFFIRMATIVE DEFENSE

26.      Plaintiff Violated of the Home Ownership and Equity Protection Act of 1994 ("HOEPA*").

## AS AND FOR A TWENTY FIRST AFFIRMATIVE DEFENSE

27.      Plaintiff failed to notify Defendant or disclose to Defendant that this was a transaction covered under HOEPA. A mortgage is covered under HOEPA if:

(a) it is a closed-end credit transaction;

(b) it is not used to construct or acquire a building;

(c) the loan is secured by a mortgage on the borrower's principal dwelling; or

(d) it meets either (1) an APR trigger, or (2) a points trigger.

28.     On information and belief, fees were paid which were not disclosed on the HUD-1 Settlement Statement, the Truth in Lending Disclosure Form or on the Itemization of Amount Financed Form.  Defendant never received a signed copy of the HUD-1 Settlement Statement. This was a violation of the disclosure requirements of the Real Estate Settlement and Procedures Act.

## COUNTERCLAIM

## AS AND FOR A FIRST COUNTERCLAIM

29.     Defendant states that the Plaintiff herein has filed a frivolous and fraudulent lawsuit, causing Defendant to suffer damages for malicious prosecution, abuse of process of the Court and/or wrongful use of Civil Proceedings resulting in damages in the sum of $500,000.00 along with attorney's fees and costs.

**WHEREFORE**, Defendant demands judgment as follows:

a.     Dismissing the First Cause of Action in its entirety;
b.     Dismissing the Second Cause of Action in its entirety;
c.     Dismissing the Third Cause of Action in its entirety;
d.     Dismissing the Fourth Cause of Action in its entirety;
e.     Dismissing the Fifth Cause of Action in its entirety;
f.     On the Counterclaim awarding judgment in the sum of $500,000.00 and continuing together with interest, costs, disbursements and attorney's fees;
g.     Awarding the Defendant the costs and disbursement of the action and such other and further relief as this Court deem just and proper.

**DATED:**     Jamaica, New York
              July 1?, 2010

                                        Yours etc.

                                        By: Paul Vassel (Pro Se)
                                        105-43 171st Place
                                        Jamaica, NY 11433

To:     Foley & Lardner, LLP
          90 Park Avenue
          New York, NY 10016

UNITED STATES DISTRICT COURT
EASTER DISTRICT OF NEW YORK

GREYSTONE BANK,

                                        CASE NO.: CV10-2356

                    Plaintiff(s)


        -against-


KAYE VASSEL and PAUL VASSEL

                    Defendant(s)


ANSWER AND COUNTERCLAIM

PRO SE
Paul Vassel
105-43 171 Place
Jamaica, NY 11433
Tel- (718)206-4411
Fax- (718) 206-4410

"WE DO NOT ACCEPT NOTICE BY ELECTRONIC TRANSMISSION (FAX)"

To:
Attorney(s) for                         Service of a copy of the within
is hereby admitted
Dated:                                       Attorney(s) for

                        PLEASE TAKE NOTICE
                         NOTICE OF ENTRY
            That the within is a (certified) true copy of an ORDER entered in the office of the clerk of the within
named court on                              20
                        NOTICE OF SETTLEMENT
            That an Order of which the within is a true copy will be presented for settlement to the
Hon.                                        one of the judges of the within named court, at
on                              , 200    , at 10:00 A.M.
Dated:   Jamaica, New York
To:

ORIGINAL

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————————————————— X

**GREYSTONE BANK,**

                                             **Index No.:  CV10-2356**

                     Plaintiff(s)                  **AFFIDAVIT OF
SERVICE**

        -against-

**KAYE VASSEL and PAUL VASSEL**

                     Defendant(s)

————————————————————————— X

**STATE OF NEW YORK**   )
                             s.s
**COUNTY OF QUEENS**   )

       Paul Vassel being duly sworn deposes and says, that deponent is not a party to the
action, is over eighteen (18) years of age and resides at 105-43 171st Place, Jamaica, NY
11433 and that on July 12, 2010, I served the foregoing Answer and Counterclaim on :

                   Rachel Kramer, Esq.
                   Foley & Lardner, LLP
                   90 Park Avenue
                   New York, NY 10016

by regular mail, mailing each in a sealed envelope, with postage prepaid thereon and
depositing same in a post office box under the exclusive care and custody of the United
States Postal Service within the State of New York.

