UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

FIRSTSTORM PARTNERS 2, LLC,

                   Plaintiff,

    -against-

KAYE VASSEL and PAUL VASSEL,

                  Defendants.
---------------------------------------X

**MEMORANDUM AND ORDER**

10-CV-2356(KAM)(RER)

**KIYO A. MATSUMOTO, United States District Judge:**

      On May 24, 2010, Greystone Bank ("Greystone")
commenced this action against defendants Kaye Vassel and Paul
Vassel (together, "defendants" or the "Vassels") to foreclose on
a first mortgage lien on certain real property designated as
Block 10188, Lot 45 with an address of 109-18 Merrick Boulevard,
Jamaica, New York (the "Property"). (*See generally* ECF No. 1,
Complaint filed 5/24/10 ("Compl.").) Pursuant to a scheduling
order of this court, on September 22, 2011, Greystone filed a
motion for summary judgment, which defendants did not oppose.
(ECF No. 30, Motion for Summary Judgment filed 9/22/11.)
Following the acquisition of the Note and Mortgage at issue in
this action by FirstStorm Partners 2, LLC ("FirstStorm" or
"plaintiff"), FirstStorm was substituted for Greystone as
plaintiff in the action. (Order Granting Motion to Substitute
Party dated 10/26/11.)

On March 8, 2012, Magistrate Judge Reyes issued a
Report and Recommendation recommending that the court grant
plaintiff's unopposed motion for summary judgment, and ordered
that any objections to the Report and Recommendation be
submitted by March 26, 2012.  (ECF No. 39, Report and
Recommendation dated 3/8/12 ("R&R").)  On May 23, 2012, after
receiving no objections from defendants, the court issued an
order adopting Judge Reyes' Report and Recommendation dated
March 8, 2012, ordering plaintiff to submit additional
documentation setting forth the amounts due and owing, and
allowing defendants until June 8, 2012 to respond to plaintiff's
submission.  (ECF No. 41, Order Adopting Report and
Recommendation dated 5/23/12.)  Plaintiff made its submission
and defendants did not respond.  (*See* ECF Nos. 42-43.)  On
August 15, 2012, the court granted plaintiff's motion setting
the amounts due and owing, and issued an order and judgment of
foreclosure and sale of the Property in favor of defendants,
which was entered the same day.  (ECF No. 44-45, 47, Order and
Judgment of Sale dated 8/15/12.)  As discussed in greater detail
below, the foreclosure sale of the Property occurred outside the
doors of the Eastern District courthouse on September 13, 2012,
as provided by the Amended Notice of Sale served on defendants
and their counsel.  (ECF No. 56, Referee's Report of Sale dated
10/2/12, at Ex. 1 (Amended Notice of Sale and accompanying

Affidavit of Service dated 8/17/2012).)

Presently before the court is the motion to vacate the court's August 15, 2012 order and judgment of sale filed by *pro se* defendants[1] Paul and Kaye Vassel.  (ECF No. 50 ("Mot. to Vacate").)  For the reasons that follow, defendants' *pro se* motion must be denied in its entirety.

### BACKGROUND

As noted above, *pro se* defendants Paul and Kaye Vassel filed the instant motion to vacate in response to the court's order and judgment of sale dated August 15, 2012 permitting the foreclosure sale of the Property.  (*See* Mot. to Vacate, at 1.) On August 17, 2012, plaintiff served the court's August 15, 2012 order and judgment of sale via regular mail upon defendants at their current residence; defendants' counsel of record was served via the ECF system.  (ECF No. 48, Affidavit of Service dated 8/17/12.)  Also on August 17, 2012, plaintiff served an Amended Notice of Sale[2] for the Property ("Amended Notice of Sale") upon defendants at their residence (as well as upon their counsel of record, via ECF), specifying that the Property "will sell at auction to the highest bidder outside the front doors of

---

[1] Although the docket reflects that the Vassels were represented by Farrel Donald, Esq. at the time they filed their motion to vacate, the court has since granted the Vassels' respective motions to proceed *pro se* in this case, given the unusual facts surrounding Mr. Donald's purported representation of the Vassels.  (*See* Order Granting Motion to Withdraw dated 12/18/12.)  The Vassels' motion to vacate is thus deemed a *pro se* motion.
[2] The record is silent as to why this document was titled the "Amended" Notice of Sale.

the U.S. Courthouse, 225 Cadman Plaza East, Brooklyn, N.Y. on Thursday, September 13, 2012 at 10:00 a.m." (ECF No. 56, Referee's Report of Sale dated 10/2/12 ("Report of Sale"), at Ex. 1 (Amended Notice of Sale and accompanying Affidavit of Service dated 8/17/2012); *see also* ECF No. 52, Plff. Opp. dated 9/14/12 at 1, n.2.)

On September 12, 2012, defendants Paul and Kaye Vassel submitted a *pro se* motion, pursuant to Rule 60 of the Federal Rules of Civil Procedure, to vacate the court's August 15, 2012 order and judgment permitting the foreclosure sale. (ECF No. 50 ("Mot. to Vacate").) The Vassels also submitted a "Notice of Lis Pendens" in connection with the Property on September 12, 2012. (ECF No. 49.) Because the Vassels' September 12, 2012 motion to vacate and Notice of Lis Pendens were not entered onto the court's docket, however, until September 14, 2012, the day after the foreclosure sale was held, the court was not immediately aware of the September 12, 2012 filings when they were submitted. (*See* ECF No. 50, notation by *pro se* clerk dated 9/14/12.) The court will deem the Vassels' *pro se* motion to vacate the court's order and judgment of sale and Notice of Lis Pendens to have been made on September 12, 2012. The court nonetheless finds defendants' applications to be without legal merit and respectfully denies their motion to vacate for the reasons set forth herein.

4

According to the Report of Sale dated October 2, 2012 and prepared by the court-appointed referee, Michael King, Esq., the sale of the Property took place on September 13, 2012, "outside the front doors" of the U.S. Courthouse, 225 Cadman Plaza East, Brooklyn, New York.  (ECF No. 56, Report of Sale ¶¶ 2-3.)  Mr. King averred that he conducted this sale on September 13, 2012 in person, and that:

> [A] few minutes after 10:00 a.m. on September 13, 2012, I made a loud announcement in the lobby of the U.S. Courthouse at 225 Cadman Plaza East, Brooklyn, New York, that a foreclosure sale would be conducted outside the front doors of the Courthouse.  At approximately 10:15 a.m., I again announced the sale outside the front doors of the U.S. Courthouse and read aloud the terms of the sale.  The only individuals present outside the courthouse were a U.S. Marshal and Plaintiff's counsel. At one point, an individual who later identified himself as a federal judge visiting from Louisiana interrupted the reading of the terms of sale to inquire about the proceedings.  Apart from those individuals, I did not observe anyone else standing in the area outside the courthouse doors.  After reading the terms of sale, I called for bids.

(*Id.* ¶ 3.)  Subsequently, plaintiff FirstStorm Partners 2 LLC became the winning bidder with a bid of $250,000.00.  (*Id.* ¶ 4.) Plaintiff assigned its foreclosure bid to FirstStorm Properties 2 LLC that same day, and Mr. King "made, executed, and delivered" the deed.  (*Id.* ¶¶ 5-6.)  As reflected in publicly available property records, the market value of the Property at

5

the time of the foreclosure sale was $324,000.00.[3]

As noted above, the Vassels' motion to vacate was not entered onto the court's docket until September 14, 2012.  After receiving defendants' motion to vacate, plaintiff filed a letter in opposition to the motion on September 14, 2012.  (ECF No. 52, Plff. Opp. dated 9/14/12.)  Plaintiff's opposition letter informed the court that the foreclosure sale was noticed for and took place on September 13, 2012, that the deed had already been delivered to plaintiff's assignee, and that defendants had been on notice of the sale for more than three weeks.  (*Id.* at 1.)