                                  _____
                                  Paul Vassel
                                  105-43 171st Place
                                  Jamaica, NY 11433
                                  (718) 206-4411
                                  (718) 206 4410 facsimile

Sworn to before me this
/ 2th day of July, 2010

_____
**NOTARY PUBLIC**

MICHAEL E. PEARSON
Notary Public, State of New York
No. 01PE6194402
Qualified in Queens County
Commission Expires October 3rd, 2013



RECEIVED
JUL 1 2 2010
PRO SE OFFICE

# Exhibit D

Barry G. Felder
Rachel E. Kramer
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
(212) 682-7474
bgfelder@foley.com
rkramer@foley.com
Attorneys for Plaintiff Greystone Bank

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------X

GREYSTONE BANK,

               Plaintiff,

    -against-

KAYE VASSEL and PAUL VASSEL,

               Defendants.

Case No. 10-cv-2356 (KAM)

**REPLY TO COUNTERCLAIM**

------------------------------------------------------X

      Plaintiff Greystone Bank ("Greystone"), by its attorneys, Foley & Lardner LLP, answers

the Defendants' counterclaim as follows:

      Greystone denies the allegations contained in paragraph 29 of Defendants' counterclaim.

### FIRST AFFIRMATIVE DEFENSE

Defendants' counterclaim fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Defendants' counterclaim is barred by the express terms of the Note and Mortgage, as

those terms are defined in the Complaint.

### THIRD AFFIRMATIVE DEFENSE

To the extent Defendants are alleging fraudulent conduct, Defendants have failed to plead their counterclaim with the specificity required by Fed. R. Civ. P. 9.


WHEREFORE, Greystone demands judgment dismissing Defendants' counterclaim, granting judgment in favor of Greystone on its complaint, and granting Greystone such other and further relief as the Court may deem just and proper.


Dated: New York, New York
      August 2, 2010               Respectfully submitted,

                        FOLEY & LARDNER LLP

                        By: _____/s/*Rachel Kramer*_____
                            Barry Felder
                            Rachel Kramer
                        90 Park Avenue
                        New York, New York 10016
                        (212) 682-7474
                        bgfelder@foley.com
                        rkramer@foley.com
                        Attorneys for Plaintiff Greystone Bank

NYC_842632.1

# Exhibit E

Image



Thank you. Please wait a moment while we retrieve your check image.

Paul Vassal
Kayo Garriox Vassal
100-02.111 St Place
Jamaica, NY 11433

2097
50-8080/2214

12/24/09

PAY TO THE ORDER OF  GREYSTONE BANK    $ 3338.34

Thirty Three hundred Thirty Eight 34/100  DOLLARS

**NEFCU**

For 000085357700

⑆221480807⑆         2097

Front

Back

Close

Image                                                                        Page 1 of 1

Thank you. Please wait a moment while we retrieve your check image.



Back

Front

Close

# Exhibit F

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | | |
|---|---|---|
| Greystone Bank | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   10-cv-2356 |
| Kaye Vassel and Paul Vassel | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Nassau Educators Federal Credit Union, 1000 Corporate Drive, Westbury, New York 11590

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

SEE ATTACHMENT A

| Place:  Foley & Lardner LLP, 90 Park Ave, NY NY 10016<br>          Attn: Rachel Kramer | Date and Time:<br><br>          05/11/2011 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:     04/27/2011

| *CLERK OF COURT* | OR | *[signature]* |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*     Greystone Bank
_____ , who issues or requests this subpoena, are:

Rachel Kramer, Foley & Lardner LLP, 90 Park Ave NY NY 10016
(212) 338-3545
rkramer@foley.com

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   10-cv-2356

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date:  _____          _____
                                              *Server's signature*

                                             _____
                                              *Printed name and title*

                                             _____
                                              *Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | | |
|---|---|---|
| Greystone Bank | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   10-cv-2356 |
| Kaye Vassel and Paul Vassel | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Nassau Educators Federal Credit Union, 1000 Corporate Drive, Westbury, New York 11590
Attention:

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

SEE ATTACHMENT A

| Place: Foley & Lardner LLP, 90 Park Avenue<br>New York, New York 10016<br>(Rachel Kramer, 212-338-3545) | Date and Time:<br><br>05/17/2011 10:00 am |
|---|---|

The deposition will be recorded by this method:   stenographic, audio and/or video recording

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   04/27/2011

*CLERK OF COURT*

OR   _____

_____          _____
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Greystone Bank
_____ , who issues or requests this subpoena, are:

Rachel Kramer, Foley & Lardner LLP, 90 Park Ave NY NY 10016
(212) 338-3545
rkramer@foley.com

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   10-cv-2356

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## ATTACHMENT A

## DEFINITIONS

"Account" means the bank account of Paul Vassel and Kaye Vassel at Nassau Educators Federal Credit Union (NEFCU), account number 00489654020.