On September 24, 2012, the Vassels replied via letter to plaintiff's opposition.  (ECF No. 53, Def. Reply dated 9/24/12.)  In addition to alerting the court of several serious allegations against their then-attorney, Farrel Donald, Esq., discussed below in further detail, defendants acknowledged that they received the Amended Notice of Sale on August 19, 2012. (*Id.* at 1-3.)  Mr. Vassel also conceded that he received the court's August 15, 2012 order and judgment of sale of the Property.  (*Id.* (noting that Mr. Vassel inquired of his attorney why Mr. Donald "did not opposed to [*sic*] the summary judgment

---

[3] The court may take judicial notice of publicly available documents in deciding a Rule 60 motion for relief from judgment.  *See, e.g., Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 127 (2d Cir. 2009) (taking judicial notice of publicly available documents while deciding appeal from Rule 60 motion).  Here, the publicly available records from the New York City Department of Finance reflect that the Property's fair market value, as assessed by the City, was $324,000 for the tax year beginning July 1, 2012.

motion as stated in the notice from Rachel Kramer").)  Mr.
Vassel further stated that "[p]rior to the sale date, I
contacted Michael King," but "Michael King refused to give me
any information of the sale of the property.  I also faxed him
document of pending litigation [*sic*], but he ignored my calls
and my letter."  (*Id.* at 3.)  Importantly, Mr. Vassel stated
that "I went to the court on September 13, 2012, along with a
witness Fabian Facey.  No one at the court included [*sic*] the
clerk of the court was aware of any sale going on at the court
located at 255 [*sic*] Cadman Plaza East, Brooklyn, NY as noted in
the notice of sale."  (*Id.*)

　　　　Subsequently, on October 1, 2012, plaintiff submitted
a letter to correct certain factual statements made the Vassels
in their September 24, 2012 letter to the court.  (ECF No. 54
Plff. Ltr. dated 10/1/12.)  According to plaintiff's counsel,
Rachel Kramer, Esq., she and her colleague, Barry Felder, Esq.,
(also counsel for plaintiff),

> arrived outside the front doors of the
> Courthouse a few minutes before 10:00 a.m.
> The Referee, Michael King, arrived shortly
> after 10:00, announced the sale inside the
> Courthouse lobby, made a second, loud
> announcement outside the front doors of the
> Courthouse, and then proceeded (at
> approximately 10:15 a.m.) to read aloud the
> terms of sale and call for bids.  Mr.
> Vassel, whom I know by sight from our
> several meetings in Magistrate Judge Reyes'
> courtroom, did not appear; nor did I see him
> in the Courthouse lobby.

(*Id.* at 1.)  Ms. Kramer also stated that the only people who approached during the sale was a U.S. Marshal stationed at the door, and United States District Judge Tucker Melancon, a visiting judge from the Western District of Louisiana, who stopped on his way into the courthouse to inquire about the nature of the auction proceeding.  (*Id.* at 1-2.)  Thus, according to plaintiff, the foreclosure sale of the Property took place at the noticed time and place in accordance with the Amended Notice of Sale.  (*Id.* at 2.)

On October 23, 2012, the court held a status conference to address defendants' allegations in their September 14, 2012 letter regarding the misconduct of their attorney of record, Mr. Donald.  (Minute Entry and Order dated 10/23/12.)  Although Mr. Donald failed to appear on October 23, 2012 as ordered, Mr. Vassel appeared on his own behalf and argued, *inter alia*, that Mr. Donald's failure to litigate the case is grounds for vacating the court's order and judgment of sale.  Plaintiff's counsel also appeared and, thereafter, with the court's permission, submitted a letter in opposition to the points made by Mr. Vassel at the October 23, 2012 status conference.[4]  (ECF No. 64, Plff. Suppl. Opp. dated 10/24/12.)

---

[4] Although defendants allege in a letter to the court dated January 31, 2013 that they did not receive plaintiff's supplemental letter in opposition to their motion dated October 24, 2012 (*see* ECF No. 78, Defs. Ltr. dated 1/31/13, at 1), the court has no reason to doubt plaintiff's representation that its October 24, 2012 supplemental letter was served on defendants via

On December 3, 2012, after initially attempting to address defendants' allegations regarding the misconduct of their attorney of record, the court issued a scheduling order setting a hearing date of December 13, 2012 and instructing the parties to be prepared to present evidence regarding the manner in which the foreclosure sale was conducted.  (Scheduling Order dated 12/3/12.)  A hearing regarding the manner in which the foreclosure sale of the Property was conducted was held on December 13, 2012.  (Minute Entry and Order dated 12/13/12; *see also* ECF No. 82, Transcript of December 13, 2012 Hearing ("Tr.").)  The court heard testimony from plaintiff's witnesses, Mr. King and Ms. Kramer, and from defendants' witnesses, Fabian Facey and Mr. Vassel himself.

Both Mr. King and Ms. Kramer testified at the hearing in accordance with their written submissions to the court described above.  Specifically, Mr. King testified that he arrived at the courthouse at or about 10:00 a.m. on September 13, 2012 to conduct the foreclosure sale of the Property, walked into the courthouse lobby and announced loudly that a sale was going to be conducted outside.  (Tr. at 6-7.)  Mr. King then

---

regular U.S. mail on that same day (*see* ECF No. 64, Plff. Suppl. Opp. dated 10/24/12, at 2; ECF No. 80, Plff. Ltr. dated 2/7/13 (confirming that service of plaintiff's October 24, 2012 supplemental letter was completed)).  Moreover, as plainly evidenced by defendants' January 31, 2013 letter, they did receive plaintiff's October 24, 2012 supplemental letter at some point and have submitted their response thereto, which the court has considered in deciding the instant motion.  Indeed, at a hearing before the court on December 13, 2012, Mr. Vassel acknowledged that he had received and responded to plaintiff's October 24, 2012 letter.  (Tr. at 63.)

walked outside the courthouse, where he met Ms. Kramer and Mr. Felder, who were also waiting outside the courthouse at that point, and commenced the sale by reading aloud the terms of the sale.[5] (*Id.* at 7-9.)  Mr. King also testified that while he read the terms of sale, he was interrupted by a man who asked what Mr. King was doing and what Mr. King was reading.  (*Id.* at 8.)  Mr. King initially thought the gentleman was trying to interfere and motioned for one of the court officers to come over, but then the man identified himself as a visiting federal judge from the District of Louisiana who was merely inquiring as to the proceedings outside the courthouse.  (*Id.* at 8-9.)  Mr. King then recommenced reading the notice and terms of sale aloud and asked for bids.  (*Id.* at 9.)  According to Mr. King, plaintiff's counsel, Ms. Kramer, was the sole and winning bidder.  (*Id.*)  Mr. King further testified that at no point before, during, or after the sale did he see either Mr. Vassel or Mr. Fabian inside or outside the courthouse.  (*Id.* at 10.)

---

[5] Contrary to defendants' allegation in their January 31, 2013 letter (ECF No. 78), discussed *supra* note 4, Mr. King's testimony at the December 13, 2012 hearing was not inconsistent with his Report of Sale, in which Mr. King stated that the only other people at the sale were a visiting federal judge from the District of Louisiana, a U.S. Marshal, and "Plaintiff's counsel." The word "counsel" as Mr. King used it in his Report of Sale can be either singular or plural.  Thus, as Mr. King clarified at the December 13, 2012 hearing, both of plaintiff's counsel, Ms. Kramer and Mr. Felder, were present.  Additionally, as noted *infra*, the security camera recording of the entrance to the courthouse on September 13, 2012 confirms that both Ms. Kramer and Mr. Felder were present with Mr. King at the foreclosure sale, as Mr. King stated at the hearing.  There is, therefore, absolutely no merit to defendants' allegation that Mr. King perjured himself at the December 13, 2012 hearing, and any similar allegations made in the future will be stricken from the record.

Ms. Kramer testified that she arrived at the courthouse on September 13, 2012 at approximately 9:50 a.m. and stepped inside the courthouse lobby for about a minute in order to see if Mr. Vassel was there, because she was expecting him to attend. (*Id.* at 28-29.)  Ms. Kramer further testified that she would have recognized Mr. Vassel had he been there, because she has met him in person during previous court conferences. (*Id.* at 28.)  When Ms. Kramer did not see Mr. Vassel inside the courthouse building at about ten minutes to 10:00 a.m., she then went outside for the sale, in front of the courthouse doors. (*Id.* at 29.)  Ms. Kramer testified that the foreclosure sale took place outside the center doors to the courthouse, at the apex of the curved doors. (*Id.* at 50-51.)  Ms. Kramer confirmed that she heard Mr. King read aloud the notice and terms of the sale, and that, on behalf of her client, she was the sole and winning bidder. (*Id.* at 29-30.)  Ms. Kramer also stated that the sale itself was probably concluded by 10:15 or 10:20 a.m., and that afterwards she and Mr. King proceeded to the park benches across the street from the courthouse doors to execute the sale paperwork. (*Id.*)  Ms. Kramer testified that at no point during the September 13, 2012 sale did she see Mr. Vassel either inside or outside the Eastern District courthouse. (*Id.* at 29.)