"Defendants" means Paul Vassel and Kaye Vassel, individuals residing at 105-43 171 Place, Jamaica, New York.

## TOPICS OF DEPOSITION TESTIMONY

1.  Payment and processing of checks and electronic payments made by the Defendants to Greystone Bank from the Account between December 1, 2008 and the present.

2.  Payment, processing, and identity of the recipients of the following checks from the Account: (a) Check Nos. 1943, 2097, 2130, 2145, 2177, 2161, 2178, and 2187; and (b) any other checks paid to Greystone Bank from the Account.

## DOCUMENTS TO BE PRODUCED

1.  Copies of the front and back of each of the following checks from the Account: Check Nos. 1943, 2097, 2130, 2145, 2177, 2161, 2178, and 2187.

2.  Copies of the front and back of any check not listed in "1" above that were paid from the Account to Greystone Bank.

3.  Records sufficient to show, with respect to each of the checks provided in response to "1" and "2" above, (1) the amount paid, (2) the payee, (3) the date the check was cashed, (4) the date, if any, on which the check was returned for insufficient funds, and (5) the date on which the check funds were paid to the payee.

# Exhibit G

221480807
ABA_NUM :
AMOUNT :          300.00
AUXONUS :            0
PROCESS_DATE : 12/28/2009
SEQUENCE NUMBER :   614686546
SERIAL_NUMBER :     2097
TRAN_CODE :          0



ABA :      221480807
ACCT_NUM :
AMOUNT :       300.00
AUXONUS :         0
PROCESS_DATE : 12/28/2009
SEQUENCE NUMBER :    614686546
SERIAL_NUMBER :      2097
TRAN_CODE :            0

# Exhibit H

**Pitts, Alicia L.**

**From:** Pitts, Alicia L.
**Sent:** Tuesday, June 21, 2011 2:52 PM
**To:** lawfrd@gmail.com
**Cc:** Felder, Barry G.
**Subject:** FW: Greystone Bank v Vassel

Mr. Donald,

Please see below.

Regards,

Alicia

Alicia Pitts, Esq.
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016-1314
Tel: 212.338.3576
Fax: 212.687.2329

**From:** Felder, Barry G.
**Sent:** Tuesday, June 21, 2011 2:15 PM
**To:** 'Eric Oterson'
**Cc:** 'lawfed@gmail.com'
**Subject:** RE: Greystone Bank v Vassel

Eric, as discussed, I will prepare an affidavit for your review in lieu of a deposition. I will cc my adversary, Farrel Donald, who can advise if he has any objections.

Barry G. Felder
Foley & Lardner LLP
90 Park Avenue
New York, NY 10016-1314

TEL   212.338.3540
FAX   212.687.2329
EMAIL  bgfelder@foley.com

**From:** Eric Oterson [mailto:EOterson@mynefcu.org]
**Sent:** Tuesday, June 21, 2011 12:27 PM
**To:** Felder, Barry G.
**Subject:** Greystone Bank v Vassel

Good afternoon, Mr. Felder.

Since it has been difficult for us to be able to discuss over the phone, I thought I might try an e-mail. On May 19th, our Research Unit sent to your offices (Rachel Kramer) copies of all checks in question on the original subpoena to produce documents. If you are not in receipt of these documents, I would be happy to fax them to you. I'm hoping this will be sufficient. If not, I will

have to get in touch with our Collections Unit as they typically handle dispositions.

Please let me know if the disposition is the only route.  If so, I'll work on making the appropriate arrangements.

Regards,


**Eric Oterson**
**Vice President, Back Office Operations**
**NEFCU**
**516-714-2919**
**eoterson@mynefcu.org**


**\*\*\*Please update your records as my email address has changed.**

# Exhibit I

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GREYSTONE BANK,

                Plaintiff,

    -against-

KAYE VASSEL and PAUL VASSEL,

              Defendants.

Case No. 10-cv-2356 (KAM) (RER)

**DECLARATION OF ERIC OTERSON**

ERIC OTERSON declares as follows under penalty of perjury:

1.      I am Vice President of Back Officer Operations at Nassau Educators Federal Credit Union ("NEFCU" or the "Bank").

2.      My responsibilities include supervising the maintenance of bank records, which are stored and maintained by the Bank in the ordinary course of business. Thus, the documents requested in this matter are within my custody and control.