The court also heard the testimony of Fabian Facey, a

11

friend of Mr. Vassel who accompanied Mr. Vassel on September 13,
2012 to the Eastern District courthouse in order to attend the
foreclosure sale.  (*Id.* at 35-36.)  Mr. Facey testified that he
arrived with Mr. Vassel at the courthouse at 9:40 a.m. on
September 13, 2012.  (*Id.*)  Upon arriving, the two men went
inside the courthouse, proceeded through the courthouse security
screening line, and asked the courthouse security officers if
they knew of a foreclosure sale taking place that day.  (*Id.* at
36.)  Mr. Facey and Mr. Vassel then went to the clerk's office
to inquire, where they were told to go to the U.S. Marshal's
office.  (*Id.* at 38.)  After visiting the U.S. Marshal's office
in the basement of the courthouse and being told that no one
there knew of any sale being conducted, Mr. Facey and Mr. Vassel
went back upstairs to the lobby of the courthouse and walked
around until about 10:20 a.m.  (*Id.* at 38-39.)  Mr. Facey
testified that at no point during his presence inside the
courthouse lobby did he see any sign of a sale being conducted
in the courthouse, nor did he see Ms. Kramer, Mr. Felder, or Mr.
King (whom he met for the first time at the December 13, 2012
hearing).  (*Id.* at 36-37.)  According to Mr. Facey, neither he
nor Mr. Vassel exited the courthouse building until about 10:20
a.m., after not being able to locate the sale proceedings. (*Id.*
at 39.)

     Mr. Vassel's testimony at the hearing generally

comported with Mr. Facey's recollection of the events on
September 13, 2012.  Mr. Vassel testified that he intended to
bid at the foreclosure sale and that he and Mr. Facey arrived at
the courthouse at 9:40 a.m. on September 13, 2012.  (*Id*. at 42-
43.)  They first went into the courthouse and through the
security screening line and asked the court security officers if
they knew about the sale.  (*Id*. at 43.)  According to Mr.
Vassel, the security officers told Mr. Vassel they were unaware
of any sale, but that Mr. Vassel should check with the clerk of
court's office.  (*Id*. at 43.)  Mr. Vassel and Mr. Facey then
inquired at both the clerk of court and U.S. Marshal's offices
as to a sale at the courthouse on September 13, 2012.  (*Id*. at
43-44.)

        After learning that neither office knew of any sale
occurring at the courthouse that day, Mr. Vassel testified that
he and Mr. Facey walked around the interior of the courthouse
lobby until approximately 10:15 or 10:20 a.m.  (*Id*. at 45-46.)
Mr. Vassel further testified that he was able to see from the
inside of the courthouse lobby to the outside during the time he
and Mr. Facey were walking around the inside courthouse lobby,
because there is a "clear view" of the outside from inside the
courthouse lobby through the glass doors.  (*Id*. at 49.)  Mr.
Vassel, however, stated that he saw no sale or auction taking
place outside the building at that time.  (*Id*. at 45.)  Mr.

Vassel and Mr. Facey then proceeded back to the clerk's office to file an affidavit of service. (*Id*. at 45-46; *see also* ECF No. 51, Affidavit of Service filed and dated 9/13/12.) When he finally exited the courthouse at approximately 10:15 or 10:20 a.m., Mr. Vassel asked a court security officer stationed outside the building if there had been a sale while the officer was outside and the officer told Mr. Vassel that the officer did not see anyone. (Tr. at 45-46.)

On cross-examination, Mr. Vassel further testified that he was aware that the Amended Notice of Sale he was served with specified that the sale was to take place outside the courthouse doors. (*Id*. at 47.) Mr. Vassel also stated that during the period between 10:00-10:15 a.m., while he was walking around the interior of the courthouse lobby, he never physically went outside the courthouse. (*Id*. at 48-49.)

After the above testimony was elicited from the witnesses, Mr. Vassel made an oral application to the court to attempt to obtain any security camera recordings or videotape of the courthouse entrance doors during the relevant time period on September 13, 2012. (*Id*. at 56; *see also* Minute Entry dated 12/13/12.) The court was able to obtain such security camera recordings taken during the time period of 9:30 a.m. to 10:30 a.m. on September 13, 2012. After viewing this recording, the court made the following observations based on the security

14

camera's date and time stamp:

- **9:45 a.m.:** Ms. Kramer arrived at the courthouse doors.
- **9:48 a.m.:** Ms. Kramer and Mr. Felder can be seen standing together in front of the courthouse doors.
- **10:06 a.m.:** Mr. Vassel and Mr. Fabian arrive at the courthouse doors and can be seen talking to a U.S. Marshal standing outside the doors.  Neither Mr. Vassel nor Mr. Fabian appear to look in the direction where Ms. Kramer and Mr. Felder were standing, which was a few feet to the left of Mr. Vassel and Mr. Fabian.  Ms. Kramer can be seen looking away, to her left, at the moment Mr. Vassel and Mr. Fabian actually enter the courthouse doors.
- **10:16 a.m.:** Mr. King arrives at the courthouse doors and enters the lobby.
- **10:17 a.m.:** Mr. King exits the courthouse and can be seen reading from a piece of paper he is holding.  Ms. Kramer and Mr. Felder are standing next to Mr. King in front of the centermost courthouse doors.
- **10:19: a.m.:** Mr. King is approached by Judge Tucker Melancon, the visiting federal judge from the District of Louisiana, and a U.S. Marshal.
- **10:20 a.m.:** Judge Melancon leaves the sale site and Mr. King can be seen reading again from a piece of paper.
- **10:23 a.m.:** Mr. King can be seen waving his arm and speaking in a manner that appears he is calling for bids.
- **10:24 a.m.:** Mr. King and Ms. Kramer proceed west (outside of the security camera's view) toward the benches across the street from the courthouse doors.[6]

After the December 13, 2012 hearing on the foreclosure sale proceedings, a letter from the Vassels to the court dated January 31, 2013 was filed on February 4, 2013.  (ECF No. 78, Defs. Ltr dated 1/31/13.)  The Vassels' January 31, 2013 letter, in pertinent part,[7] reiterates defendants' arguments in support

---

[6] The security camera recording obtained by the court did not show Mr. Vassel and Mr. Facey exiting the courthouse doors on September 13, 2012, likely because the court only requested the recording taken between 9:30 a.m. and 10:30 a.m. on that day.
[7] As discussed *supra* notes 4 and 5, the Vassels also complained in their January 31, 2013 letter of not receiving service of plaintiff's supplemental

of their motion to vacate and also states their belief that
their former attorney, Mr. Donald, defrauded them by charging a
fee and failing to oppose plaintiff's summary judgment motion.
(*Id.* at 1-9.)  The Vassels also requested the court to sanction
Mr. Donald on their behalf, to order Mr. Donald to produce his
malpractice insurance policy, to subpoena Mr. Donald's bank
records, and to order Mr. Donald to pay them compensatory
damages in the amount of $1,000,000.  (*Id.* at 1-2.)

For the reasons that follow, the court is satisfied
that the September 13, 2012 foreclosure Sale of the Property was
conducted in accordance with the Amended Notice of Sale and New
York state law and there are no defects in the sale process that
would warrant setting aside the foreclosure sale.  Although the
court is sympathetic to the Vassels with respect to the highly
irregular and apparently deficient representation by their
counsel during this case, Mr. Donald's alleged failings in
defending his clients against plaintiff's foreclosure
proceedings do not constitute grounds for relief under Rule 60
of the Federal Rules of Civil Procedure.

---

letter in opposition to their motion to vacate dated October 24, 2012, and
also accused Mr. King of perjuring himself at the December 13, 2012 hearing.
For the reasons already discussed, the court finds no merit in either of
these contentions.

16

## DISCUSSION

### I.   There Are No Grounds to Set Aside the Foreclosure Sale Under New York Law

As a preliminary matter, the Vassels have not explicitly asserted that they have exercised or attempted to exercise the right of redemption to the Property.  Nonetheless, to the extent the Vassels' motion to vacate and Notice of Lis Pendens (which the court deems filed on September 12, 2012, the day before the sale was conducted) can be construed as an attempt to exercise the right of redemption, the court has considered this issue and, for the reasons that follow, finds that the Vassels would not be entitled to exercise the right of redemption.