3.      Annexed hereto as **Exhibit A** are true and accurate records (except for the redaction of account number information), from the account of Kaye and Paul Vassel between the period of December 1, 2008 to the present, of check numbers: 1943, 2097, 2130, 2145, 2177, 2161, 2178, and 2187.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 22, 2011
New York, New York

_____
Eric Oterson

# EXHIBIT A

_NUM :
MOUNT :       3338.34
UXONUS :          0
PROCESS_DATE : 12/08/2009
EQUENCE NUMBER :   517255206
ERIAL_NUMBER :     1943
RAN_CODE :        0

Paul Vassel
Kaye James- Vassel
105-43 171 St Place
Jamaica, NY 11433

1943
50-8080/2214

11/25/09   Date

PAY TO THE
ORDER OF   GREYSTONE BANK          $ 3338.34

Thirty Three hundred Thirty Eight 34/100   Dollars

**NEFCU**
Nassau Educators Federal Credit Union
Exceptional Banking Services for Exceptional People
1000 Corporate Drive
Westbury, NY 11590
"www.nefcu.com"

For 000008535700

⑈221480807⑈ 0▮▮▮▮▮▮  1943

WILDLIFE PORTRAITS

ABA :      221480807
CCT_NUM :
MOUNT :       3338.34
UXONUS :          0
PROCESS_DATE : 12/08/2009
EQUENCE NUMBER :   517255206
ERIAL_NUMBER :     1943
RAN_CODE :        0

**_NUM :**

**MOUNT :** 300.00

**UXONUS :** 0

**ROCESS_DATE :** 12/28/2009

**EQUENCE NUMBER :** 614686546

**ERIAL_NUMBER :** 2097

**RAN_CODE :** 0

GRIZZLY BEAR

Paul Vassel
Kaye James-Vassel
105-43 171 St Place
Jamaica, NY 11433

2097
50-8080/2214

12/24/09  Date

PAY TO THE
ORDER OF   Crescendo Computers   | $ 300 00

Three hundred 00/100   Dollars

**NEFCU**
1000 Corporate Drive
Westbury, NY 11590
www.nefcuonline.org

For  Coat

⑈221480807⑈   0   ⑈ 2097

WILDLIFE PORTRAITS

**BA :** 221480807

**CCT_NUM :**

**MOUNT :** 300.00

**UXONUS :** 0

**ROCESS_DATE :** 12/28/2009

**EQUENCE NUMBER :** 614686546

**ERIAL_NUMBER :** 2097

**RAN_CODE :** 0

_NUM :
MOUNT :  3338.34
UXONUS :  0
ROCESS_DATE : 01/14/2010
EQUENCE NUMBER :  317037342
ERIAL_NUMBER :  2130
RAN_CODE :  0

Paul Vassel
Kaye James-Vassel
105-43 171 St Place
Jamaica, NY 11433

2130
50-8080/2214

1/6/10
Date

PAY TO THE ORDER OF  Grey Stone loan Servicing  | $ 3338·34

Thirty Three hundred Thirty Eight 34/100  Dollars

**NEFCU**
1000 Corporate Drive
Westbury, NY 11590
www.ngassced.org

For  8535700

⑆221480807⑆ 0██████ ⑈ 2130

WILDLIFE PORTRAITS®

ABA :  221480807
CCT_NUM :
MOUNT :  3338.34
UXONUS :  0
PROCESS_DATE : 01/14/2010
SEQUENCE NUMBER :  317037342
SERIAL_NUMBER :  2130
RAN_CODE :  0

Greystone Servicing Corporation,
Inc.
By: Leslie F. Dominy
Vice President
PAY TO THE ORDER OF
Greystone Bank

For Deposit Only
To the account of Greystone Bank
Prior Endorsements Guaranteed

221480807

_NUM :

MOUNT :      3338.34

AUXONUS :         0

PROCESS_DATE : 02/19/2010

SEQUENCE NUMBER :     410473794

SERIAL_NUMBER :      2145

TRAN_CODE :         0

---

*Paul Vassel*
*Kaye James-Vassel*
*105-43 177 St Place*
*Jamaica, NY 11433*

2145
50-8080/2214

2/6/10   Date

*Greystone Loan Servicing*       $ 3338.34

*Thirty Three hundred Thirty Eight 34/100*       Dollars

**NEFCU**
1000 Corporate Drive
Westbury, NY 11590
www.nefcu.org

For   8535700

⑉221480807⑉   0_____   2145

ABA :      221480807

ACCT_NUM :

AMOUNT :      3338.34

AUXONUS :         0

PROCESS_DATE : 02/19/2010

SEQUENCE NUMBER :     410473794

SERIAL_NUMBER :      2145

TRAN_CODE :         0

Greystone Servicing Corporation
Inc.