Generally "[t]he owner of the equity of redemption or any person with an interest in the mortgaged premises has a right to redeem the property at any time prior to the actual sale under a judgment of foreclosure." *Mort. Elec. Sys., Inc. v. Rosser*, 801 N.Y.S.2d 779, at *2, 8 Misc. 3d 1003(A) (Sup. Ct. 2005) (citing *First Fed. Sav. & Loan Ass'n of Port Washington v. Smith*, 83 A.D.2d 601, 602, 441 N.Y.S.2d 309, 310 (2d Dep't 1981)).  New York Real Property Actions and Proceedings Law ("RPAPL") § 1341 sets forth the requirements for a defendant to redeem property subject to a foreclosure sale, to stay the sale, and to exercise his right of redemption: "[if] the defendant

17

pays into court the amount due for principal and interest and the costs of the action, together with the expenses of the proceedings to sell, if any, the court shall: (1) Dismiss the complaint without costs against plaintiff, if the payment is made before judgment directing sale; or (2) Stay all proceedings upon judgment, if the payment is made after judgment directing sale and before sale . . . ." Although a formal motion to stay the sale is unnecessary, the defendant must unconditionally "tender[] the full sum at any point before the property is actually sold at a foreclosure sale" in order to exercise the right of redemption. *NYCTL 1999-1 Trust v. 573 Jackson Ave. Realty Corp.*, 13 N.Y.3d 573, 579, 921 N.E.2d 195, 199 (2009).

In this case, although the court has deemed the Vassels' motion to vacate to have been filed prior to the sale (as discussed earlier), defendants did not tender the full amount owed prior to the sale as required by New York law. Moreover, although defendants stated in their September 24, 2012 letter to the court that "[w]e are willing and ready to settle the debt in full," (ECF No. 53 at 4), that is not sufficient to constitute an exercise of their right of redemption. The Vassels have made no showing that they made an unconditional tender of the full amount due, which New York courts have unstintingly required an owner to do in order to exercise the right of redemption. *See, e.g., NYCTL 1999-1 Trust*, 13 N.Y.3d

18

at 579, 921 N.E.2d at 199 (holding that right of redemption was
not exercised even where, prior to the sale, owner deposited
amount in excess of stated payoff amount into county clerk's
account, where documentation did not set forth specific purpose
of funds and sale thus went forth as noticed).  Thus, even if
the court construes the Vassels' motion to vacate and/or Notice
of Lis Pendens as a motion to stay the sale and exercise the
right of redemption, the court could not find in their favor.

        As an alternative to the right of redemption, New
York's Civil Practice Law and Rule § 2003, which may be applied
to property sales in mortgage foreclosure proceedings, provides
that "[a]t any time within one year after a sale made pursuant
to a judgment or order, but not thereafter, the court, upon such
terms as may be just, may set the sale aside for a failure to
comply with the requirements of the civil practice law and rules
as to the notice, time or manner of such sale, if a substantial
right of a party was prejudiced by the defect."  N.Y. C.P.L.R. §
2003; *CME Grp. Ltd. v. Cellini*, 661 N.Y.S.2d 740, 742, 173
Misc.2d 404, 407 (Sup. Ct. 1997).  Although the statute does not
define what constitutes a "substantial right of a party,"
Section 2003's commentary cites cases in which parties were not

provided with notice of a sale as examples of prejudice to substantial right.[8] *See* N.Y. C.P.L.R. § 2003 cmt. 1.

New York courts also have the inherent equitable power to ensure that a sale conducted pursuant to a judgment of foreclosure "is not made the instrument of injustice." *Mfrs. & Traders Trust Co. v. Foy*, 79 A.D.3d 825, 825, 914 N.Y.S.2d 185, 186 (2d Dep't 2010) (quoting *Guardian Loan Co. v. Early*, 47 N.Y.2d 515, 520, 392 N.E.2d 1240, 1243 (1979)).  In exercising that equitable power, a court may set aside a foreclosure sale only where "fraud, collusion, mistake, or misconduct casts suspicion on the fairness of the sale." *Alkaifi v. Celestial Church of Christ Calvary Parish*, 24 A.D.3d 476, 477, 808 N.Y.S.2d 230, 231 (2d Dep't 2005); *see also Cicorelli v. Hickey's Carting, Inc.*, 66 A.D.3d 626, 627, 887 N.Y.S.2d 176, 177 (2d Dep't 2009).  This power should be used "'sparingly and with great caution,'" *In re Ward*, 423 B.R. 22, 31 (Bankr. E.D.N.Y. 2010) (quoting *Guardian Loan Co.*, 47 N.Y.2d at 520, 392

---

[8] The Vassels have not challenged the adequacy of the Amended Notice of Sale itself nor have they argued that they never received it.  In fact, defendants acknowledged that they received the Amended Notice of Sale on or about August 19, 2012 in their letter to the court dated September 24, 2012 (*see* ECF No. 53 at 1) and also during the December 13, 2012 foreclosure sale hearing (Tr. at 42).  The Amended Notice of Sale also complies on its face with Eastern District Local Rule 83.4 for notices of sale of real estate, and RPAPL § 231(2)(a), which requires, among other things, that "[n]otice of such sale shall be given by the officer making it by publishing a notice of the time and place of the sale, containing a description of the property to be sold, in a newspaper published in the county in which the property is located, or, if there is none, in a newspaper published in an adjoining county."  The Referee's Report of Sale (ECF No. 56) sets forth the dates and newspapers in which the notice was published and attaches the Amended Notice of Sale, demonstrating that the Amended Notice of Sale complied with RPAPL § 231(2)(a) as well as the court's Local Rules.

N.E.2d at 1243), and "only to relieve a party from oppressive or unfair conduct," *Levitin v. Homburger*, 932 F. Supp. 508, 519 (S.D.N.Y. 1996), *aff'd*, 107 F.3d 3 (2d Cir. 1997).

With respect to the foreclosure sale of the Property held on September 13, 2013, the key question is whether Mr. Vassel's purported inability to actually find the location of the sale outside the courthouse doors, as noticed, constitutes prejudice to a substantial legal right. Although few cases involve allegations that a foreclosure sale was not held at the place and time for which it was noticed, existing case law indicates that a "substantial right" can be prejudiced if a party sets forth credible evidence that a prospective bidder was prevented *in fact* from attending a foreclosure sale. Several New York courts have refused to set aside judicial sales where the alleged defect in the sale related to the time and/or location of the same and there was evidence that bidders were able to locate the sale proceedings. *See, e.g., Long Is. Sav. Bank of Centereach v. Valiquette,* 183 A.D.2d 877, 877-78, 584 N.Y.S.2d 127, 128-29 (2d Dep't 1992) (finding no grounds to set aside sale noticed for the "steps" of courthouse but held inside due to inclement weather, where sale was held "approximately one foot inside glass doors in full view of the outside steps" and other bidders were present, demonstrating no prejudice); *Cellini*, 661 N.Y.S.2d at 741, 743, 173 Misc.2d at 405, 409

(finding no grounds to set aside sale based on location defect, where notice set sale "at" Westchester County Courthouse; longstanding custom is for judicial sales to be held only in lobby or rotunda of courthouse, which is "surrounded by glass on three sides," and was "easily visible to anyone from virtually any part of the lobby area and the outside"); *In re 824 S.E. Blvd. Realty, Inc.*, No. 11-cv-15728, 2012 WL 3561981, at *7-8 (Bankr. S.D.N.Y. Aug. 17, 2012) (notice of foreclosure sale with incorrect year not set aside because no "substantial right" prejudiced, court found no evidence that bidders were prevented from attending even though lender was the winning and only bidder).  In that same vein, a party's unilateral mistake in interpreting the date or location set forth in the sale notice is not grounds for setting aside an otherwise lawfully-conducted foreclosure sale.  *See, e.g., Fed. Nat'l Mortg. Ass'n v. New York Fin. & Mortg. Co.*, 222 A.D.2d 647, 647, 636 N.Y.S.2d 105, 106 (2d Dep't 1995) (holding that "unilateral mistake of the appellant's counsel as to the location of the foreclosure sale, while unfortunate, does not provide a sufficient basis for invalidating the sale"); *Crossland Mortg. Corp. v. Frankel*, 192 A.D.2d 571, 572, 596 N.Y.S.2d 130, 131 (2d Dep't 1993) (same).