Betsy Vartanian
Executive Vice President

PAY TO THE ORDER OF
Greystone Bank

For Deposit Only
To the Account of Greystone Bank
Prior Endorsements Guaranteed

221480807
_NUM :
MOUNT :        3338.34
UXONUS :        0
PROCESS_DATE : 03/12/2010
SEQUENCE NUMBER :   215698719
SERIAL_NUMBER :     2177
TRAN_CODE :         0

Paul Vassel
Kaye James-Vassel
105-43 171 St Place
Jamaica, NY 11433

2177
60-8080/2214

3/1/10

Date

PAY TO THE
ORDER OF

Eventstone Bank                        $ 3338.34

Thirty Three hundred Thirty Eight 34/100                      DOLLARS

NEFCU
NASSAU EDUCATORS FEDERAL CREDIT UNION
Exclusive Banking Service for Professional People
1000 Corporate Drive
Westbury, NY 11590
www.nassaued.org

For   8535700

⑆221480807⑆  0                    2177

Herand Olano                                                 WILDLIFE PORTRAITS®

ABA :   221480807
ACCT_NUM :
AMOUNT :       3338.34
AUXONUS :        0
PROCESS_DATE : 03/12/2010
SEQUENCE NUMBER :   215698719
SERIAL_NUMBER :     2177
TRAN_CODE :         0

For Deposit Only
To the account of Greystone Bank
Prior Endorsements Guaranteed

221480807
_NUM :
OUNT :      3338.33
UXONUS :        0
ROCESS_DATE : 07/09/2010
EQUENCE NUMBER :    613150929
ERIAL_NUMBER :      2161
RAN_CODE :        0

**GRIZZLY BEAR**

Paul Vasset
Kaye James Vasset                                    2161
105-43 111 St Place                              50-8080/2214
Jamaica, NY 11433

7/2/10   Date

PAY TO THE
ORDER OF    Greystone Bank              $ 3338·33

Twenty Three hundred Thirty Eight   Dollars

**NEFCU**   1000 Corporate Drive
Westbury, NY 11590
Exceptional Banking Services for Exceptional People

For   8535700

⑈221480807⑈  0            2161

Harjeno Clarke

BA :    221480807
CCT_NUM :
MOUNT :     3338.33
UXONUS :        0
ROCESS_DATE : 07/09/2010
EQUENCE NUMBER :    613150929
ERIAL_NUMBER :      2161
RAN_CODE :        0

For Deposit Only
To the account of Greystone Bank
Prior Endorsements Guaranteed

221480807

T_NUM :

MOUNT :          3338.34

UXONUS :            0

PROCESS_DATE : 04/16/2010

EQUENCE NUMBER :      219673298

ERIAL_NUMBER :     2178

RAN_CODE :            0

**GRIZZLY BEAR**

Paul Vassel
Kaye James-Vassel
105-43 171 St Place
Jamaica, NY 11433

2178
50-8080/2214

4/1/10

PAY TO THE
ORDER OF    Greystone Bank              $ 3338.34

Thirty Three hundred Thirty Eight 34/100  Dollars

**NEFCU**
NASSAU EDUCATORS FEDERAL CREDIT UNION    1000 Corporate Drive
Westbury, NY 11590
www.nefcu.org

For  8535700

⑆221480807⑆  ⑈ 2178

Harland Clarke                                      WILDLIFE PORTRAITS©

BA :      221480807

CCT_NUM :

MOUNT :       3338.34

UXONUS :          0

PROCESS_DATE : 04/16/2010

EQUENCE NUMBER :      219673298

ERIAL_NUMBER :      2178

RAN_CODE :            0

For Deposit Only
To the account of Greystone Bank
Prior Endorsements Guaranteed

221480807

T_NUM :

MOUNT :        3338.34

UXONUS :        0

ROCESS_DATE : 05/25/2010

SEQUENCE NUMBER :        313643325

SERIAL_NUMBER :        2187

TRAN_CODE :        0



BA :        221480807

CCT_NUM :

MOUNT :        3338.34

UXONUS :        0

ROCESS_DATE : 05/25/2010

EQUENCE NUMBER :        313643325

ERIAL_NUMBER :        2187

RAN_CODE :        0