On the other hand, New York courts have found grounds to set aside foreclosure sales where a discrepancy in the actual location of the sale when compared to the location described on

22

the notice of sale did, in fact, prevent bidders from attending
the sale. *See, e.g., Wayman v. Zymewski*, 218 A.D.2d 843, 844,
629 N.Y.S.2d 871, 872-73 (3d Dep't 1995) (foreclosure sale set
aside because published notice stated sale would be on
courthouse "steps" but sale took place in the courthouse lobby,
and respondent and another independent bidder averred they could
not find the sale proceedings to bid); *Weil v. Laube*, 235
N.Y.S. 14, 134 Misc. 454 (Sup Ct. 1929), *aff'd*, 227 A.D. 729,
236 N.Y.S. 919 (2d Dep't 1929) (sale vacated where sale was
noticed to be held at main entrance of courthouse but was held
in rotunda, proof submitted that other bidders could not find
out where sale was being held).  By contrast, in this case,
there was no discrepancy between the location set forth in the
Amended Notice of Sale and the actual location of the sale.

A foreclosure sale may also be set aside in limited
circumstances based on an extremely low sale price.  Where a
foreclosure sale is properly conducted, "it is 'black letter'
law that mere inadequacy of the foreclosure sale price is no
basis for setting the sale aside," however, "[a]ny irregularity
in the conduct of the sale that would permit judicial
invalidation of the sale under applicable state law deprives the
sale price of its conclusive force . . . and the transfer may be
avoided if the price received was not reasonably equivalent to
the property's actual value at the time of the sale." *BFP v.*

*Resolution Trust Corp.*, 511 U.S. 531, 542, 545-46 (1994).
Further, a foreclosure sale might also be set aside under state
foreclosure law if the price is so low as to "shock the
conscience or raise a presumption of fraud or unfairness." *Id.*
at 542 (citations omitted) (internal quotation marks omitted).
"Courts in New York have consistently held that foreclosure
sales below 10% of fair market value are unconscionable, while
sales at or above 50% of fair market value have been
consistently upheld." *In re 824 South East Blvd. Realty, Inc.*,
2012 WL 3561981, at *8; *see, e.g., Valiquette*, 183 A.D.2d at
878, 584 N.Y.S.2d at 129 (purchase price of 57% of property's
market value not unconscionable); *Polish Nat'l Alliance of
Brooklyn v. White Eagle Hall Co.*, 98 A.D.2d 400, 408, 470
N.Y.S.2d 642, 649 (2d Dep't 1983) (collecting cases). Indeed,
sales as low as 30% of fair market value have been upheld.
*E.g., Frank Buttermark Plumbing & Heating Corp. v. Sagarese*, 119
A.D.2d 540, 540, 500 N.Y.S.2d 551, 552 (2d Dep't 1986).

Based on the controlling case law set forth above and
the facts elicited at the December 13, 2012 foreclosure sale
hearing, there are no grounds to set aside the foreclosure sale
of the Property in this case. Thus, to the extent that the
Vassels' instant motion can be construed as a motion to vacate
the order of judgment and to set aside the foreclosure sale of
the Property held on September 13, 2012, the motion is denied.

24

As noted earlier, the testimony of the witnesses at the December 13, 2012 hearing and the security camera recording taken on September 13, 2012 all confirm that the foreclosure sale of the Property was conducted on the day and at the time and location set forth in the Amended Notice of Sale.  In fact, the security camera recording taken on September 13, 2012 confirms the court's own tentative findings at the December 13, 2012 hearing: that all parties were actually present on the date and at the time and location set forth in the Amended Notice of Sale, but, in an unfortunate series of events, missed encountering each other.  (*See* Tr. at 59-60.)

Additionally, although Mr. Vassel stated at the December 13, 2012 hearing that he could see from the inside of the courthouse to the outside between approximately 10:00 a.m. and 10:15 a.m. (when Mr. Vassel and Mr. Facey testified they were walking around inside the courthouse lobby) because there is a "clear view" of the outside through the courthouse's glass doors but that he saw no sale occurring (Tr. at 43, 49),[9] the security camera recordings taken of the courthouse entrance on

---

[9] Even if Mr. Vassel had argued that he was inside the courthouse lobby but not able to discern the sale proceedings, the court would follow the Second Department's decision in *Long Island Savings Bank of Centereach v. Valiquette*, 183 A.D.2d 877, 584 N.Y.S.2d 127 (2d Dep't 1992) and the Supreme Court of Westchester County's decision in *CME Group Ltd. v. Cellini*, 661 N.Y.S.2d 740, 661, 173 Misc.2d 404 (Sup. Ct. 1997), discussed above, which both found that a party cannot validly claim he was prevented from attending a foreclosure sale that took place on the other side of the glass doors of the courthouse and was thus easily visible to anyone on either side of the doors.

September 13, 2012 establish that the sale was, in fact, taking place outside the courthouse doors during that approximate time period.

Furthermore, while the court found all the witnesses who testified at the December 13, 2012 hearing to be credible, the uncontradicted testimony at the hearing demonstrates that Mr. Vassel's inability to find the location of the foreclosure sale outside the courthouse doors was not due to any defect in the Amended Notice of Sale or the manner in which the sale was conducted by Mr. King.  Mr. Vassel acknowledged that he was aware that the Amended Notice of Sale (which he received in a timely manner) indicated that the sale was to take place outside the courthouse doors.  (Tr. at 47-48.)  Yet, Mr. Vassel and Mr. Fabian both testified that neither of them actually went outside the courthouse doors at the time the sale was to take place, despite the Amended Notice of Sale.  (*Id*. at 48-49.)  Given that the sale was, in fact, occurring "outside" the courthouse doors on the day and at the time and location set forth in the Amended Notice of Sale, there was no defect in the manner in which the sale was conducted that would warrant relief for the Vassels. It is unfortunate that Mr. Vassel mistook the meaning of the words "outside the courthouse doors" on the Amended Notice of Sale, but under the applicable law, a party's unilateral mistake as to the location of the foreclosure sale, "while unfortunate,

26

does not provide a sufficient basis for invalidating the sale."
*Fed. Nat. Mortg. Ass'n*, 222 A.D.2d at 647, 636 N.Y.S.2d at 106.

Moreover, although in some circumstances courts may set aside foreclosure sales due to unconscionably low sale prices, those circumstances are not present in this case.  As discussed earlier, "[c]ourts in New York have consistently held that foreclosure sales below 10% of fair market value are unconscionable, while sales at or above 50% of fair market value have been consistently upheld."  *In re 824 South East Blvd. Realty, Inc.*, 2012 WL 3561981, at *9.  Here, the Property was purchased at the foreclosure sale for $250,000 at a time when, according to publicly available property records, the Property's fair market value was $324,000.  The foreclosure sale price thus represents approximately 77% of the Property's fair market value at the time of the sale, well within the range of those considered conscionable by New York courts.  *See, e.g., Valiquette*, 183 A.D.2d at 878, 548 N.Y.S.2d at 129 (purchase price of 57% of property's market value not unconscionable).
Therefore, even if the *pro se* defendants had argued that the foreclosure sale price was unconscionably low, the court could not set aside the sale on those grounds.

Additionally, as set forth below, although the court has been extremely troubled by the conduct of the Vassels' retained former attorney, Mr. Donald, in this case, neither Mr.

27

Donald's shortcomings as a legal representative nor the substantive arguments raised by the Vassels in their motion to vacate and supplemental filings warrant relief from the court's August 15, 2012 order and judgment of sale.

## II.   There Are No Grounds to Vacate the Court's Judgment Pursuant to Rule 60

In addition to the background facts set forth above regarding the foreclosure sale of the Property, the court has considered the following facts regarding Mr. Donald's representation of the Vassels in its determination of the Vassels' motion to vacate.

On July 26, 2011, in light of the parties' desire to begin motion practice in this case, the court ordered defendants' counsel of record, Mr. Donald, to confer with plaintiff's counsel to propose a joint briefing schedule for plaintiff's motion for summary judgment and defendants' motion to dismiss.  (Order dated 7/26/11.)  As set forth in plaintiff's letter to the court dated August 1, 2011, however, despite plaintiff's attempts to contact Mr. Donald, Mr. Donald failed to comply with the court's order to confer with plaintiff regarding a joint briefing schedule.  (ECF No. 29, Plff. Ltr. dated 8/1/11.)

On August 2, 2011, the court entered a briefing schedule for both of the parties' aforementioned motions.

(Order dated 8/2/11.)  Defendants' proposed motion to dismiss
the complaint, however, was never filed on the docket.  On
September 22, 2011, plaintiff filed a motion for summary
judgment, which defendants did not oppose.  (ECF No. 30, Plff.
Mot. for Summary Judgment, filed 9/22/2011.)  By letter dated
September 22, 2011, plaintiff's counsel informed the court of
Mr. Donald's failure to serve either an opposition to
plaintiff's summary judgment motion or to serve or submit
defendants' own proposed motion to dismiss in accordance with
the court-ordered briefing schedule.  (ECF No. 36, Plff. Ltr.
dated 9/22/11.)  Consequently, on September 23, 2011, the court
noted on the docket Mr. Donald's noncompliance with the August
2, 2011 scheduling order, deemed plaintiff's motion for summary
judgment unopposed, and referred the motion to Magistrate Judge
Reyes for a Report and Recommendation.  (Order Referring Motion
dated 9/23/11.)

On March 8, 2012, Magistrate Judge Reyes issued an
extremely thorough Report and Recommendation that considered all
of defendants' affirmative defenses and counterclaims and
recommended that the court grant plaintiff's motion for summary
judgment, and ordered that any objections to the Report and
Recommendation be submitted by March 26, 2012.  (ECF No. 39.)
On May 23, 2012, after receiving no objections from defendants,
the court issued an order adopting Judge Reyes' Report and

Recommendation dated March 8, 2012 granting plaintiff's summary judgment motion and ordered plaintiff to submit additional documentation setting forth the amounts due and owing, and allowed defendants until June 8, 2012 to respond to plaintiff's submission.  (ECF No. 41, Order Adopting Report and Recommendation dated 5/23/12.)  Plaintiff made its court-ordered submission and defendants did not respond.  (ECF Nos. 42-43.)  On August 15, 2012, the court granted plaintiff's motion setting the amounts due and owing, and issued an order and judgment of sale of the Property, which was entered that same day.  (ECF Nos. 44-45, 47.)

As discussed earlier in greater detail, on September 12, 2012, after summary judgment was granted to plaintiff and the foreclosure sale was noticed for September 13, 2012 (*see* ECF Nos. 48, 52, 56 at Ex. 1), the Vassels submitted a *pro se* motion to vacate the court's grant of summary judgment to plaintiff under Rule 60 (ECF No. 50) and a "Notice of Lis Pendens" (ECF No. 49).[10]  On September 14, 2012, plaintiff filed a letter response in opposition to the defendants' *pro se* motion to vacate.  (ECF No. 52.)

---

[10] As noted above, the court was unaware of the Vassels' September 12, 2012 filings because, proceedings *pro se*, the Vassels submitted their motion and Notice of Lis Pendens in hard copy to the clerk of court, which then took time to upload onto the docket. (*See* ECF No. 50, notation by *pro se* clerk dated 9/14/12.)

Thereafter, the Vassels informed the court by letter
dated September 24, 2012 that, after many fruitless attempts to
contact Mr. Donald after receiving the Amended Notice of Sale on
August 19, 2012, Mr. Donald represented on August 21, 2012 to
Mr. Vassel that Mr. Donald had filed a motion to dismiss and an
opposition to plaintiff's summary judgment motion on behalf of
defendants in this case.  (ECF No. 53 at 1-2.)  Defendants also
implied in their September 24, 2012 letter that the foreclosure
sale had not taken place on September 13, 2012.  (*Id.*)  On
October 1, 2012, plaintiff filed another letter in response to
defendants' September 24, 2012 letter, informing the court that
the foreclosure sale had indeed taken place, and that the
Vassels and their counsel had been served in advance of the sale
date with the Amended Notice of Sale.  (ECF No. 54.)

In light of defendants' September 24, 2012 letter and
plaintiff's October 1, 2012 response, the court issued an order
on October 1, 2012 directing Mr. Donald to submit a sworn
declaration by October 5, 2012 setting forth the status of his
representation of Paul and Kaye Vassel, or, if he no longer
represented them, documents setting forth the date of his
withdrawal and the fact of his notification to his clients of
his withdrawal.  (Order dated 10/1/12.)  Despite being served
with the court's order dated October 1, 2012 (*see* ECF No. 55,
Affidavit of Service dated 10/2/12), Mr. Donald failed to comply

31

and timely submit the required materials, which the court noted on the docket on October 9, 2012. Eventually, Mr. Donald did affirm under penalty of perjury that he filed an opposition to plaintiff's motion for summary judgment and also a motion to dismiss on defendants' behalf, without providing a filing date or any other details. (ECF No. 57, Affirmation of Farrel Donald, Esq. filed 10/15/12, ¶ 9.)

On October 15, 2012, the court issued a Scheduling Order setting an in-person status conference for October 18, 2012 to address the discrepancies between Mr. Donald's October 15, 2012 Affirmation and the court's docket, which reflects that Mr. Donald did not file any opposition to plaintiff's motion for summary judgment or a motion to dismiss on behalf of defendants. (Scheduling Order dated 10/15/12.) The court also ordered Mr. Donald to provide copies of the documents he purportedly filed on behalf of defendants, as he affirmed. (*Id.*) Again, despite being served with the Scheduling Order dated October 15, 2012 (*see* ECF No. 59, Certificate of Service dated 10/15/12), Mr. Donald failed to appear at the October 18, 2012 status conference or provide copies of any documents he filed on behalf of defendants, as ordered by the court on October 15, 2012. Instead, Mr. Donald's assistant contacted the court's chambers by telephone just two hours prior to the conference's start time

to inform the court that Mr. Donald was ill and could not attend.  (Order dated 10/18/12.)

By order dated October 18, 2012, the court noted Mr. Donald's sudden report of illness on the docket and also ordered Mr. Donald to submit a doctor's note before 5:00 p.m. on October 19, 2012 substantiating his inability to appear in court on October 18, 2012.  (Order dated 10/18/12.)  Mr. Donald filed the required document at 5:56 p.m. on October 19, 2012 (*see* ECF No. 61, Doctor's Note dated 10/19/12).  The court also rescheduled the status conference from October 18, 2012 to October 23, 2012 at 11:00 a.m. due to Mr. Donald's failure to appear on October 18, 2012.  (Order dated 10/18/12.)

As set forth in the court's Minute Entry and Order dated October 23, 2012, however, Mr. Donald again failed to appear on October 23, 2012 at 11:00 a.m. as ordered, which the court noted on the record.  Mr. Vassel appeared on his own behalf and argued, *inter alia*, that Mr. Donald's failure to litigate the case is grounds for vacating the court's order and judgment of sale.  Plaintiff's counsel also appeared and, thereafter, with the court's permission, submitted a letter in opposition to the points made by Mr. Vassel at the October 23, 2012 status conference.  (ECF No. 64, Plff. Suppl. Opp. dated 10/24/12.)

33

Subsequently, on October 23, 2012, the court issued an Order to Show Cause again requiring Mr. Donald to appear in court, this time on October 29, 2012, to explain the factual discrepancies on the record.  (ECF No. 62, Order to Show Cause dated 10/23/12.)  This hearing date was subsequently rescheduled from October 29 due to Superstorm Sandy, and reset for November 8, 2012.  (*See* Order to Show Cause dated 11/1/12.)  Service of the October 23, 2012 Order to Show Cause and November 1, 2012 Order rescheduling the show cause hearing date was accomplished by the ECF filing system.  Mr. Donald has not claimed any filing or service problems with the ECF system and has successfully filed documents via the ECF filing system since his appearance on March 9, 2011, including in the recent past.  (*See, e.g.*, ECF No. 61, Doctor's Note dated 10/19/12, filed by Farrel Donald on 10/19/12; ECF No. 57, Affirmation of Farrel Donald, Esq. filed by Farrel Donald on 10/15/12.)  Nonetheless, Mr. Donald failed to appear on November 8, 2012 (*see* Minute Entry for hearing held 11/8/12), necessitating that the court issue an additional Order to Show Cause for Civil Contempt to Mr. Donald (ECF No. 66, Order to Show Cause dated 11/13/12).

Although the November 13, 2012 Order to Show Cause was, like all its predecessors, uploaded to the ECF filing system to which Mr. Donald was registered, the U.S. Marshal also attempted to serve the November 13, 2012 Order to Show Cause

34

upon Mr. Donald at his place of business, which was his only
known address.  (*See id.*)  After repeatedly attempting service
on different dates and times, the U.S. Marshal completed an
affidavit of service indicating that personal service could not
be completed.  (ECF No. 70, Process Receipt and Return dated
11/13/12 and filed 11/29/12.)  In order to fulfill the
requirements of service for an order to show cause for civil
contempt proceedings, the court's staff attempted again to
contact Mr. Donald and was informed by a person purporting to be
his assistant that the office address listed for Mr. Donald on
the ECF system was still correct.[11]  (Docket Notice dated
12/6/12.)

       On December 7, 2012, the court issued yet another
Order to Show Cause directed to Mr. Donald, ordering him to
appear in person on February 6, 2013 at 11:00 a.m., to show
cause why he should not be held in civil contempt for failing to
comply with the court's previous orders and Orders to Show
Cause.  (ECF No. 72, Amended Order to Show Cause dated 12/7/12.)
Once again, the U.S. Marshal attempted to serve the December 7,
2012 order upon Mr. Donald at his place of business, but was
unsuccessful after three attempts at service during business

---

[11] Mr. Donald also stated at the February 6, 2013 show cause hearing,
discussed below, that while he supposedly has not used the ECF-listed address
as his office for nearly a year, he still keeps office equipment at that
address, meets clients there, and still receives mail there.  Additionally,
Mr. Donald conceded that he actually had a meeting with Mr. Vassel at this
address in late August 2012.

hours.  (ECF No. 77, Summons Returned Unexecuted, dated 12/17/12
and filed 1/7/13.)  Subsequently, however, on January 9, 2013,
Mr. Donald contacted chambers, stating that he had learned that
a U.S. Marshal was attempting service on him, and Mr. Donald
came to the Eastern District Courthouse and accepted service of
the December 7, 2012 Order to Show Cause in person at the U.S.
Marshal's office.  (ECF No. 79, Affidavit of Service dated
1/9/13 and filed 2/5/13.)

Additionally, on January 31, 2013, the Vassels wrote a
letter to the court stating, *inter alia*, their belief that Mr.
Donald, defrauded them by taking a fee and failing to oppose
plaintiff's summary judgment motion.  (ECF No. 78, Defs. Ltr.
dated 1/31/13, at 1-2.)  The Vassels also requested the court to
sanction Mr. Donald on their behalf, to order Mr. Donald to
produce his malpractice insurance policy, and to subpoena Mr.
Donald's bank records based on their belief that Mr. Donald "was
paid off by the Plaintiff to destroy our case." (*Id.* at 1.)
The Vassels further requested that the court compensate them in
the amount of $1,000,000.00 for the damages caused by Mr.
Donald.  (*Id.* at 2.)

A show cause hearing was held on February 6, 2013 to
address the aforementioned issues regarding Mr. Donald's failure
to comply with the court's orders, including the August 2, 2011
order that Mr. Donald comply with the court-ordered briefing

36

schedule for plaintiff's motion for summary judgment and defendants' proposed motion to dismiss.  Mr. Donald appeared in person, as did the *pro se* defendants Paul and Kaye Vassel. (Minute Entry and Order dated 2/6/13.)  The court questioned Mr. Donald about the irregularities and alleged deficiencies in Mr. Donald's representation of the Vassels.  Among other things, Mr. Donald stated that his failure to ensure that his office actually filed and served the opposition to plaintiff's motion for summary judgment and defendants' motion to dismiss that Mr. Donald claims to have drafted on the Vassels' behalf[12] was solely due to Mr. Donald being overwhelmed by his caseload at the time. Mr. Donald denied that he had any improper pecuniary motive in taking the Vassels' case, and also stated that he has been in good health and has not been under any mental health care treatment during his representation of defendants.

        Although the court continues to be extremely troubled by Mr. Donald's apparent disregard for his clients' interests and the court's orders during the pendency of this litigation, for the reasons that follow, the record facts do not constitute the type of extraordinary circumstances required by the applicable case law for the Vassels to prevail on their Rule

_____

[12] As the court observed at the February 6, 2013 show cause hearing, Mr. Donald once again failed to bring to court any copies of any of the motion papers he claims to have drafted that might substantiate his affirmation (made under penalty of perjury) that he did, in fact, draft these elusive submissions on the Vassels' behalf.

60(b) motion to vacate the court's grant of summary judgment, the order of judgment and sale, and the foreclosure sale. Defendants' motion must, therefore, be denied in its entirety.

**A.   Legal Standard for Vacatur under Rule 60**

Under Federal Rule of Civil Procedure Rule 60(b), a court may exercise its discretion to relieve a party from a final judgment for (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied; or (6) any other reason justifying relief from the operation of the judgment.  Fed. R. Civ. P. 60(b).

When considering a motion pursuant to Rule 60(b), the court must "strike[] a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).  "A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001).  Generally, evidence in support of the motion to vacate a final judgment under Rule 60(b) must be "highly convincing." *Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 8 (2d Cir. 1987) (internal quotation marks omitted).  Additionally, although courts construe *pro se* litigants' pleadings liberally and interpret them to raise the strongest arguments they suggest,

38

*Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), a *pro se* litigant is not excused from the requirement of producing highly convincing evidence to support a Rule 60(b) motion, *Alvarado v. Manhattan Worker Career Ctr.*, No. 01-cv-9288, 2003 WL 22462032, at *2 (S.D.N.Y. Oct. 30, 2003).

Courts in the Second Circuit analyze a party's claim that his attorney failed to properly represent him, either by lying to the client or failing to litigate the case, under subsections (1) and (6) of Rule 60(b).   *See SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (motion to vacate default judgment based on defense attorney's failure to respond to the complaint reviewed under Rule 60(b)(1) and (b)(6)); *Alvarado*, 2003 WL 22462032, at *2-3 (Rule 60(b)(1) and (b)(6) are the relevant provisions for analyzing a party's claim for relief from judgment based on counsel's mismanagement of the case); *Cobos v. Adelphi Univ.*, 179 F.R.D. 381, 386-89 (E.D.N.Y. 1998) (same).

### 1.    "Excusable Neglect" Under Rule 60(b)(1)

In order for a court to grant relief from a final judgment under Rule 60(b)(1), the court must first determine whether the order from which relief is sought resulted from "excusable neglect." Fed. R. Civ. P. 60(b)(1); *Pioneer Inv. Servs., Inc. v. Brunswick Assocs.*, 507 U.S. 380, 393-94 (1993). In the Second Circuit, however, an attorney's gross negligence is not an excusable form of neglect under Rule 60(b)(1).

*Nemaizer*, 793 F.2d at 63; *Alvarado*, 2003 WL 22462032, at *2;
*Cobos*, 179 F.R.D. at 387.  As such, an attorney's mistake or
omission based on ignorance of the law, failure to follow rules
and deadlines, inability to handle his or her caseload or
client's demands, and complete and total disregard for client
rights or professional ethics are not grounds for relieving a
party from a final judgment.  *See Canfield v. Van Atta Buick/GMC
Truck, Inc.*, 127 F.3d 248, 250 (2d Cir. 1997) (per curiam);
*Dominguez v. United States*, 583 F.2d 615, 616-18 (2d Cir. 1978)
(per curiam); *Nemaizer*, 793 F.2d at 62; *United States v. Cirami*,
535 F.2d 736, 741 (2d Cir. 1976) ("*Cirami I*"); *Alvarado*, 2003 WL
22462032, at *2-3; *Cobos*, 179 F.R.D. at 386-89.  This is
because, generally, "the conduct of an attorney is imputed to
his client, for allowing a party to evade the consequences of
the acts or omissions of his freely selected agent would be
wholly inconsistent with our system of representative
litigation, in which each party is deemed bound by the acts of
his lawyer-agent."  *Aalmuhammed v. Kesten*, No. 98-cv-171, 2003
WL 118512, at *5 (S.D.N.Y. Jan. 14, 2003) (citing *Link v. Wabash
R.R. Co.*, 370 U.S. 626, 633-34 (1962); *McNulty*, 137 F.3d at
739).

  Here, to the extent the Vassels' motion to vacate is
based on Mr. Donald's failure to file a motion to dismiss and an
opposition to plaintiff's motion for summary judgment on

defendants' behalf and Mr. Donald's failure to respond or comply with court orders, this conduct "essentially boils down to [a claim] of gross negligence and malfeaseance on the part of [their] attorney." *Alvarado*, 2003 WL 22462032, at *3 (denying motion to vacate under 60(b)(1) based on *pro se* plaintiff's former attorney's failure to respond to defendants' submissions which resulted in award of summary judgment and attorneys' fees for defendants). Given that an attorney's gross negligence or malfeasance is not considered excusable neglect in this Circuit, however, the Vassels' motion to vacate cannot be granted pursuant to Rule 60(b)(1). *Id*.

> ## 2. "Any other reason justifying relief" Under Rule 60(b)(6)

The Second Circuit has held that a motion under Rule 60(b)(6) can only be granted under "extraordinary circumstances, or where the judgment may work an extreme and undue hardship." *Pichardo v. Ashcroft*, 374 F.3d 46, 56 (2d Cir. 2004). Although Rule 60(b)(6) represents a "grand reservoir of equitable power" that should be liberally applied, *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977) ("*Cirami II*"), in order for a court to grant relief from a final judgment under this provision, the movant must show that there are extraordinary circumstances justifying relief, the judgment works an extreme hardship, and the asserted grounds for relief are not recognized in

41

subsections (1)-(5) of the Rule.  *Nemaizer*, 793 F.2d at 63; *see also Teamsters*, 247 F.3d at 391-92; *Prince of Peace Enters., Inc. v. Top Quality Food Mkt. LLC*, No. 07-cv-349, 2012 WL 4471267, at *3 (S.D.N.Y. Sept. 21, 2012).

It is also well-settled in the Second Circuit that an attorney's gross negligence alone is not a basis for relief under Rule 60(b)(6).  *See Cirami I*, 535 F.2d at 739-41; *Prince of Peace*, 2012 WL 4471267, at *3; *Aalmuhammed*, 2003 WL 118512, at *5.  As such, to constitute "extraordinary circumstances" under Rule 60(b)(6), "a lawyer's failures must be so egregious and profound that they amount to the abandonment of the client's case altogether, either through physical disappearance or constructive disappearance."  *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004) (citations omitted).  Although an attorney's gross negligence is not sufficient to grant relief, an attorney's "constructive disappearance" from a case due to mental illness has been recognized as the type of "exceptional circumstances" justifying Rule 60(b)(6) relief.  *See Cirami II*, 563 F.2d at 34-35; *accord Alvarado*, 2003 WL 22462032, at *3; *cf. Prince of Peace*, 2012 WL 4471267, at *3, 6-8 (recognizing mental illness of attorney as grounds for 60(b)(6) relief but denying plaintiff's motion to vacate court order granting unopposed motion to dismiss complaint, because plaintiff had been alerted

to existence of defendant's motion to dismiss by defendant's counsel, plaintiff's subsequent counsel, and the court itself).

In this case, there are no record facts to suggest that Mr. Donald's failure to file an opposition to plaintiff's summary judgment motion and a motion to dismiss on behalf of the Vassels is the result of mental illness. Quite to the contrary, Mr. Donald stated at the February 6, 2013 show cause hearing that his failure to file these documents on behalf of the Vassels was solely due to being overwhelmed with his caseload at the time, not to any mental illness. Moreover, Mr. Donald cannot be said to have constructively disappeared from this case, as courts have held is required to warrant relief under Rule 60(b). *See Cirami II*, 563 F.2d at 34-35; *Alvarado*, 2003 WL 22462032, at *3. Indeed, despite his various failures to appear in person, Mr. Donald has been able to comply with at least some court orders in the recent past. (*See* ECF No. 61, Doctor's Note for Farrel Donald dated 10/19/12, filed by Farrel Donald; ECF No. 57, Affirmation of Farrel Donald, Esq. dated 10/12/12, filed by Farrel Donald on 10/15/12.) Thus, the Vassels' motion to vacate cannot be granted under Rule 60(b)(6) because of Mr. Donald's failure to properly represent them in this case.

### 3.   The Vassels' Motion for Relief Must Be Denied Because They Do Not Have a Meritorious Claim

"Even where the movants show that their motion to reopen is encompassed by the grounds enumerated in Rule 60(b), they must still show that they possess a meritorious claim before they can prevail." *Cobos*, 179 F.R.D. at 389 (citing *Cirami II*, 563 F.2d at 29); *see also Alvarado*, 2003 WL 22462032, at *3-4; *Babigian v. Ass'n of the Bar of the City of New York*, 144 F.R.D. 30, 33 (S.D.N.Y. 1992).

Despite the Vassels' unfortunate experience with Mr. Donald detailed above, a review of the record, defendants' affirmative defenses and counterclaims, defendants' motion to vacate and supporting affidavits and letters,[13] plaintiff's opposition to defendants' motion to vacate, plaintiff's summary judgment motion, Magistrate Judge Reyes' Report and Recommendation dated March 8, 2012, and the court's subsequent order adopting Magistrate Judge Reyes' Report and Recommendation

---

[13] Mr. Donald indicated at the February 6, 2013 show cause hearing that the opposition to plaintiff's motion for summary judgment he claims to have drafted on the Vassels' behalf presented arguments based on (1) factual disputes regarding the proper chain of title to the Property and (2) unspecified issues with the MERS recording system purportedly recognized by the Second Department of New York State's Appellate Division. Notwithstanding the credibility of Mr. Donald's statement that he drafted such an opposition, these issues were also raised by the Vassels in their affirmative defenses and counterclaims, their *pro se* motion to vacate, their reply in support of their motion to vacate, and their supplemental submission dated January 31, 2012. (*See* ECF No. 3, Defs. Answer, ¶¶ 7-29; Mot. to Vacate at 4-5; ECF No. 53, Defs. Reply dated 9/24/12, at 3-4; ECF No. 78, Defs. Ltr. dated 1/31/13, at 2-7.)

and granting summary judgment all indicate that the Vassels do not have meritorious defenses to plaintiff's foreclosure action.

As discussed earlier, there is no merit to the Vassels' argument that the foreclosure sale did not occur in the manner set forth in the Amended Notice of Sale. With respect to the summary judgment decision that precipitated the foreclosure sale, even aside from the fact that all of the arguments raised by the Vassels in their motion to vacate and supplemental court filings were previously addressed in detail in the Report and Recommendation by Magistrate Judge Reyes, the court has performed its own additional review of the facts and record and, again, reaches the same conclusion.

Specifically, the Vassels' arguments in support of their motion to vacate can be summarized as (i) a challenge to this court's jurisdiction over this case (*see* Mot. to Vacate at 4, 9); (ii) an argument that former plaintiff Greystone and current plaintiff FirstStorm Partner 2 LLC lack standing to sue, either because the original mortgage documents are fraudulent or because the mortgage assignment was fraudulent (*see id.* at 5, 6-9); and (iii) an argument that plaintiff's counsel of record are somehow fraudulently representing the plaintiff (*see id.* at 4, 6). The Vassels' January 31, 2013 letter to the court reiterates these same arguments (*see* ECF No. 78, Defs. Ltr. dated 1/31/13, at 2-7), which were also raised in their reply in

45

support of their motion to vacate (*see* ECF No. 53, Defs. Reply dated 9/24/12 at 3-4) and in their affirmative defenses and counterclaims (*see* ECF No. 3, Defs. Answer, ¶¶ 7-29).

As previously noted, in addition to all the reasons Magistrate Judge Reyes relied upon in recommending that the court reject defendants' affirmative defenses and counterclaims reflecting these arguments (*see* R&R at 10-17), the court is satisfied that it has jurisdiction, that the former plaintiff Greystone and current plaintiff FirstStorm Partner 2 LLC did and do have standing to sue and that FirstStorm's assignment of rights in this case was valid, that the underlying mortgage documents and assignments are not forgeries, and that there is nothing fraudulent or improper about plaintiff counsel's representation of their client. Under these circumstances, the court finds that the Vassels do not have a meritorious case, as would be required for them to prevail on their Rule 60 motion to vacate. Thus, the Vassels' motion must be denied on this ground as well. *See Alvarado*, 2003 WL 22462032, at *4 (denying motion to vacate grant of summary judgment to defendant because, *inter alia*, movant's case was unmeritorious).

## C. Conclusion

For the reasons set forth above, the court denies defendants' motion to vacate the court's August 15, 2012 order and judgment of sale. The court is very sympathetic to the

46

Vassels with respect to the difficulties they have encountered with Mr. Donald.   Although the Vassels' allegations "may be grounds for [them] to report [their] lawyer to an ethics committee or bring a separate civil action against him," their motion does not establish the extraordinary circumstances and meritorious case required by Rule 60 for relief from the court's order.   *Alvarado*, 2003 WL 22462032, at *4.   The clerk of court is respectfully requested to close this case.   Plaintiff's counsel is also respectfully requested to serve a copy of this Memorandum and Order on the *pro se* defendants Paul and Kaye Vassel at their address of record and to file proof of service of the same on or before February 22, 2013.


**SO ORDERED.**

Dated:      Brooklyn, New York
            February 21, 2013


                              _____/s/_____
                              **KIYO A. MATSUMOTO**
                              United States District Judge
                              Eastern District of New York